```
                                                                    1
     M3L6FRAC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                            21 CR 446(VSB)
                                             Conference
5    ANDREW FRANZONE,

6              Defendant.

7    ------------------------------x

8                                            New York, N.Y.
                                             March 21, 2022
9                                            3:00 p.m.
     Before:
10
                   HON. VERNON S. BRODERICK,
11
                                             District Judge
12
                           APPEARANCES
13

14   DAMIAN WILLIAMS,
          United States Attorney for the
15        Southern District of New York
     BY:  ROBERT SOBELMAN
16        Assistant United States Attorney

17   JOSEPH COROZZO
          Attorney for Defendant
18

19

20

21

22

23

24

25

     M3L6FRAC
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

1    THE COURT:  Okay.  If I could ask counsel to please
2  identify themselves for the record.
3    MR. SOBELMAN:  Robert Sobelman, the United States.
4  Good afternoon, your Honor.
5    THE COURT:  Good afternoon.
6    MR. COROZZO:  Good afternoon, your Honor, on behalf of
7  Mr. Franzone, Joseph Corozzo.
8    THE COURT:  Good afternoon.  Good afternoon,
9  Mr. Franzone.
10    THE DEFENDANT:  Good afternoon.
11    THE COURT:  So this matter is on for a status
12  conference.  So let me hear from defense counsel.
13    MR. COROZZO:  Yes, your Honor.
14    Your Honor, since the last court date, I've been
15  wrestling -- is probably the best word to say -- with the
16  discovery in this matter.  Originally, we couldn't open one
17  full set of discovery, which was given to us on a hard drive.
18    Subsequently, we hired an IT person to help us.  When
19  we requested that the IT person sign off on the protected
20  order, the IT person quit on us and was intimidated by the
21  language in the protective order.  So we've been endeavoring
22  in-house to hope it.  We've been in constant contact with
23  Ms. Fletcher, who has given us some advice and some programs to
24  use.
25    Since the last court date, on the second production

1  that I'm talking of, which is the August 23, 2021, production,
2  there are four main files on that production.  We were able to
3  open one, and in that one file, there were 46,000 subfiles, so
4  we're going through that now.  We're still speaking to
5  Ms. Fletcher, and even the prior attorney for Mr. Franzone from
6  the Public Defenders Office in the hopes of opening up the
7  other files.
8          We're working diligently, your Honor.  We're putting a
9  lot of hours into the case, and we're going through everything.
10         THE COURT:  Let me ask this --
11         MR. COROZZO:  Your Honor, may I interrupt.
12         THE COURT:  I'm sorry.
13         MR. COROZZO:  And in addition to the previously
14 disclosed discovery, most recently Ms. Fletcher asked for a
15 four terabyte hard drive, and some of the discovery which was
16 extracted from the seized electronics, which is duplicated in
17 the original discovery, is now being produced to us as
18 responsive to the search warrant.  So there's four terabytes
19 there.  I'm not sure how much is duplicative or new materials,
20 but this is the universe that we're talking about right now.
21         THE COURT:  Okay.  Let me ask, the initial hard drive,
22 was that the hard drive that you got from the Federal
23 Defenders, or did the government reproduce those materials to
24 you, or do you not recall one way or the other?
25         MR. COROZZO:  There were two original hard drives.

One was July 23, '21, which is I know for certain -- or at least I'm sure that I received that from the Federal Defenders. The second one, I'm not certain. In speaking to the Federal Defenders, they hire an IT facility or persons that were able to open the second one. We asked for some assistance, and they're doing it the best they can. But for that second production, I have been told that the Federal Defenders were able to access at least some of it, and they were able to show it to the client in their offices, or in the jail at the time.

But I have not any more information on that, your Honor.

THE COURT: Okay. So let me ask -- well, Mr. Sobelman, I understand obviously you're standing in for Ms. Fletcher, but do you know whether there is additional discovery that still remains to be accessed and produced?

MR. SOBELMAN: Yes, your Honor. I just want to say on behalf of Ms. Fletcher, we apologize for the tardiness of the appearance. It was due to an inadvertent calendar error.

THE COURT: Sure.

MR. SOBELMAN: With respect to the substance, I had a chance to speak with Ms. Fletcher on my way to court. I understand that the new hard drive, the four terabyte hard drive that was requested is, as defense counsel for response materials that are entirely within the materials that have already been produced.

So the images of the devices that were seized were produced, I understand, quite some time ago. Ms. Fletcher has been in regular contact with defense counsel to provide guidance as to what software might be used to view the images that were produced. I understand that she has not heard from defense counsel on that in a month and thought their prior interaction seemed to resolve things, but that may not be the case.

But the additional materials are just responsive materials within the scope of everything that's already been produced. So it shouldn't require any additional review for the sake of pretrial motion practice.

THE COURT: Okay. Well, when you say responsive, does that mean there were search terms applied to this material, and the results of that are the materials that are being produced, or is it something else?

MR. SOBELMAN: So I'm not sure how the precise review is done for these set of devices, but typically the way our office approaches executing a search warrant on electronic devices, as your Honor may know, is a mixture of law enforcement agents or prosecutors review the data in some form, depending on how the data is presented and what software we have, sometimes we use keyword searches, sometimes we have to do a file-to-file manual review, often it's a mix of both, and using that, whatever protocol we have in place, we designate

1  some set of data, assuming there is responsive data, as
2  responsive, and then reproduce that to the defense. Even
3  though here, because it's the defendant's devices, he already
4  has the full copies of them, but we take it upon ourselves to
5  provide notice as to which items on the devices we view as
6  responsive to the search warrant.
7        THE COURT: To the search warrant.
8        MR. SOBELMAN: Yes.
9        THE COURT: As opposed to a further round of review
10 that the government may undertake in order to determine what
11 materials it intends to offer; in other words, as exhibits.
12 Okay.
13       MR. SOBELMAN: Correct, your Honor. That would be, I
14 assume, a further narrowing of the responsive set.
15       THE COURT: Okay. Thank you. Are there any other
16 materials that you're aware of that have yet to be produced?
17       MR. SOBELMAN: Not that I'm aware of, your Honor. It
18 didn't sound like that from my conversation with Ms. Fletcher.
19 It sounds like everything has been produced for quite some
20 time. And for what it's worth, Ms. Fletcher expected a week
21 from now that -- given that the conference is today, expected
22 that the Court would set a motion schedule.
23       THE COURT: Yes.
24       MR. SOBELMAN: Whatever schedule the Court thought
25 appropriate.

1           THE COURT:  Sure.  Let me hear from Mr. Corozzo.

2           MR. COROZZO:  Your Honor, we're doing the best we can
3   in going through this discovery.  It's very voluminous.  We
4   could bifurcate the issues from my office and continue to do
5   discovery review and submit motions at the time.  If the Court
6   were to require, it might lead to additional motions in the
7   future.  We are definitely struggling.

8           When we're opening certain files, we are getting many
9   errors, and we're trying to review that and just trying to wrap
10  our head around everything.  We have a good understanding of
11  what's there, and even what we cannot access.  We are just
12  trying to access it.  And like I said, one out of four files we
13  were able to access was 46,000 files of PDFs and Excel
14  spreadsheets and things of that nature that we need to go
15  through.

16          THE COURT:  Sure.

17          MR. COROZZO:  So I'm amenable to anything the Court
18  requires, but, obviously, for my selfish perspective, I would
19  ask for one more adjournment so then we can report to the Court
20  that at least we opened everything and did everything we did,
21  and there are no other discovery issues, and move on to
22  motions.

23          THE COURT:  How much time would you propose, is my
24  question.  With the understanding that, as I understand, there
25  is at least one search warrant.

1           MR. COROZZO:  Yes.

2           THE COURT:  For which, although, the materials seized
3  might be implicated in a motion.  Typically, it would not
4  necessarily need to be the case; in other words, it would be
5  based upon the affidavit submitted in the search warrant that
6  was obtained.  But let me hear from you.  How much time would
7  you be thinking of?

8           MR. COROZZO:  Your Honor, I would suggest two
9  alternatives.  One would be a four- to five-week adjournment
10 just to report back on the discovery.  Or as the Court noted,
11 there are search warrant issues in this case; we could file
12 motions against the search warrants while we're doing this, and
13 then I would ask for a little bit longer, six to eight weeks,
14 to file the motions because we'll be doing both chores at the
15 same time.

16          THE COURT:  What I would say is the following:  We'll
17 come back in five weeks.  During that time period, I'm not
18 setting a motion schedule, but you should clearly, if there's
19 going to be a motion, you should start thinking about that and
20 actually preparing it, because when we come back the next time
21 we are going to set a motion schedule, to the extent one is
22 necessary.

23          MR. COROZZO:  Understood, your Honor.

24          THE COURT:  I understand that you want to review the
25 materials.  Let me ask, and I just -- I apologize.  I don't

1    remember.  Let me see.  Mr. Sobelman, do you know if there was
2    a post-arrest statement here?
3              MR. SOBELMAN:  There was not, your Honor.
4              THE COURT:  Okay.
5              MR. SOBELMAN:  Your Honor, for what it's worth, I
6    didn't have a chance to review the transcript from the last
7    conference, but Ms. Fletcher's recollection was that a similar
8    conversation was had at the last conference where your Honor
9    pointed out to defense counsel that the motions, if any, would
10   likely be based on the papers and the warrants, not in a review
11   of electronic discovery.  And, you know, the government's view
12   is almost every white collar case in this Court has similar or,
13   in many cases, far greater volumes of discovery and the cases
14   are still able to move forward while defense counsel still
15   continues to review them.
16             Of course, if something were to arise, defense counsel
17   couldn't have reasonably anticipated at this juncture that they
18   raise later, the Court could exercise its discretion and
19   entertain a motion later.  But the government has an interest
20   in moving this case forward as expeditiously as the Court sees
21   appropriate.
22             MR. COROZZO:  Your Honor, only because the government
23   is being so adamant on their position, I have been practicing
24   in this court for 30 years now.  If the government decided that
25   they should be turning over the discovery in a viewable format,

not having my office search in the dark to try to open the evidence -- and we're trying to compromise and trying to work together, and there's a lot of communications with Ms. Fletcher. So I don't want to put that burden on the government yet, but there are two sides to this coin that I'm struggling at the same time with reviewing discovery and getting ready for preparing the motions, if I have to, with just opening the files that I cannot open.

THE COURT: I'm going to give you the additional time, but when we come back the next time, we're going to set a motion schedule for whatever motions the defense intends. And during the interim, I would ask, Mr. Corozzo, that you redouble your efforts in communicating with Ms. Fletcher and anybody else from the government to help you access the materials.

I mean, obviously, part of the reason, I'm sure, is that it may be password protected because there are materials that require that kind of security. But I expect by the next time we come here that those issues will either be resolved, either if it's an issue of a corrupt hard drive, you'll get a hard drive, or if it's something else, I expect those to be resolved.

Let me ask Ms. Rodriguez, if we could have a date five weeks out.

DEPUTY CLERK: April 26 at 2:00 p.m.

THE COURT: Does that work for the government?

1   MR. SOBELMAN:  We'll make it work, your Honor.

2   THE COURT:  All right.

3   MR. COROZZO:  Fine for the defense, your Honor.

4   THE COURT:  Okay.  We're going to come back then on April 26.  And I'm going to exclude time between now and April 26 from the time within which Mr. Franzone would have to be brought to trial.  And I find that that exclusion outweighs the interest of the public and Mr. Franzone in a speedy trial, that time is necessary, as we discussed here, for defense counsel to be able to access the information that's been provided in discovery, review those materials with his client as he sees fit, and determine what motions are appropriate.

We will set a motion schedule at the next conference, assuming there are motions.  If there are no motions we can talk about what the next steps are in terms of potential trial dates and the like.

As things stand right now, I'm still not in control of my own trial schedule.  That may change.  There are a lot of changes, even more recently to them, just in distancing and masking procedures.  But it still is a little bit of a bottleneck in picking a jury, but maybe next time we come here I'll have some news on that.

All right.  Let me ask, is there anything else we need to deal with?

MR. SOBELMAN:  Nothing from the government.

1          THE COURT:  Anything from the defense?

2          MR. COROZZO:  Nothing, your Honor.

3          THE COURT:  Thank you very much.  We stand adjourned.

4    Stay safe everyone.

5          (Adjourned)