UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA         :

      -against-                :       21 CR 446 (VSB)

ANDREW FRANZONE          :

                           :
-------------------------------------------------------------X

# MOTION TO SUPPRESS
# <u>AND FOR RETURN OF PROPERTY</u>

Joseph R. Corozzo
Angela D. Lipsman
Rubinstein & Corozzo, LLP
*Attorneys for Defendant*
*Andrew Franzone*
260 Madison Avenue, 22d Fl.
New York, New York 10016
(212) 545-8777 (ph)
(917) 722-8206 (fax)
jcorozzo@rubcorlaw.com
alipsman@rubcorlaw.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 3

FACTS ...................................................................................................................................... 5

DISCUSSION .......................................................................................................................... 13

    I. The Seizure of Devices 1 and 2 Was Unconstitutional. ......................................... 13

        A. Not Incident to Arrest. ....................................................................................... 14

        B. Not In Plain View.............................................................................................. 15

            (i) Incriminating Nature Not Immediately Apparent. ...................................... 15

            (ii) Unreasonable Delay Between Warrantless Seizure and Application to Search Devices................................................................................................................ 18

            (iii) The Good Faith Exception Does Not Apply............................................. 22

    II. Unconstitutional Seizure of Property from Westin. ............................................... 23

        A. The Seizure Was Overbroad. ............................................................................ 24

        B. Search Warrant's Improper Designation of Place to Be Searched.................................. 26

        C. Search Warrant Not Supported by Probable Cause to Believe Items To Be Seized Would Be In the Place to Be Searched. ............................................................................. 28

        D. The Seizure Was Not Supported by Consent................................................... 31

    III. The Warrant to Search Six Electronic Devices Constitutes Fruit of the Poisonous Tree... 32

    IV. Request for *Franks* Hearing............................................................................... 33

    V. Request for Return of Property. ............................................................................ 35

    VI. Reservation of Rights. ......................................................................................... 36

CONCLUSION........................................................................................................................ 36

# PRELIMINARY STATEMENT

Defendant Andrew Franzone ("Franzone") submits this memorandum of law in support of his motion to suppress and motion for return of property.

On the day of his arrest, two of his devices (a cell phone and a laptop) were unconstitutionally seized without a warrant and without Mr. Franzone's consent. There was no applicable exception to the warrant requirement. The seizure was not incident to Mr. Franzone's arrest as they were not within the defendant's reach. Nor could the items have been in plain view when their allegedly incriminating nature was not immediately apparent.

Furthermore, the warrantless seizure of those two devices was unconstitutional due to the unreasonably long delay between the warrantless seizure and the federal agent's application for a warrant to search the devices.

Mr. Franzone also moves to suppress evidence seized from the Westin (the hotel where he had been residing for a year at the time of his arrest). The seizure was overbroad as the federal agency seized _all_ of Mr. Franzone's belongings from the hotel, irrespective of what might have fallen within the categories of items to be seized and what clearly was beyond the scope of the warrant.

Additionally, the warrant for Mr. Franzone's hotel room was not supported by probable cause to believe that the items to be seized would be found in the place to be searched. The warrant was based on a tip from a source that was either anonymous or confidential. This tip that the items to be seized would be in his hotel room did not provide probable cause here, where there was no corroboration of the tip, no indication that the federal agent had worked with the source before, had met with the source face-to-face, or that he knew the source's name or direct contact information, and no reason to believe that the source or the tip was trustworthy.

Moreover, the tip defied credulity: why would the hotel have been leaving Mr. Franzone's belongings untouched in a hotel room they did not expect him to return to, without any legal obligation to? Particularly when the source allegedly told the federal agent that he or she had already gone into Mr. Franzone's hotel room in order to collect Mr. Franzone's belongings and return them to his family, what reason would the hotel have had to then essentially seal off a room without a warrant when they could have simply returned Mr. Franzone's property and rented the room to another guest?

Nor did the warrant to search the hotel describe the correct place to be searched. The warrant does not even indicate that the Westin has two different towers, let alone which tower contained the hotel room to be searched. Coupled with the fact that the warrant does not list the correct number for Mr. Franzone's hotel room, the warrant did not describe with sufficient particularity the place to be searched for the items to be seized.

The items had, in fact, already been relocated from Mr. Franzone's hotel room before the warrant was even issued. The federal agent claimed that he learned this on May 1, 2021, the day that the warrant was served. Despite the fact that the items were not in the place to be searched, the agency nevertheless seized all of Mr. Franzone's belongings, allegedly pursuant to the search warrant two days later on May 3, 2021.

The hotel did not have the authority to consent to a seizure of Mr. Franzone's belongings. Mr. Franzone never consented to a seizure of his belongings, and his mother certainly did not agree to anything other than the return of his property.

The search of Mr. Franzone's six electronic devices (2 from the W and 4 from the Westin) was the fruit of the aforementioned violations of Mr. Franzone's Fourth Amendment rights.

Mr. Franzone also moves for a ***Franks*** hearing. There are multiple misrepresentations in the federal agent's supporting affidavits. As one of the agents that arrested Mr. Franzone, the deponent clearly knew that he was misrepresenting the location of Mr. Franzone's arrest. Knowing that Mr. Franzone's arrest was well after check-out on April 22, 2021 and that Mr. Franzone had not packed his things, the agent also would have known that his allegation that Mr. Franzone was expected to check out on the day of the arrest was also false.

Given that the agent had to have known that those two misrepresentations were false, it is very possible that the agent also knew at the time that he swore that Mr. Franzone's belongings were still in his hotel room that this, too, was false. Since this was material to whether a warrant would be issued to search Mr. Franzone's hotel room, we respectfully request a ***Franks*** hearing.

Finally, since Mr. Franzone has been unconstitutionally deprived of his property, and since the seizure is still ongoing (the items are in the federal agency's possession in the Southern District of New York, specifically, upon information and belief, at an office in Manhattan), Mr. Franzone also moves for an Order that his property be returned to him.

**FACTS**

On April 20, 2021, a Criminal Complaint was issued, charging Mr. Franzone with Securities Fraud and Wire Fraud, and requesting a warrant for the arrest of Mr. Franzone. (Although we have not found a separate warrant for the arrest of Mr. Franzone in the discovery, the page of the Complaint requesting an arrest warrant was signed by U.S. Magistrate Judge James L. Cott. Complaint p. 15.)

That same day, a search warrant was issued for Mr. Franzone's prospective cell phone location information and pen register information.[1] (As we do not see how the fruits of that warrant would be relevant to the Government's direct case, we are not moving to suppress the fruits of the warrant for prospective location information and pen register information since they should be inadmissible under F.R.E. 401.)

At the time that the Complaint was issued, Mr. Franzone had been staying at room 1147 of the Westin Beach Resort & Spa (the "Westin") in Fort Lauderdale, Florida for approximately one year. Defendant's Aff. ¶ 2 (attached). Cf. April 30, 2021 Aff. In Support of Warrant to Search Hotel Room ("Hotel Room Aff.") ¶ 8 (attached).

Another hotel, the W, was one to two blocks away from the Westin. According to the attached printout from Google Maps, the two hotels are one-tenth of a mile away from each other, and separated by a cross street, Bayshore Drive.

The W has outdoor tables and other furniture located outdoors on its property. See Defendant's Aff. ¶ 6 and attached photograph of the W from the Mattiott's website. During the COVID-19 pandemic, the W's outdoor bars[2] were amongst the few venues open in Fort Lauderdale, Florida. Id. ¶ 7.

On the afternoon of April 22, 2021, Mr. Franzone was at the W. Defendant's Aff. ¶ 12. He had brought his silver Apple MacBook Pro ("Device-1") and his space gray Apple iPhone 11 Pro Max ("Device-2") with him, and was using them to work and make phone calls. Id.

Mr. Franzone had a tendency to leave his laptop and cell phone on top of outdoor furniture at the W while he walked around, or paced, or sat elsewhere, before returning to collect

---

[1] Warrant and Order for Cellphone Location and Pen Register Information and for Sealing and Non-Disclosure, Bates USAO_SDNY_000000053 - USAO_SDNY_000000056.

[2] We attach a photograph of El Vez,on the W's premises, from the Marriott's website.

his belongings. He would make an effort to keep an eye on his belongings when doing so, Defendant's Aff. ¶ 10, and would sometimes wander further than twenty or even fifty feet from his electronics. Id. ¶ 13.

On the afternoon of April 22, 2021, Mr. Franzone set Device-2 down next to Device-1.[3] Temporarily leaving the laptop and iPhone on top of a surface at one of the W's outdoor patios or so-called "bars", Mr. Franzone got up to "clear [his] head", and walked to another piece of patio furniture, where he sat down. Defendant's Aff. (attached) ¶¶ 12 - 13. According to the Defendant, this was some yards away from where he had left Device-1 and Device-2. Defendant's Aff. ¶ 13.

On April 22, 2021, while Mr. Franzone was sitting at the W, and before Mr. Franzone could collect Device-1 and Device-2 from the surface he had left them on, four agents from the U.S. Postal Inspection Service ("U.S.P.I.S.") placed him under arrest. Defendant's Aff. ¶ 14. He remained incarcerated until his release on bail in November of 2021. Id. ¶ 21.

At some point on the afternoon of Mr. Franzone's arrest, one of the four U.S.P.I.S. agents seized Device-1 and Device-2 from the W without a warrant. Defendant's Aff. ¶ 17. See also Aff. In Support of Warrant to Search Six Electronic Devices ("Electronic Devices Aff.") ¶11 (attached).

On April 24, 2021, Mr. Franzone's mother, Dr. Margaret McGuirk ("McGuirk")[4], called the Westin.[5] She paid her son's hotel bill with her husband's credit card. Upon learning from the employee that she spoke with, Robert, that Mr. Franzone would not be returning to the Westin, she requested the return of Mr. Franzone's belongings. Aff. from Dr. McGuirk ¶ 4. The

---

[3] Defendant's Aff. ¶ 12.
[4] Mr. Franzone's mother is also known as Mrs. Peggy Franzone.
[5] Dr. McGuirk's Aff. ¶ 2 (attached).

employee told Dr. McGuirk, in sum and substance, that returning property was not his department, and that she would have to speak with another employee, named Alain. Id. ¶ 5.

Within a few days, Dr. McGuirk spoke with Alain, again requesting the return of her son's property, whereupon Alain advised Dr. McGuirk that her son's property was no longer in room 1147. Id. ¶ 6. Alain explained, in sum and substance, that a man named Ed Gannon had Mr. Franzone's electronics in his possession, and that the rest of her son's belongings had already been packaged up into two black garbage bags. Id. ¶ 6. Alain told Dr. McGuirk that these bags had been placed in the Westin's business center. He asked Dr. McGuirk if she could send someone to the Westin to pick the bags up from the hotel. Id. ¶ 7. As Dr. McGuirk lives in New York, she said she would have to get back to him regarding that, and asked him in the meantime not to throw anything out. Dr. McGuirk's Aff. ¶ 7.

Dr. McGuirk asked Alain if the Westin could ship Mr. Franzone's belongings to her via UPS Ground, at Dr. McGuirk's expense. Dr. McGuirk's Aff. ¶ 7.

Dr. McGuirk made repeated phone calls to the Westin on Mr. Franzone's behalf to attempt to arrange for the return of Mr. Franzone's belongings. Id. ¶ 8. However, the Westin refused her request to ship the belongings via UPS Ground and, at some point, Alain stopped taking or returning Dr. McGuirk's phone calls. Dr. McGuirk's Aff. ¶¶ 7 - 8.

The Westin never returned any of Mr. Franzone's property. Dr. McGuirk's Aff. ¶ 8; Defendant's Aff. ¶ 24.

On April 30, 2021, a U.S.P.I.S. Postal Inspector applied for a warrant to search Room 1174 of the Westin. See Affidavit in Support of the Search Warrant for Room 1174 (the "Hotel Room Aff.") (attached).

This was not the room number of Mr. Franzone's hotel room. Mr. Franzone's hotel room was Room 11<u>47</u>, <u>not</u> 11<u>74</u>. <u>See</u> Invoice from Westin (attached); Defendant's Aff. ¶ 2.

Additionally, there is no mention, in the Hotel Room Search Warrant, in the description of the premises in Attachment A to the warrant, or in the Hotel Room Affidavit, that this Westin consists of <u>two</u> different towers, a North tower and a South tower. An elevated, enclosed walkway, or bridge, connects the two buildings, as depicted by the attached photograph of the Westin's towers from fivestaralliance.com.

In contrast to the photograph from fivestaralliance.com, which clearly shows the two different towers, one cannot tell by looking at the photograph accompanying the description in Attachment A to the Hotel Room Search Warrant that there are two different towers.

As the Hotel Room Aff. did not explain that the Westin consists of two towers, it also did not clarify *which* of the Westin's two towers contained the hotel room to be searched.

In the Hotel Room Aff., the Postal Inspector swore that Mr. Franzone "was slated to leave the hotel" the day of his arrest "due to nonpayment," Hotel Room Aff. ¶ 8. This was not the case. According to Mr. Franzone, he "was not scheduled to check out of the Westin the day of my arrest, whether for non-payment or otherwise… I never asked the Westin to check me out of the hotel…" Defendant's Aff. ¶¶ 3 – 4. (attached).

We note that check-out time at the Westin is 11:00 a.m. <u>See</u> *The Westin Fort Lauderdale Beach Resort* printout from <u>Marriott.com</u> (attached), at Hotel Information section. Mr. Franzone was arrested well after check-out time on April 22, 2021. Defendant's Aff. ¶¶ 12 – 14. Although the Westin's records, for some reason, report that Mr. Franzone was <u>thereafter</u> checked out at

22:20 on April 22, 2021,[6] this would have been absent a request from Mr. Franzone,[7] or from his family. (Mr. Franzone's mother did not have any contact with the hotel on April 22, 2021. After the arrest, she communicated with the hotel on <u>April 24, 2021</u>, Dr. McGuirk's Aff. ¶ 2.) It also would have been without Mr. Franzone's knowledge or consent, as he was already in federal custody by 22:20 on April 22, 2021.

The Postal Inspector also swore in the Hotel Room Aff. that:

- Mr. Franzone "was arrested at a restaurant on the" premises of the Westin, Hotel Room Aff. ¶ 9;

- and that:

"On or about April 28, 2021, a representative of the Hotel ("Hotel Employee-1") told me that Hotel Employee-1 had entered the Subject Premises the previous day at the request of a member of FRANZONE's family to collect FRANZONE's belongings. When Hotel Employee-1 was inside the Subject Premises, Hotel Employee-1 observed a laptop computer and what appeared to be piles of financial documents. Based upon my conversations with Hotel Employee-1 on or about April 30, 2021, I understand that FRANZONE's belongings remain in the Subject Premises, which has been accessed only by hotel security since on or about April 22, 2021. I further understand that non-security hotel staff and other hotel guests have not been permitted to enter or use the Subject Premises. I also understand that hotel security has not removed items from or brought additional items into the Subject Premises since April 22, 2021." Hotel Room Aff. ¶ 10, Bates Number USAO_SDNY_000000102-103.

The deponent did not indicate whether Hotel Employee-1's identity was known to him, whether Hotel Employee-1 had ever provided information before, or whether Hotel Employee-1 had provided his direct contact information to U.S.P.I.S. Nor did the deponent indicate whether

---

[6] Hotel Invoice (attached).
[7] Defendant's Aff. ¶ 4.

U.S.P.I.S. took any steps to corroborate the information provided in the tip from Hotel Employee-1.

The deponent, whose office is located in New York, also did not indicate in the Hotel Room Aff. whether he had spoken with Hotel Employee-1 face-to-face on April 28, 2021.

U.S. Magistrate Judge Lurana S. Snow, of the Southern District of Florida, signed the warrant to search Room 1174 of the Westin on April 30, 2021 (the "Hotel Room Search Warrant," attached). Attachment B of the Hotel Room Search Warrant specified the categories of items to be seized.

On May 21, 2021, the Postal Inspector applied for a warrant to search six electronic devices (the "Electronic Devices Aff.") (attached), including the two devices that had been seized from the W the day of Mr. Franzone's arrest, and four additional electronic devices that had subsequently been seized from the Westin.

According to the Electronic Devices Aff.:

- Mr. Franzone "was slated to leave the hotel [the day of his arrest] due to nonpayment", Electronic Devices Aff. ¶ 10;

- "On or about April 22, 2021, FRANZONE was arrested at a restaurant on the [Westin's] premises. At the time of his arrest, FRANZONE was in possession of Subject Device-1 and Subject Device-2. I took possession of Subject Device-1 and Subject Device-2 at the time of FRANZONE's arrest." Electronic Devices Aff. ¶ 11;

- "On or about April 28, 2021, another representative of the Hotel ("Hotel Employee-1") told me that Hotel Employee-1 had entered FRANZONE's hotel room (the "Hotel Room") the previous day at the request of a member of FRANZONE's family to collect FRANZONE's belongings. When Hotel Employee-1 was inside the Hotel Room, Hotel Employee-1 observed a laptop computer and what appeared to be piles of financial documents." Electronic Devices Aff. ¶ 12;

- "Based upon my conversations with Hotel Employee-1 on or about April 30, 2021, I understood that FRANZONE's belongings remained in the Hotel Room.

On that date, based in part on the foregoing, the Honorable Lurana S. Snow, United States Magistrate Judge, Southern District of Florida, signed a warrant authorizing the search of the Hotel Room, as well as the contents of any electronic devices found therein (the "Hotel Room Warrant")." Electronic Devices Aff. ¶ 13;

- "On or about May 1, 2021, I served Hotel Empoyee-1 with the Hotel Room Warrant. Upon receipt of the Hotel Room Warrant, Hotel Employee-1 told me that FRANZONE's belongings (the "Franzone Evidence") had been removed from the Hotel Room and were secured in the Hotel, but that Hotel Employee-1 would provide the Franzone Evidence to USPIS based upon the Hotel Room Warrant. On or about May 3, 2021, another Postal Inspector with USPIS ("Postal Inspector-1") went to the Hotel to pick up the Franzone Evidence. Postal Inspector-1 subsequently arranged for the Franzone Evidence to be shipped to me. Based upon my review of the Franzone Evidence, I have learned that the Franzone Evidence contains financial documents, documents related to the Fund Liquidation, credit cards, and several electronic devices, including but not limited Subject Device-3, Subject Device-4, Subject Device-5 and Subject Device-6." Electronic Devices Aff. ¶ 14.

Again, the Electronic Devices Aff. made no mention of whether the identity of Hotel Employee-1 was known to the Postal Inspector, whether he ever received direct contact information for Hotel Employee-1, or whether Hotel Employee-1 had ever provided information before. Nor does it mention whether U.S.P.I.S. took any steps to corroborate Hotel Employee-1's information prior to the application for the Hotel Room Search Warrant.

It also does not mention whether Hotel Employee-1, who was working in Fort Lauderdale, Florida, ever spoke face to face with the Postal Inspector, whose office was located in New York. Although the Electronic Devices Aff. says that the Postal Inspector served the Hotel Room Search Warrant on Hotel Employee-1 on May 1, 2021, it does not say whether the warrant was served in person.

The Electronic Devices Aff. also does not explain why, after the Postal Inspector served the Hotel Room Search Warrant on May 1, 2021, a different postal inspector had to pick up Mr.

Franzone's belongings from the Westin two days later, and then have Mr. Franzone's belongings shipped to the Postal Inspector in New York. Electronic Devices Aff. ¶ 14.

The Electronic Devices Aff. also does not explain why, after the Westin bagged up ALL of Mr. Franzone's property from Mr. Franzone's hotel room, U.S.P.I.S. apparently seized ALL of the belongings that Mr. Franzone had had in his hotel room—*even his clothes*. Defendant's Aff. ¶ 18.

After Mr. Franzone's counsel made a request for the return of Mr. Franzone's personal property (and especially for his driver's license, as, upon information and belief, all of his identifications had been seized by U.S.P.I.S.), the Postal Inspector returned Mr. Franzone's wallet to counsel.

Upon information and belief, the rest of Mr. Franzone's belongings that had been in his hotel room at the Westin at the time he was arrested, as well as the two electronic devices that were seized from the W hotel without a warrant, remain in the possession of U.S.P.I.S. to this day. Defendant's Aff. ¶ 24.

## DISCUSSION

I. The Seizure of Devices 1 and 2 Was Unconstitutional.

Mr. Franzone has standing to challenge the seizure of Devices 1 and 2 due to his possessory interest in the property.[8] The Apple MacBook Pro laptop (Device-1) and Apple

---

[8] "The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure… In evaluating these claims, the court generally considers whether the defendant had any property or possessory interest in the place searched or the items seized. *Rakas v. Illinois; United States v. Paulino; United States v. Davis,* 932 F.2d 752, 756 (9th Cir. 1991); *United States v. Burnett,* 281 App. D.C. 428, 890 F.2d 1233 (D.C. Cir. 1989)," ***United States v. Osorio***, 949 F.2d 38, 40 (2d Cir. 1991).

iPhone 11 (Device-2) seized on April 22, 2021 belong to the defendant. Defendant's Aff. ¶ 9. The Postal Inspector conceded that both of these devices were in Mr. Franzone's legal possession at the time of the arrest. Electronic Devices Aff. ¶ 11.

The Fourth Amendment of the U.S. Constitution prevents unreasonable searches and seizures. To be reasonable, a search or seizure generally has to be pursuant to a warrant, or else fit within one of the recognized exceptions to the warrant requirement. ***Carpenter v. United States,*** 138 S. Ct. 2206, 2221 (2018) (quoting ***Riley v. California***, 134 S. Ct. 2473, 2482, 189 L.Ed 2d 430, 439 [2014]).

As we will discuss, the warrantless seizure of Devices 1 and 2 was unreasonable.

A. <u>Not Incident to Arrest.</u>

The Postal Inspector stated that he seized these two devices "at the time of FRANZONE'S arrest." Electronic Devices Aff. ¶ 11.

Therefore, we will start our analysis of the seizure by explaining why the seizure does not fall within the incident to arrest exception to the warrant requirement.

The incident to arrest exception requires not only that there was a valid arrest, but also that the items searched or seized have been in "the area 'within [the arrestee's] immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence,'" ***Arizona v. Gant***, 556 U.S. 332, 339 (2009).

The Second Circuit has referred to this as "the 'grab area,'" ***United States v. Gandia***, 424 F.3d 255, 261 (2d Cir. 2005).

Here, the laptop and cell phone at issue (Devices 1 and 2) were <u>not</u> within the grab area. At the time of Mr. Franzone's arrest, he was sitting yards away from where the two devices were

sitting. Defendant's Aff. ¶ 13. By the time that the Postal Inspector seized these two devices, Mr. Franzone had already been arrested.

At neither point were the laptop and the cell phone within a distance from which Mr. Franzone "might gain possession of a weapon or destructible evidence." ***Gant***, 556 U.S. at 339.

Wherefore, the warrantless seizure of these two devices cannot be justified by the incident to arrest exception to the warrant requirement.

We will next explain why the seizure was not justified by the plain view exception.

B. <u>Not In Plain View</u>

The plain view exception to the warrant requirement applies when the Government actor was lawfully in the position from which he viewed the object in question, the agent was further lawfully in a place from which he could touch the object, and the object's incriminating nature was immediately apparent. ***United States v. Hogan***, 122 F. Supp. 2d 358, 374, 2000 U.S. Dist. LEXIS 17341 (E.D.N.Y. July 24, 2000), adopted by 122 F. Supp. 2d 358, 2000 U.S. Dist. LEXIS 17333 (E.D.N.Y. September 20, 2000), (quoting ***Minnesota v. Dickerson***, 508 U.S. 366, 374, [1993]).

We will assume *arguendo* that the U.S. Postal Inspector was lawfully on the premises of the W the day of Mr. Franzone's arrest, satisfying the first two prongs. Thus, we will turn to the third requirement of the plain view exception.

(i) <u>Incriminating Nature Not Immediately Apparent.</u>

For the plain view exception to apply, it must have been <u>immediately apparent</u> to the agent that the objects in question were incriminating. "If, however, the police lack probable

cause to believe that an object in plain view is contraband without conducting some further search of the object -- *i. e.*, if "its incriminating character [is not] 'immediately apparent," *Horton, supra*, at 136 -- the plain-view doctrine cannot justify its seizure." ***Minn. v. Dickerson***, 508 U.S. 366, 375, 113 S. Ct. 2130, 2137, 124 L. Ed. 2d 334, 345, (citing ***Arizona v. Hicks***, 480 U.S. 321, [1987]). "Whether an object's 'incriminating character is immediately apparent' is a factual matter for the district court, and is an essential prerequisite for a finding that the 'plain view' doctrine applies," ***Hogan***, 122 F. Supp. 2d at 374 (citing ***United States v. Scopo***, 19 F.3d 777, 782 [2d Cir. 1994]; ***United States v. Jenkins***, 876 F.2d 1085, 1088 [2d Cir. 1989] [per curiam]). Thus, in ***Hogan***, the Report and Recommendation adopted by the district court found that a suitcase and its contents were not seized in plain view, as it was not immediately apparent that they were incriminating. Id.

Here, there was no probable cause to believe that Devices 1 and 2 contained incriminating evidence. We presume that the Government will argue that the agents had probable cause to believe that Mr. Franzone's laptop and cell phone contained incriminating evidence for the reasons set forth in the Electronic Devices Aff. Aside from boilerplate generalizations, the Postal Inspector pointed to "FRANZONE's use of email and text message communications in connection with the operation of FF Fund," Electronic Devices Aff. ¶ 20, and, more specifically, he alleged there were monthly email communications, Id.¶ 16, and "following the April 30, 2019 meeting at which Wealth Manager-1 confronted FRANZONE… FRANZONE texted Wealth Manager-1 an explanation," Id. ¶ 17.

In the first place, we respectfully submit that if the investigators had actually had probable cause to believe that Mr. Franzone was using a cell phone in furtherance of a crime, they would have sought an eavesdropping warrant under Title III to intercept his telephone

communications sometime between April of 2019 and the two years preceding his arrest in April of 2021. That no eavesdropping warrant was ever sought is telling.

Secondly, the agent had nothing to connect these alleged communications, including a text message allegedly sent approximately two years before the seizure, to Device 1 and Device 2. There was nothing to indicate that Mr. Franzone had used either device to send the alleged communications at issue. As the text message the Postal Inspector cited was allegedly sent nearly two years before the seizure, Mr. Franzone might very well have changed cell phones sometime during those two years.

Third, the requirement is not satisfied for another reason: it was not immediately apparent from looking at Device 1 and Device 2 that the objects belonged to Mr. Franzone. When the agent found the devices, they were sitting some yards away from where Mr. Franzone was sitting. There was nothing from the external appearance of either the laptop or the cell phone to indicate that these objects belonged to Mr. Franzone.[9] They could have, for all the agent knew at the time of seizure, belonged to any of the patrons that, unlike Mr. Franzone, were by the devices at the time.[10] They could have belonged to an employee of the W for all the agent would have known.

The fact that the agent afterwards learned that the devices did indeed belong to Mr. Franzone does not change the fact that it was not immediately apparent that they belonged to the defendant.

Consequently, the devices' allegedly incriminating nature was <u>not</u> immediately apparent. The Postal Inspector's entire (after the fact) argument that there was probable cause to believe

---

[9] Defendant's Aff. ¶ 11.
[10] Defendant's Aff. ¶ 12.

that there was incriminating evidence on those devices hinged on the premise that they belonged to Mr. Franzone and that there was probable cause to believe that Mr. Franzone would have used one or more electronic devices in the course of committing the charged offenses. Electronic Devices. Aff. ¶¶ 16 – 20.

That would not have provided probable cause to believe that Mr. Franzone would have used anyone else's electronic devices. And at the time of the seizure, from the facts known to the agent, the two devices in question could have belonged to anyone. In fact, it would have been more likely, from the agent's perspective, that the items belonged to someone who was physically near the devices at the time in question, rather than to someone who was sitting some distance away.

Wherefore, the plain view exception does not justify the seizure of these two devices.

Aside from that, there is a distinct reason why the warrantless seizure of these two devices was unreasonable.

(ii) <u>Unreasonable Delay Between Warrantless Seizure and Application to Search Devices.</u>

Reasonableness is not determined solely by whether or not there was a warrant. It is based on a totality of the circumstances analysis.

Part of that analysis is the scope of a search or seizure. The extent of the intrusion on the individual's Constitutional interests factors into whether the warrantless intrusion was reasonable.

More specifically, duration factors into the analysis. A brief seizure is a lesser intrusion than a prolonged seizure, and will thus require less justification under the Fourth Amendment. ***Terry v. Ohio,*** 392 U.S. 1 (1968)*.*

The U.S. Supreme Court has made it clear that a search of a seized electronic device would require a warrant to search that device. ***Riley,*** 573 U.S. 373, 403.

Whether a warrantless seizure of an electronic device is reasonable depends in part on whether there was an unreasonable delay between the time when the device was seized and the time when the agent applied for a warrant to search that device. "The right of the police to temporarily seize a person's property pending the issuance of a search warrant presupposes that the police will act with diligence to apply for the warrant." ***United States v. Smith***, 967 F.3d 198, 205 (2d Cir. 2020).

Here, one reason that the warrantless seizure of Devices 1 and 2 was unconstitutional was because of the delay between their seizure and the agent's application to search the devices.

To analyze whether the delay was unreasonable, courts look at: "[1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay." ***Smith***, 967 F.3d at 206.

Turning to the first factor, the length of the delay, the devices were seized on April 22, 2021.[11] The agent did not apply for a warrant to search those devices for almost one month to the day—from April 22, 2021 to May 21, 2021. Electronic Devices Aff. dated May 21, 2021 (attached).

A delay of one month is unreasonable. "We give independent weight to the length of delay, and we conclude that a month-long delay well exceeds what is ordinarily reasonable," ***Smith,*** 967 F.3d at 207.

This factor therefore weighs in favor of Mr. Franzone.

---

[11] Defendant's Aff. ¶ 17; Electronic Devices Aff. ¶ 11.

Turning to the second factor, the importance of the seized property to the defendant, Mr. Franzone explains in his affidavit the importance to him of the iPhone and the Apple Macbook Pro laptop. He kept all of his notes and thoughts regarding various ongoing civil litigations on those devices, Defendant's Aff. ¶ 16. All of his contacts were stored on Device-2, "including but not limited to telephone numbers for my lawyers, which I did not have memorized." Defendant's Aff. ¶ 15.

Thus, the specific devices in question were important to this defendant. Not to mention the fact that the U.S. Supreme Court has recognized that electronic devices are fundamentally different from other items. "Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse… Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person. The term 'cell phone' is itself misleading shorthand… They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers…" *Riley*, 134 S. Ct. 2473, 2488-89.

An Apple commercial put it bluntly: "'Right now there is more private information on your phone than in your home.'" AppleInsider Staff, "Apple Urges Customers to Keep Data Safe in New 'Privacy on iPhone' Ad," Appleinsider.com (October 25, 2019) (Available at: https://appleinsider.com/articles/19/10/25/apple-shares-new-privacy-on-iphone-ad-urges-users-to-protect-personal-data) (hereafter "Apple Urges Customers to Keep Data Safe").

This factor therefore weighs in favor of Mr. Franzone. After being detained for eight months and then retaining private counsel, Mr. Franzone, through his attorneys, ultimately did send a request to the Government for the return of his personal property. Defendant's Aff. ¶ 23; Email from Defense Counsel to Government dated January 12, 2022 (attached). This resulted in

the return of Mr. Franzone's wallet, but not the return of Mr. Franzone's electronic devices, or his other personal property, still in the possession of U.S.P.I.S. Defendant's Aff. ¶ 24.

Although counsel for Mr. Franzone made a general demand for the return of his personal property, instead of making a specific demand for the electronics, this is merely because it is counsel's experience that the Government will not return electronic devices unless, i.e. the case is over. We submit that it should not be considered a reflection of the importance of the devices to the defendant, particularly where Mr. Franzone is, in this Motion, moving for the return of his electronic devices, as well as his other personal property.

The third factor is whether Mr. Franzone had a reduced property interest in these electronic devices, for example by consenting to the seizure. ***Smith***, 967 F.3d 208. We submit this factor also weighs in favor of the defendant. Mr. Franzone did not consent to the seizure of Devices 1 and 2 at any point, nor was there any co-owner that could have given consent. Further, Mr. Franzone can hardly be said to have "relinquish[ed] control of his" devices to a third party. Id. This is not like the case in ***United States v. Martin,*** 157 F.3d 46, 54(2d Cir. 1998), where the defendant had voluntarily relinquished the package by turning it over to UPS. Here, the U.S.P.I.S. agent who seized the devices swore that the devices were in *Mr. Franzone's* possession, Electronic Devices Aff. ¶ 11. .Although, as discussed, Mr. Franzone was not within grabbing distance of the devices, he was still on the premises and, had U.S.P.I.S. not intervened, Mr. Franzone would have retrieved both devices once he was finished clearing his head.

Even if there had been probable cause that there was incriminating evidence on these specific devices (which, as discussed above, the agent did not have at the time of seizure), probable cause can merely diminish a defendant's property interest "for only so long as it was reasonable for [law enforcement] to wait before obtaining a warrant to search its contents."

***Smith***, 967 F.3d at 209. Probable cause would <u>not</u> have justified a delay of one month to obtain the warrant to search the devices.

As far as the strength of the state's justification for the delay, here, the agent has so far given no excuse for waiting one month to search the devices. Thus, this factor would also weigh in favor of Mr. Franzone.

On balance, then, the prolonged warrantless seizure of Devices 1 and 2 was unreasonable given the one month delay between the time the two electronic devices were seized without a warrant on April 22, 2021 and the time that the agent applied for a warrant to search the devices on May 21, 2021.

Wherefore, the warrantless seizure of Devices 1 and 2 violated Mr. Franzone's rights under the Fourth Amendment.

(iii) <u>The Good Faith Exception Does Not Apply.</u>

Unlike in ***Smith,*** these devices should be suppressed under the exclusionary rule. As the purpose of the exclusionary rule is deterrence, it does not apply to conduct that could not have been deterred. For example, it does not apply where, due to binding precedent that existed at the time of the search, the agent could not have been on notice that his conduct would violate the defendant's Constitutional rights. ***Davis v. United States,*** 564 U.S. 229 (2011).

Thus, although the Second Circuit found that the one month delay in ***Smith*** between seizing the defendant's tablet and obtaining a warrant to search the tablet was unconstitutional, the Circuit did not apply the exclusionary rule because that investigator would not have been on notice at the time that he was violating Smith's constitutional rights. ***Smith***, 967 F.3d at 213.

The Government cannot argue that this was the case here. The Postal Inspector seized Mr. Franzone's iPhone and laptop on April 22, *2021*—the year ***_after_*** the Second Circuit had

decided ***Smith*** in *2020*. The Second Circuit was clear in ***Smith***: "how the length of delay has independent weight as a factor and how a delay of one month or more is ordinarily too long for an officer to apply for a warrant. We have described how seizure of personal electronic storage and communication devices must be given heightened consideration in terms of the defendant's interests. And we have explained how the general press of police business may not justify a lengthy delay absent particular evidence showing why other police duties reasonably took precedence. *These principles shall likewise inform the application of the exclusionary rule in future cases.*" ***Smith,*** 967 F.3d at 213 (emphasis added).

 ***Smith***, then, clearly applies to the application of the exclusionary rule here, where the seizure and delay in seeking the warrant occurred well after the Second Circuit decided ***Smith.***[12] Hence, the Government cannot argue that the agent would not have known from prior binding precedent that his conduct was unconstitutional.

 Wherefore, Mr. Franzone moves to suppress Devices 1 and 2 due to the violation of his Fourth Amendment rights.

 We turn next to the unconstitutional seizure of property from the Westin.

## II. Unconstitutional Seizure of Property from Westin.

 Again, as a threshold matter, Mr. Franzone clearly has standing to challenge the seizure of his personal belongings under the Fourth Amendment regardless of where the seizure

---

[12] Although the initial seizure took place in Florida, by the time of the seizure the Criminal Complaint and request for an arrest warrant sworn to by the Postal Inspector had already been filed in the Southern District of New York. The Postal Inspector thus knew prior to the seizure that Mr. Franzone's prosecution would occur within the Second Circuit. The Postal Inspector, who works in New York, therefore knew or should have known that Second Circuit precedent would be binding upon the Court, particularly where the seized property was transported from Florida to his office in New York.

occurred.  "A 'seizure' of personal property occurs for purposes of the Fourth Amendment if the police meaningfully interfere with an individual's possessory interests in that property," **Smith**, 967 F.3d at 205 (citing **United States v. Jacobsen,** 466 U.S. 109, 113 [1984]; **United States v. Iverson**, 897 F.3d 450, 458 [2d Cir. 2018]). As a guest of the Westin, he also would have had an additional interest in the privacy of his hotel room, **Stoner v. California**, 376 U.S. 483, 490 (1964), though according to the Postal Inspector, the agency's seizure of the property did not occur in the hotel room.

A. <u>The Seizure Was Overbroad.</u>

In the first place, the seizure of Mr. Franzone's belongings unreasonably exceeded the scope of the warrant. The Hotel Room Search Warrant specifies the categories of items to be seized in Attachment B to the warrant. <u>See</u> Hotel Room Search Warrant (attached).

However, U.S.P.I.S. did <u>not</u> restrict their seizure to the categories described in the search warrant. Rather, based on the allegations in the Postal Inspector's subsequent affidavit, and in Dr. Margaret McGuirk's Affidavit, employee(s) of the Westin packaged up *ALL* of the defendant's personal belongings from his room at the Westin. <u>See</u> Hotel Room Aff. ¶ 14 ("FRANZONE's belongings (the 'Franzone Evidence') had been removed from the Hotel Room and were secured in the Hotel"); Dr. McGuirk's Aff. ¶ 6.

A U.S.P.I.S. inspector thereafter seized from the Westin <u>ALL</u> of the personal belongings that Mr. Franzone had left in his hotel room. <u>See</u> Hotel Room Aff. ¶ 14 ("FRANZONE's belongings… had been removed from the Hotel Room", were picked up by Postal Inspector-1, and shipped to the deponent). <u>See also</u> Dr. McGuirk's Aff. ¶ 8 (none of Mr. Franzone's property was ever returned by Westin); Defendant's Aff. ¶¶ 18, 24 (all of Mr. Franzone's belongings at

the Westin were seized by U.S.P.I.S. and, upon information and belief, aside from what was turned over to counsel in January of 2022, all of the rest of Mr. Franzone's belongings from the Westin remain in the custody of U.S.P.I.S.).

The seizure included belongings that were clearly well beyond the scope of the warrant—for example, all of the clothes that were in Mr. Franzone's hotel room at the time of his arrest.

Seizing all of a defendant's belongings from an area, irrespective of whether the items match the warrant's description of items to be seized is blatantly unconstitutional. It is the exact sort of seizure that the country's Founding Fathers had in mind when they set out to ban the use of general warrants. "The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of 'general warrants.' *Payton v. New York,* 445 U.S. 573, 583… (1980); *Arizona v. Gant*, 556 U.S. 332, 345, 129 S. Ct. 1710, 173 L.Ed. 2d 485 (2009)… To prevent such 'general, exploratory rummaging in a person's belongings' and the attendant privacy violations, *Coolidge v. New Hampshire,* 403 U.S. 443, 467… (1971), the Fourth Amendment provides that 'a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity.' *Kentucky v. King*, _ U.S. _, 131 S. Ct. 1849, 1856… (2011)," *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013).

There is no possible scenario in which federal agents could have seized *even Mr. Franzone's clothes* in good faith. Mr. Franzone is charged with white collar crimes, not violent crimes. This is not a murder or an assault case where the defendant's clothes could be expected to have any relevant evidence, such as DNA.

Not a single allegation in the Hotel Room Aff.—which, according to the Hotel Room Search Warrant, was attached to the warrant—could have supported a good faith belief that

seizing all of Mr. Franzone's personal property from the Westin was constitutional. "In an oft-quoted passage, the Supreme Court has held that the particularity requirement 'makes general searches… impossible and *prevents the seizure of one thing under a warrant describing another*. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' *Marron v. United States*, 272 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231… (1927)," *Galpin*, 720 F.3d at 446 (emphasis added).

Therefore, the seizure of all of Mr. Franzone's property from the Westin violated his constitutional rights under the Fourth Amendment and was not in good faith.

Wherefore, Mr. Franzone respectfully requests that the property seized from the Westin be suppressed.

B. <u>Search Warrant's Improper Designation of Place to Be Searched.</u>

For a warrant to satisfy the particularity requirements, it must particularly describe the items to be seized and the place to be searched. *Galpin*, 720 F.3d 445 – 446. We discussed above that U.S.P.I.S. paid no attention to the description of the items to be seized, and simply seized everything.

Additionally, the Hotel Room Warrant did not set forth with sufficient particularity the place to be searched. For one thing, the Warrant designated the place to be searched as Hotel Room "1174", which was <u>not</u> Mr. Franzone's hotel room. Hotel Room Search Warrant, Bates numbers ending 095 and 096. Mr. Franzone's hotel room was <u>1147</u>. <u>See</u> Defendant's Aff. ¶ 2; Westin Invoice (attached).

Moreover, the hotel in question consists of <u>two</u> different towers, a North Tower and a South Tower. <u>See</u> attached photograph of the Westin from fivestaralliance.com. The description of the Westin in the Hotel Room Warrant makes no mention of this, and neither does the Postal

Inspector's supporting affidavit. Nor does the photograph accompanying the description in Attachment A to the Hotel Room Warrant depict the fact that there are two different towers.

As a consequence, the description in the Hotel Room Warrant provides no clarification as to whether the room to be searched is in either the North Tower or the South Tower of the Westin.

Compounded with the fact that the Hotel Room Warrant does not specify the correct room number, the executing federal agents could easily have searched not only the wrong hotel room, but the wrong building altogether. The danger that agents could have searched the wrong room is even greater when one takes into account that Mr. Franzone was not arrested inside his hotel room or even inside either of the Westin's towers. He was arrested on the premises of a different hotel, 0.1 miles away. See Defendant's Aff. ¶¶ 5, 13 – 14 and attached printout from Google Maps.

Finally, before the search warrant was even obtained, Mr. Franzone's property was no longer in any hotel room. All of his possessions from his room had been relocated to another part of the Westin. Dr. McGuirk's Aff. ¶ 6; Electronic Devices Aff. ¶ 14.

By the time of the seizure, then, even a particular description of the correct hotel room would no longer have been the place to be searched. And U.S.P.I.S. knew this before the seizure of Mr. Franzone's belongings at the Westin even according to the allegations in the Hotel Room Aff. The Postal Inspector swore that he learned on May 1, 2021 that Mr. Franzone's belongings were no longer in Mr. Franzone's hotel room. Electronic Devices Aff. ¶ 14.

Two days later, knowing that Mr. Franzone's belongings were not in any hotel room, Id., U.S.P.I.S. seized all of Mr. Franzone's belongings, allegedly on the basis of the Hotel Room Warrant. Electronic Devices Aff. ¶ 14.

Wherefore, the Hotel Room Warrant failed to state with particularity the place where the items would be seized.

    C. Search Warrant Not Supported by Probable Cause to Believe Items To Be Seized Would Be In the Place to Be Searched.

    The Hotel Room Warrant also lacked probable cause to believe that the items to be seized would be found in the place to be searched. Aside from the fact that, as discussed above, the Hotel Room Warrant did not designate the correct hotel room number or specify which tower the hotel room was located in, there was no probable cause to be believe that the items to be seized were in Mr. Franzone's hotel room.

    The basis the agent set forth for probable cause was a tip from an individual identified in the Hotel Room Aff. only as "Hotel Employee-1." Hotel Room Aff. ¶ 10.

    The Postal Inspector did not specify in his affidavit whether Hotel Employee-1's identity was known to him, meaning that it may have been an anonymous tip. However, even if the tip was from a confidential source rather than an anonymous one, courts should still analyze the reliability and veracity of the informant, the informant's basis of knowledge, and whether there was any corroboration of the tip. As the Second Circuit explained, "informants do not all fall into neat categories of *known* or *anonymous*. Instead, it is useful to think of known reliability and corroboration as a sliding scale. Where the informant is known from past practice to be reliable… no corroboration will be required to support reasonable suspicion. Where the informant is completely anonymous… a significant amount of corroboration will be required. However, when the informant is only partially known (i.e., her identity and reliability are not verified, but neither is she completely anonymous), a lesser degree of corroboration may be

sufficient to establish reasonable suspicion." ***United States v. Elmore***, 482 F.3d 172, 181 (2d Cir. 2007) (emphasis in original).

Courts also look to whether the source gave the agent information face-to-face or remotely, as face-to-face tips are considered to have a higher level of trustworthiness. ***Elmore***, 482 F.3d at 181. Although tips from "innocent" private citizens are generally presumed to be more trustworthy than tips from individuals known to be involved in criminal activity, ***United States v. Martinez***, 992 F. Supp. 2d 322, 331 (S.D.N.Y. 2014), this presumption can be overcome.[13]

That presumption is overcome here. There are no allegations in the Hotel Room Aff. to indicate the informant's reliability or veracity. The agent's affidavit is silent on whether the employee ever provided his direct contact information or his name to the agent.

The tip here required a greater degree of corroboration than in ***Elmore.*** Of course, one reason that ***Elmore*** is distinguishable is because in ***Elmore,*** the tip only needed to support reasonable suspicion, whereas here, the federal agent required probable cause for the warrant. But additionally, in ***Elmore,*** the informant, "Mazza gave the police enough information about herself to allow them to identify her and track her down later to hold her accountable if her tip proved false. She gave them her name, her relationship with the defendant, and two phone numbers at which she could be contacted… Detective Roncinske… confirmed from DMV records that the name she gave belonged to a real person and learned her address… He confirmed that he could reach her at one of the phone numbers she gave him…" ***Elmore,*** 482 F.3d at 182.

---

[13] Cf. ***Elmore***, 482 F. 3d 172, 183 (holding that "A tip from a citizen informant whose identity is disclosed [though not confirmed to a certainty] that is corroborated to a significant degree can support a finding of reasonable suspicion").

No such allegations were in the Hotel Room Aff. in the case at bar. For all we know, the Postal Inspector knew nothing more about the source than the fact that he/she allegedly worked at the Westin.

The Postal Inspector never claimed that Hotel Employee-1 was known to him from past practice. He did not allege that he had spoken with Hotel Employee-1 face-to-face.

The Postal Inspector never alleged that any steps were taken to corroborate Hotel Employee-1's tip. To the contrary, according to the Postal Inspector, after the Hotel Room Warrant was issued, information in the tip was disproven. Specifically, the Postal Inspector states that upon service of the Hotel Room Warrant, he learned that Mr. Franzone's personal belongings were not secured in Mr. Franzone's hotel room (as the tip had claimed), but rather had been packaged up and kept in a different part of the hotel. Electronic Devices Aff. ¶ 14.

Further, the tip is illogical. According to the Hotel Room Aff., the tip was that Mr. Franzone's family had requested his belongings back, that the employee had already gone into the room to "collect" the belongings, and that the room was still undisturbed, with all of Mr. Franzone's belongings (sans Devices 1 and 2), still in the hotel room. Hotel Room Aff. ¶ 10.

The supporting affidavit alleged that Mr. Franzone, but for the arrest, would have checked out on April 22, 2021,[14] that Mr. Franzone's family had requested his property back, and that Hotel Employee-1 then entered the room for the express purpose of collecting Mr. Franzone's belongings. Hotel Room Aff. ¶ 10. There was no warrant to search the room or to seize property at the time of Hotel Employee-1's entry. Mr. Franzone had not been arrested at the Westin, let alone in his hotel room. Defendant's Aff. ¶¶ 12 – 14.

---

[14] Hotel Room Aff. ¶ 8.

Why on Earth then, would Hotel Employee-1 and the Westin have left Mr. Franzone's belongings undisturbed in a hotel room that they could have rented to another guest as soon as his belongings were collected and given to Mr. Franzone's family on his behalf? Leaving a hotel room sealed off, absent any legal obligation to do so, when the hotel had already checked Mr. Franzone out[15] and could have rented the room out to another guest, makes no sense.

In sum, the tip was not credible and could not provide the basis for probable cause to believe that the items to be seized would be found in the place to be searched.

D. <u>The Seizure Was Not Supported by Consent.</u>

We doubt that the Government would even argue consent here. But for the record: Mr. Franzone never consented to a search of his room or a seizure of his belongings.

The Westin did not have the authority to consent to a search of his room or the seizure of his belongings (let alone of belongings that the search warrant did not cover). The Supreme Court "has explicitly refused to permit an otherwise unlawful police search of a hotel room to rest upon consent of the hotel proprietor. ***Lustig v. United States,*** 338 U.S. 74; ***United States v. Jeffers,*** 342 U.S. 48… No less than a tenant of a house, or the occupant of a room in a boarding house, ***McDonald v. United States,*** 335 U.S. 451, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. ***Johnson v. United States,*** 333 U.S. 10. That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel," ***Stoner,*** 376 U.S. at 489 – 490.

Even assuming *arguendo* that Dr. McGuirk may have given consent to the Westin to go into her son's hotel room for the limited purpose of returning the defendant's belongings to his family on his behalf, the seizure of all of Mr. Franzone's belongings from the Westin, nearly all

---

[15] Invoice (attached).

of which remain in the possession of U.S.P.I.S. well over a year later, obviously would have well exceeded the scope of any valid consent.

Now that we have addressed why the seizures of Mr. Franzone's belongings from the Westin and of the two devices from the W were improper, we turn to the warrant to search his six electronic devices.

### III. The Warrant to Search Six Electronic Devices Constitutes Fruit of the Poisonous Tree.

As explained in the preceding sections, the warrantless, prolonged seizure of Mr. Franzone's laptop and cell phone from the W, and the subsequent seizure of **all** of Mr. Franzone's other personal belongings from the Westin (including, but not limited to four other devices, Devices 3 – 6), violated Mr. Franzone's rights under the Fourth Amendment.

In deciding whether to exclude evidence as the fruit of the poisonous tree, the issue "is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." ***United States v. Shu Yan Eng***, 819 F. Supp. 1198, 1202 (E.D.N.Y. 1993) (quoting ***Wong Sun v. United States,*** 371 U.S. 471, 487 – 88 [1963]).

In the case at bar, the Electronic Devices Warrant was a direct and proximate result of the unconstitutional seizures of the two devices from the W and of the four other electronic devices (and *all* of Mr. Franzone's other personal belongings) from the Westin. Nothing intervened to purge the taint of the violations of Mr. Franzone's unconstitutional rights.

As there is no applicable exception here, evidence derived from the Electronic Devices Warrant should be suppressed as the fruit of the poisonous tree.

IV. Request for *Franks* Hearing.

Mr. Franzone moves for a hearing pursuant to ***Franks v. Delaware***, 438 U.S. 154 (1978)

for determinations of fact and conclusions of law.  Under ***Franks*** and its progeny,

> "'[t]o suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause [or necessity] finding.' *United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000)* (internal quotation marks omitted); *see also United States v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003)* (noting that '[i]n order to invoke the *Franks* doctrine, [a defendant] must show that there were *intentional* and *material* misrepresentations or omissions in [the] warrant affidavit.' (emphases supplied))… Accordingly … '[t]he ultimate inquiry is whether, after putting aside erroneous information and [correcting] material omissions, there remains a residue of independent and lawful information sufficient to support [a finding of] probable cause [or necessity].' *Canfield, 212 F.3d at 718* (internal quotation marks omitted)" ***United States v. Rajaratnam***, 719 F.3d 139, 146 (2d Cir. 2013).

Here, there are at least three misrepresentations in the Postal Inspector's supporting

affidavits.

First, the Postal Inspector falsely stated that Mr. Franzone was arrested at the Westin.

Hotel Room Aff. ¶ 9; Electronic Devices Aff. ¶ 11.

In reality, Mr. Franzone was arrested one to two blocks away from the Westin, at the W

hotel. Defendant's Aff. ¶¶ 12 - 14; Google Maps Directions from the W to the Westin (attached)

(indicating the two hotels are 0.1 miles apart, and separated by a cross street, Bayshore Drive).

As the Postal Inspector was one of the agents that arrested Mr. Franzone,[16] he must have

known that his statement that Mr. Franzone had been arrested at the Westin was not true.

This begs the question, since the Postal Inspector was willing to misrepresent the location

of Mr. Franzone's arrest, what else did he knowingly misrepresent?

---

[16] Electronic Devices Aff. ¶ 11.

A second misrepresentation was that Mr. Franzone was due to leave the Westin the day of his arrest for nonpayment. Hotel Room Aff. ¶ 8; Electronic Devices Aff. ¶ 10. This is false.

Mr. Franzone was not planning to check out that day. Defendant's Aff. ¶¶ 3 - 4. Check-out time is at 11 a.m. See Hotel Information section of attached printout from Marriott.com. Mr. Franzone was arrested well after check-out time on April 22, 2021. Defendant's Aff. ¶¶ 12 – 14. He had not checked out before his arrest, nor packed up his belongings, which he had left in his hotel room. He had been residing at the hotel for a year. Defendant's Aff. ¶ 2. If he had been planning to check out of the hotel room by 11 a.m. on April 22, 2021, surely he would have taken his belongings with him when he left the Westin that day, or at a *minimum*, at least have taken his passport with him (which did not).

Nor was he at risk of being evicted from the hotel for failure to pay his hotel bill. The defendant had been staying at his hotel room in the Westin for approximately a year at the time of his arrest.[17] During that time, one of the hotel's employees would periodically prompt him to make a payment to the Westin. Defendant's Aff. ¶ 3. At that point, either Mr. Franzone or his mother would make a payment to the Westin. Id. ¶ 3. Hence, when Mr. Franzone left the Westin for the day on April 22, 2021, having been staying there for a year, he did not expect the Westin to check him out of the hotel that night.

While the Postal Inspector may not have known each of these facts, the Postal Inspector certainly knew that Mr. Franzone had not packed his things; that he had left his belongings inside of his hotel room, and that Mr. Franzone was arrested well after check-out time on April 22, 2021.

---

[17] Defendant's Aff. ¶ 2.

The Postal Inspector should have known, then, that his representation that Mr. Franzone was to have checked out on April 22, 2021 was false.

Third, it is evident from the Electronic Devices Aff. that the allegation in the Hotel Room Aff. that the Westin was preserving Mr. Franzone's belongings in his hotel room[18] was false. All of his belongings had been removed from the hotel room before the Hotel Room Warrant was applied for. In fact, we know that by the time that Dr. McGuirk first spoke to Alain to request that her son's things be returned, all of Mr. Franzone's belongings had already been removed from the hotel room. Dr. McGuirk's Aff. ¶ 6.

Now, it is possible that the (anonymous or confidential) Westin employee who gave the Postal Inspector the tip, simply gave him bad information. We did, after all, discuss that the tip was insufficient to support probable cause that the items to be seized would be found in the place to be searched.

But, in light of the other demonstrated misrepresentations knowingly made by the Postal Inspector, the Postal Inspector may have also knowingly misrepresented the contents of the tip. There can be no doubt that the allegation that Mr. Franzone's belongings were in his hotel room was material to an application for a warrant to search his hotel room.

Wherefore, we respectfully request a ***Franks*** hearing.

V. Request for Return of Property.

Mr. Franzone hereby moves for the return of all of his seized personal belongings pursuant to Fed. R. Crim. Pro. 41(g). Under that Rule, "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's

---

[18] Hotel Room Aff. ¶ 10.

return," Fed. R. Crim. Pro. 41(g). Although the rule also requires that the motion be filed "in the district where the property was seized," the seizure is ongoing and all of the seized property is, upon information and belief, currently within the Southern District of New York, at a USPIS office in Manhattan. Given that the seizure is continuing within the Southern District of New York, we believe that this requirement is satisfied.

We have explained *supra* how Mr. Franzone has been deprived of his property through unlawful seizures. While we will not reiterate the reasons here, we do note that the seized property includes, *inter alia*, two electronic devices he had in his possession at the W the day of his arrest, four more electronic devices that were in his hotel room at the Westin at the time of his arrest, and all of the clothing and other belongings that had also been in his hotel room at the time of his arrest. (Though, of course, if this motion is granted, the defendant will surrender to Pretrial Services any particular items that the terms of his bond require him to, such as his passport.)


## VI. Reservation of Rights.

We respectfully reserve the right to supplement Mr. Franzone's motions should additional evidence come into counsel's possession.


## CONCLUSION

WHEREFORE, Defendant Andrew Franzone respectfully requests an Order:

1. Suppressing evidence from Devices 1 and 2 due to the violation of Mr. Franzone's Fourth Amendment rights, or granting a hearing for findings of fact and conclusions of law;

2. Suppressing evidence seized from the Westin due to the violation of Mr. Franzone's Fourth Amendment rights, or granting a hearing for findings of fact and conclusions of law;

3. Granting a *Franks* hearing;

4. Ordering that Mr. Franzone's belongings be returned pursuant to Fed. R. Crim. Pro. 41(g), and

5. For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      June 24, 2022

Respectfully submitted,


/s/ *Joseph R. Corozzo*
Joseph R. Corozzo
Angela D. Lipsman
Rubinstein & Corozzo, LLP
*Attorneys for Defendant*
*Andrew Franzone*
260 Madison Avenue, 22d Fl.
New York, New York 10016
(212) 545-8777 (ph)
(917) 722-8206 (fax)
jcorozzo@rubcorlaw.com
alipsman@rubcorlaw.com


cc: A.U.S.A. Kiersten A. Fletcher (via ECF)