UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA         :

     -against-               :       21 CR 446 (VSB)

ANDREW FRANZONE          :

                               :
------------------------------------------------------------X


# REPLY TO GOVERNMENT'S OPPOSITION TO
# MOTION TO SUPPRESS
# <u>AND FOR RETURN OF PROPERTY</u>

Joseph R. Corozzo
Angela D. Lipsman
Rubinstein & Corozzo, LLP
*Attorneys for Defendant*
*Andrew Franzone*
260 Madison Avenue, 22d Fl.
New York, New York 10016
(212) 545-8777 (ph)
(917) 722-8206 (fax)
jcorozzo@rubcorlaw.com
alipsman@rubcorlaw.com

# TABLE OF CONTENTS

FACTS ............................................................................................................................... 3

DISCUSSION ................................................................................................................... 5

I. The Seizure of Devices 1 and 2 From the W Was Unconstitutional. ...................... 5

A. Not Incident to Arrest. ........................................................................................ 5

B. Not In Plain View .................................................................................................. 7

C. Unreasonable Delay Between Warrantless Seizure and Obtaining Warrant to Search Devices 1 and 2 .................................................................................................... 8

D. The Good Faith Exception Does Not Apply. ....................................................... 13

II. Unconstitutional Seizure of Property from the Westin. ....................................... 15

A. The Defendant Has Standing to Challenge the Seizure of His Property. ......... 15

B. The Seizure Was Overbroad. ............................................................................. 19

C. The Seizure Was Not Supported By Valid Consent. ......................................... 21

D. Hotel Room Warrant. ........................................................................................ 22

E. The Good Faith Exception Does Not Apply. ..................................................... 23

III. Request for *Franks* Hearing. .............................................................................. 24

CONCLUSION .............................................................................................................. 30

The Defendant submits this Reply to the Government's Opposition to Defendant's Motion to Suppress and for Return of Property.

Although we may not address each of the arguments raised by the Government in their Opposition (ECF # 37), unless explicitly stated otherwise herein, we do <u>not</u> concede any of the Government's arguments. Rather, we continue to maintain all of the arguments made by the defendant in his Motion (ECF # 32), which we incorporate herein by reference.

## FACTS

We incorporate by reference the facts set forth in Defendant's Motion ECF # 32, and supplement that Facts Section with the following information.

On April 20, 2021, the Complaint was filed. In the Complaint, the Postal Inspector stated that his bases of knowledge included "FF Fund investors and individuals currently involved in the liquidation of FF Fund," Complaint ¶ 4. The Postal Inspector also averred that "FF Fund could not satisfy redemption requests and is currently in the process of being liquidated," Complaint ¶ 5(h). Under a section entitled "FRANZONE Misappropriated FF Fund Assets," the Postal Inspector went on to again swear that "FF Fund… is currently in the process of being liquidated," ¶ 14(a), and "In the course of FF Fund's liquidation, the court-appointed chief restructuring officer ("CRO") has endeavored to locate and value FF Fund's assets." Complaint ¶ 14(b).

This Complaint was attached to and incorporated into the Postal Inspector's subsequent applications for the Hotel Room Warrant and the Electronic Devices Warrant.

That the "FF Fund is currently in liquidation proceedings," was also used by the Postal Inspector in the Hotel Room Warrant application under "Probable Cause Regarding Subject's Commission of the Subject Offense" and under "Probable Cause Justifying Search of the Subject

Premises." Application for Hotel Room Warrant ¶¶ 5 - 6. It was later repeated under "Probable Cause Regarding the Subject Devices" under the Affidavit in Support of the Electronic Devices Warrant at ¶ 8.

In the application for the warrant to search Mr. Franzone's electronic devices, the Postal Inspector further stated that the property seized from the Westin contains "documents related to the Fund Liquidation," Id. ¶ 14.

Contrary to the statements made in the Complaint and incorporated by reference in the warrant applications, the FF Fund was not in liquidation at the time the Complaint was filed on April 20, 2022. To the contrary, it was not until April 28, 2021, six days after Mr. Franzone's arrest, that the FF Fund, through counsel, first filed a notice that the FF Fund intended to pursue liquidation, based in part on the fact that the Complaint had been filed and that Mr. Franzone had been arrested and detained. Notice of Debtors' Intention to Proceed to Confirmation Pursuant to the Liquidating Trust Alternative, *In re: FF Fund I. L.P. et al,* 19-22744 (LMI) (S.D. Fl. 4/28/21), ECF # 445.

Certified records from the Westin, Fourt Lauderdale Beach (hereinafter "Westin") show that Mr. Franzone last used his hotel room key to enter the room at 6:50 p.m., on April 21, 2021, the evening before his arrest. On the day of the arrest, April 22, 2021, building keys were used to access his hotel room at 11:15 a.m.; Grand Master keys and Electronic Lockout keys were used on the hotel room at 3:26 p.m. and Electronic Lockout keys were then used again at 3:30 p.m. and 3:34 p.m. Reply Exhibit A – Dormakaba Records Subpoenaed from Westin..[1] Shortly thereafter, federal agents asked the Westin to provide these records to them. See Email from

---

[1] As a reminder, the day of the arrest, Mr. Franzone left his room for the day between 11 a.m. and 12 noon; thereafter, he spent at least three to four hours at the W before the arrest. Defendant's Aff. ¶ 12.

Westin Security Manager (attached), stating "The initial lock interrogation was requested by Federal agents." See also Reply Exhibit A Dormakaba Records - (the lock interrogation report requested by federal agents stating "Interrogated 04/22/2021 03:51 PM").

The Westin's records also show that no one unlocked the hotel room door at any point between April 23, 2021 and May 3, 2021 (the date that U.S.P.I.S. seized Mr. Franzone's property from the Westin). See attached Interrogation Report for Lock # 1147.


## DISCUSSION

### I. The Seizure of Devices 1 and 2 From the W Was Unconstitutional.

#### A. Not Incident to Arrest.

The Government has not disputed that Andrew Franzone ("Franzone") was yards away from Devices 1 and 2 at the time. Defendant's Aff. ¶ 13; Gov's Opp. p. 10. Indeed, the Government has not introduced any facts on the issue of the seizure of Devices 1 and 2 from the W hotel (the "W"). Their "Facts" section makes a conclusory statement that these two electronic devices "were seized incident to the defendant's arrest." Gov's Opp. p. 4 and again at Gov's Opp. p. 6. That is not an allegation of fact; it is an unsupported conclusion of law. (The Government also sticks to the false assertion that the arrest occurred "outside of… the Westin," Gov's Opp. p. 4, while not presenting anything to disprove that the arrest occurred outside of the W, on the W's premises.)

Instead, the Government argues that the devices were seized incident to arrest because, in their view, a yard "is approximately a single pace... he was 'some' paces away from his devices… the arresting officers would have seen him some paces away from his workstation,

presumably with those items within his line of sight… and with no other individual attending to the devices," Gov's Opp. p. 10.

(The Government provides no support for equating a "yard" with "a single pace" or a "short step[]". Gov's Opp. p. 10. Further, while Mr. Franzone had been working with the devices at the W prior to the events in question, nowhere in either the defendant's Motion or the defendant's Affidavit in Support did the defendant use the term "workstation" to describe where the arresting officers found the devices. We do not know where the Government is getting that term from. "Workstation" would seem to carry the misleading connotation that Mr. Franzone had a dedicated desk on the W's outdoor premises. That would be absurd. The scene in question was one of the W's outdoor bars, Motion p. 6, as illustrated by a photograph taken at the W. Motion Exhibit E.)

In support of their argument that yards away would fall within the defendant's "grab area," the Government does <u>not</u> analogize to any similar cases. Rather, the Government cites to ***United States v. Gandia***, 424 F.3d 255, 261 (2d Cir. 2005).

That case does not help the Government. In ***Gandia***, the Second Circuit found that the search was <u>not</u> a protective sweep or search incident to arrest, and remanded the matter to develop the record on the issue of consent.

As the Government's argument that the devices were seized incident to arrest is unsupported by either any analogous cases or any new facts, as discussed in the Motion, the seizure of Devices 1 and 2 was not incident to arrest.

Wherefore, Mr. Franzone moves to suppress evidence from Devices 1 and 2 or for a hearing to determine findings of fact and conclusions of law.

B. Not In Plain View.

Similarly, the Government has not introduced any facts that would support their assertion that the seizure of Devices 1 and 2 were covered by the plain view doctrine. Instead, they simply state it would be immediately apparent that the devices belonged to Mr. Franzone—and therefore, under their view, apparent that they were incriminating—due to "the defendant's proximity to the devices at the time of his arrest," Gov's Opp. p. 10.

That strikes us as odd because based on what we have already presented, bystanders would have been in closer proximity to these two devices at the time in question than Mr. Franzone. While the defendant was yards away from his laptop and cell phone, Aff. ¶ 13, "The area where [the defendant] had left [Device-1 and Device-2] was not crowded, but there were other customers there." Aff. ¶ 12.

There having been no identifying features on the outside of either device to mark the devices as the defendant's, Aff. ¶ 11, and the Government not having alleged that any of the arresting agents had observed Mr. Franzone using either device, there is thus no way for it to have been immediately apparent that these devices belonged to Mr. Franzone, let alone that they were incriminating.

We do not need to dignify the Government's remaining discussion as to plain view with a response, except to say that *subsequent* search warrants concerning electronic devices are irrelevant to the question of whether it was immediately apparent that they were incriminating at the time of the seizure of these devices.

Wherefore, and as discussed in the Motion, Device-1 and Device-2 were not in "plain view," and Mr. Franzone continues to move to suppress evidence from the Devices or, in the alternative, for a hearing for findings of fact and conclusions of law.

<u>C. Unreasonable Delay Between Warrantless Seizure and Obtaining Warrant to Search</u>
<u>Devices 1 and 2.</u>

In addition to the initial seizure of Devices 1 and 2 being unconstitutional, the federal agency waited an unreasonably long time to get a warrant to search the devices.

The Government does not dispute that the Second Circuit's decision in ***United States v. Smith***, 967 F.3d 198 (2d Cir. 2020) applies, but relies upon two District of Connecticut cases, ***United States v. Tisdol***, 544 F. Supp. 3d 219 (D. Conn. June 9, 2021) and ***In re Search Warrant***, 527 F. Supp. 3d 179 (D. Conn. Nov. 23, 2020), and a case from the Eastern District of New York, ***United States v. Corbett***, 2021 U.S. Dist. LEXIS 191323 (E.D.N.Y. Sept.. 30, 2021), to argue that the ***Smith*** factors weigh in favor of the Government. The Government is wrong.

In ***Tisdol***, 544 F. Supp. 3d 219, where, as here, the defendant was detained during the delay in obtaining a warrant, the District of Connecticut nevertheless suppressed evidence from the search, finding that on balance, the ***Smith*** factors still weighed in favor of the defendant.

***In re Search Warrant,*** 527 F. Supp. 3d 179, is clearly distinguishable. There, "significantly, a judge had authorized both seizures <u>and</u> searches of these devices, based on probable cause, even before the seizures were made," 527 F. Supp. 3d at 188. In contrast, here, as discussed in the Motion and above, Devices 1 and 2 were seized without a warrant and without any exception to the warrant requirement.

So, too, ***Corbett***, is distinguishable. For example, in ***Corbett,*** 2021 U.S. Dist. LEXIS 191323, not only did the defendants wait until filing their motions to request the return of the

devices (while Mr. Franzone made a request months before filing his motions),[2] but the E.D.N.Y. accepted the Government's justification for the delay (the continuing investigation).

Here, the **Smith** factors still weigh in Mr. Franzone's favor. As to the first factor, even the Government concedes that under **Smith**, the length of the delay (a month) weighs in Mr. Franzone's favor. Gov's Opp. p. 12. As to the second factor, the importance of the seized property to the defendant, the Government "credit[s] the defendant at his word, the Arrest devices were important to him," Id., but nevertheless argues that the factor weighs in the Government's favor because Mr. Franzone was incarcerated throughout the delay, and therefore could not have used the devices himself during this period. Id.

We do not accept the reasoning of the sister districts that being incarcerated negates the importance of electronic devices to their owner. Frankly, we are deeply troubled by the potential ramifications of the Government's blanket assertion that because Mr. Franzone was detained, "the possessory interest implicated by the Fourth Amendment was simply not applicable." Gov's Opp. p. 12 – 13. How is that statement not chilling at best, petrifying at worst? By that exact same reasoning, should we permit warrantless searches of the homes of incarcerated defendants on the ground that a home owner cannot use his home in person while he is detained by the Bureau of Prisons pending trial? An incarcerated homeowner still maintains the right to allow other people to stay at his residence, whether for free or for a price, the right to put his home up for sale, and, most importantly, the right to exclude law enforcement from his home barring a valid warrant.

---

[2] We also note that Mr. Franzone had had trouble communicating with the outside world while he was detained, Defendant's Aff. ¶ 21. Therefore, we do not believe that it should be held against Mr. Franzone that he had not demanded his property back even sooner.

Why should the same not hold true for a defendant's electronic devices? In the absence of a warrant, why should a cell phone owner detained pending trial not still have the right to allow others (such as his family or his lawyers) to use the devices, to put his devices up for sale, or simply to keep his private property out of law enforcement's possession?

The U.S. Supreme Court has recognized that modern electronic devices generally contain <u>more</u> private information than would be found in the home. "Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." ***Riley v. California***, 134 S. Ct. 2473, 2491 (2014) (emphasis in original).

Electronic devices, then, should be entitled to <u>at least as much </u>protection under the Fourth Amendment as the home. As being incarcerated does not give law enforcement the right to search or seize a defendant's home without a warrant or a valid exception to the warrant requirement, we do not see why incarceration should weigh in favor of permitting a delay between the warrantless seizure of devices and applying for a warrant to search those devices.

However, regardless of whether the Court sides with the sister district courts on this, the factor is not dispositive, as we know from ***Tisdol***, where the court suppressed the evidence notwithstanding the defendant's incarceration.  ***Tisdol****,* 544 F. Supp. 3d 219.

 Regarding the third factor, the Government argues that the defendant's property interest in the two devices was diminished because he had already been charged by the Complaint and a warrant to search the hotel room (which authorized, *inter alia,* the seizure of any electronics in the hotel room) was issued "mere days" after the arrest and seizure of Devices 1 and 2. Gov's Opp. p. 13. We disagree.

This is not like the case in **In re Search Warrant** where "the devices <u>at issue</u>" were seized "by warrant and/or consent," and a "warrant was issued… <u>prior to</u> the seizure permitting search of the devices," 527 F. Supp. 3d at 187 (emphasis added).

In contrast, here, there was no warrant to seize or search Devices 1 or 2 prior to their seizure. No warrant concerning *these* two devices would issue until one month <u>after</u> they had been seized *without* a warrant, without consent, and <u>without an exception to the warrant requirement</u>, which also makes it distinguishable from **Corbett**, in which the E.D.N.Y. found that the devices "were lawfully seized incident to the defendants' arrests," 2021 U.S. Dist. LEXIS 191323, *18.

In **Tisdol,** it was "obvious that Defendant's cell phone was not inherently criminal and that Defendant did not voluntarily relinquish his phone nor otherwise consent to search." 544 F. Supp. 3d at 227.  As we have discussed, above and in the Motion, it was not immediately apparent at the time of seizure that the two devices even belonged to Mr. Franzone, let alone that they were incriminating.

So, here, although we continue to maintain that the third factor weighs in favor of Mr. Franzone, the absolute best that the Government could hope to argue would be that this factor is "neutral," <u>Id.</u>, which would not do anything to tilt the balance of factors towards the Government.

The warrant to search the hotel room is relevant insofar as it proves that the federal agent could have applied for a warrant days after the seizure of Devices 1 and 2, but *chose not to*, which brings us directly to the fourth and final factor: justification for the delay.

It appears that the Government has not asked the federal agent to explain the month long delay between seizing the two devices and seeking a warrant to search the devices. The

Government has not proffered any new facts in support of their argument. Rather, the Government attempts to justify the delay by stating that the devices first had to be transported from the Southern District of Florida to the Southern District of New York, and by arguing that "USPIS continued to investigate… including, among other things, by obtaining the First Warrant" (for the hotel room), Gov's Opp. p. 14.

The former argument is meritless on its face. Even if we assumed for the sake of argument that the two devices had to be transported to New York before the agent could apply for a warrant to search them,[3] the seizures occurred in 2021, not 1821 or even 1921. In the age of one day shipping (certainly available via commercial carriers such as FedEx and UPS, and presumably through the United States Postal Service, as well), and of direct daily flights to and from Florida and New York, needing to transport devices from Florida to New York is no excuse for a month-long delay. Cf. *Tisdol*, 544 F. Supp. 3d 227 ("even communication snafus… do not excuse an extended delay… the Government's complete lack of explanation for the month-long communication failure…. totally disregards the temporal limitations of the Fourth Amendment's reasonableness requirements").

As to the second argument, we concede that if the application for the warrant to search Devices 1 and 2 depended on investigative steps taken between their seizure and the application, it would be a different story. However, an analysis of the electronic devices warrant application shows that the agent was not relying on evidence subsequently seized from the Westin, or evidence otherwise obtained during the month long delay, to support the warrant application. Rather, in seeking a warrant to search, *inter alia,* Devices-1 and 2, the agent was relying upon

---

[3] And, to be clear, we are not convinced that this is true.

the allegations in the Complaint (which predated the seizure), and his general knowledge and experience as a USPIS agent (which also predated the seizure).

Not to mention the fact that the seizure of property from the Westin hotel occurred on May 3, 2021, while the agent did not apply for the warrant to search Electronic Devices until May 21, 2021 (18 days later). The Government has not proffered *any* investigative steps that were taken during those 18 days, nor any other justification for the delay.

Therefore, the Government's proffered justifications for the month-long delay both fall apart, and the fourth factor strongly weighs in favor of Mr. Franzone.

On balance then, we have shown how all four factors still weigh in favor of Mr. Franzone. However, worst-case scenario for the defendant, even in the event that the Court disagrees and concludes that one factor weighed in favor of the Government (importance of the devices to Mr. Franzone) and that one factor was neutral (reduced property interest), such a scenario would leave the balance of the factors as 2 factors still in favor of Mr. Franzone (length of the delay and lack of justification for the delay), 1 factor in the Government's favor, and one factor benefiting neither party. Wherefore, as in *Tisdol* (one of the cases the Government relies upon), the *Smith* analysis would still come out in defendant's favor.

Either way, the balance of the factors weighs in favor of Mr. Franzone and the evidence from the two devices should still be suppressed.

### D. The Good Faith Exception Does Not Apply.

The Government argues that even if Mr. Franzone's rights under the Fourth Amendment were violated, the motion to suppress evidence from Devices 1 and 2 should be denied on the

theory that the Postal Inspector relied in good faith upon the Electronic Devices Warrant when searching Devices 1 and 2. Gov's Opp. p. 14.

The Government misses the point, which is that the agent did <u>not</u> act in good faith when he unconstitutionally seized Devices 1 and 2 without a warrant or an applicable exception to the warrant requirement, nor, in the wake of ***Smith,*** did he act in good faith when he waited a month after seizing Devices 1 and 2 to apply for a warrant to search Devices 1 and 2.

The search of Devices 1 and 2 was the fruit of the prior violations of Mr. Franzone's constitutional rights (the unconstitutional seizure and the unconstitutional unjustified delay between the warrantless seizure and the application for the search warrant). The Government has not (and cannot) show that an exception to the fruit of the poisonous tree doctrine would apply.

However, to the extent, if any, that the Court finds the Electronic Devices Warrant is relevant, the warrant to search the devices would fit into one or more exceptions to the general rule that an agent executing a search warrant has a good faith basis for relying on the warrant.

First, in the wake of ***Smith,*** the Affidavit in Support of the Electronic Devices Warrant is clearly deficient on its face for failing to address the ***Smith*** factors, especially why there was a month long delay between seizing Devices 1 and 2 and applying for a warrant to search Devices 1 and 2.

Second, the magistrate had a duty to inquire as to the ***Smith*** factors where the application itself showed there was a month long delay between the seizure and the application without addressing ***Smith.***

Since, as discussed above, the ***Smith*** factors weigh in Mr. Franzone's favor, either the magistrate was knowingly misled concerning the ***Smith*** factors, or the magistrate wholly

abandoned this duty. Either way, the agency did not rely in good faith upon the Electronic

Devices Warrant. ***United States v. Galpin,*** 720 F.3d 436, 452 (2d Cir. 2013) (citing ***United***

***States v. Moore,*** 968 F.2d 216, 222 [2d Cir. 1992], which in turn was citing ***United States v.***

***Leon***, 468 U.S. 897, 923 [1984]).

Wherefore, and as discussed in the Motion, the good faith doctrine does not apply.


II. Unconstitutional Seizure of Property from the Westin.

A. The Defendant Has Standing to Challenge the Seizure of His Property.


We must tackle this basic threshold issue because the Government, incredibly, argues that

Mr. Franzone does not have standing.

First, the Government has incorrectly framed the issue as whether Mr. Franzone has

standing to challenge a search of whatever room the Westin relocated his belongings to. The

issue is not whether Mr. Franzone has a privacy interest in that location, it is whether he has

standing to challenge a seizure of his own property.

Let us begin by noting that the cases the Government cites to for their argument all

predate the United States Supreme Court's expansion of what triggers an individual's Fourth

Amendment rights. Namely, today (as at the time of the seizure), the privacy test taken from

***Katz v. United States,*** 389 U.S. 347, is only *one* way that can confer standing, not the only way.

***United States v. Jones***, 565 U.S. 400, 406 – 408 (2012). Therefore, a search had occurred in

***Jones***, 565 U.S. 400, where a GPS device had been installed upon a motor vehicle, even when

the motor vehicle was located in public; and a search had occurred in ***Carpenter v. United States,***

138 S. Ct. 2206 (2018), even when the records were in the possession of a third party.

So in arguing that Mr. Franzone lacks standing because of whether he has a privacy interest in whatever room the Westin moved <u>his personal property </u>to, the Government entirely misses the point. Mr. Franzone had a constitutional right to possess the property, and therefore a right under the Fourth Amendment of the Federal Constitution to be free from unreasonable seizures of his belongings <u>irrespective</u> of where his personal property was located when seized.[4]

In support of their argument that Mr. Franzone lacks standing, the Government cites to ***United States v. Rahme***, 813 F.2d 31 (2d Cir. 1987), ***United States v. Cowan***, 396 F.2d 83 (2d Cir. 1968), ***Abel v. United States***, 362 U.S. 217 (1960). (The Government also cites to decisions from other circuits from the 1970s and 1980s, which we need not concern ourselves with at this time).

The Government's reliance upon these decisions is misplaced. In both ***Rahme*** and ***Cowan***, <u>at the time of the seizures</u>, the hotels had statutory liens against the property at issue under New York Lien Law § 181 for non-payment. ***Rahme***, 813 F.2d at 34 – 35; ***Cowan***, 396 F.2d at 86 – 87. "And since the hotel, not Cowan, was entitled to retain possession at the time when the baggage was seized there was no interference with Cowan's property rights," <u>Id.</u> at 87.

Here, the seizures took place in Florida, so <u>New York</u> Lien Law § 181 does not apply and the Government has not cited any analogous Florida statute.

More importantly, even if Florida had an identical lien statute, it would not apply here. But in order to explain, we must take a small detour to clear up the Government's muddying of the sequence of events.

As set forth in the Motion and supported in the exhibits, the chronological sequence of events was as follows:

---

[4] <u>See also </u>Florida Statutes Title XLVII, Section 933.04.

1. 4/22/21: The Westin locks Mr. Franzone out of the hotel room See Interrogation Reports for Lock # 1147 (attached to Reply), indicating that the Westin used keys on the hotel room door at 11:15 a.m., 3:26 p.m., 3:30 p.m., and 3:34 p.m. on April 22, 2021, but that no keys were used on the door at any point between April 23, 2021 and May 3, 2021 (the day that Mr. Franzone's property was seized from the hotel).

2. 4/22/21: Apparently within less than half an hour of the lockout, federal agents request records showing same from the Westin. Id. (showing Interrogation Report run at 4/22/2021 at 03:51 PM); email from Westin security manager (stating that Federal agents had asked the Westin to run the Interrogation Report for Mr. Franzone's hotel room).

3. 4/22/21: Mr. Franzone was arrested and Devices 1 and 2 were seized. (We do not have the precise time of the arrest and the seizure. However, based on phone records provided by the Government, it would appear they occurred subsequent to the Federal agents' request for records at the Westin.)

4. 4/22/21: subsequent to the arrest, and subsequent to locking Mr. Franzone out of the hotel room, the Westin checked Mr. Franzone out of the room at 22:20,[5] without speaking with either the defendant or his family on the matter.

5. 4/24/21: Dr. McGuirk a/k/a Mrs. Franzone (defendant's mother) paid Mr. Franzone's hotel bill. In the same telephone conversation, she requests the return of the defendant's property on his behalf, but is told the request must be directed to another employee.

---

[5] Motion Ex. C – Hotel Invoice p. 1.

6.  Defendant's mother thereafter speaks to that other hotel employee to request the return of property on her son's behalf, and is told that the property, while still at the hotel, has already been removed from his room (presumably on 4/22/21, sometime after 3:26 p.m.).

7.  4/28/21: Postal Inspector confers with Hotel Employee-1.

8.  4/30/21: Postal Inspector applies for and receives Hotel Room Search Warrant, having referred in the application for the warrant to the defendant's mother's request to the hotel for the return of the property;

9.  5/3/21: the agency picks up Mr. Franzone's belongings from the Westin.

Any statutory lien that the Westin might conceivably have otherwise had was therefore discharged on April 24, 2021, at the time that the defendant's mother called the hotel and paid his final bill. Motion Exhibit A – Defendant's Mother's Affidavit ¶ 4; Motion Exhibit B – Defendant's Father's American Express bill page 3 (corroborating that the bill was charged to the credit card on April 24, 2021).

The hotel bill was therefore paid approximately <u>9 days before</u> the seizure from the Westin (which occurred on May 3, 2021). And we know from the Postal Inspector's application in support that he spoke to a hotel employee on <u>April 28, 2021</u>,[6] *after* the hotel bill had been paid (but before the seizure), because the application references the defendant's mother's request for the return of the property on her son's behalf—a request that was made after the bill had been paid. (The Government might point out that the defendant's mother first made the request on April 24, 2021. If anything, that would *hurt* the Government's argument, because that initial request was contemporaneous with the payment of the hotel bill.)

---

[6] Motion Exhibit H – Aff. In Support ¶ 10.

It is clear then that the Postal Inspector conferred with his source at the hotel on April 28, 2021, 4 days <u>after</u> the hotel bill had been paid in full on April 24, 2021.

*Abel* is likewise distinguishable. In *Abel*, various items were admissible where, *inter alia,* certain items were seized incident to arrest, and other evidence had been abandoned by the defendant who had thrown them out in a wastepaper basket. However, here, the Government has not alleged that Mr. Franzone abandoned any of his property (nor is there anything that would support an argument that he had abandoned property at the Westin). Far from throwing property in the wastepaper basket (which would evince an intent to discard property), Mr. Franzone, through his mother, requested the return of his property within days of his arrest. And while there is a dispute between the parties as to whether the search incident to arrest exception applies to Devices 1 and 2, even the Government has not tried to argue that a seizure from a different hotel some 11 days after the arrest could somehow be considered incident to arrest.

Wherefore, the Government's argument that Mr. Franzone lacks standing to contest the seizure <u>of his own property</u> fails to withstand scrutiny.


B. The Seizure Was Overbroad.

The Government is, of course, free to introduce any evidence there may be that would indicate that the defendant is wrong when he says that the federal agency seized <u>all</u> of the possessions that had been in his hotel room at the Westin. But the Government has not introduced any evidence on this point.

Instead, the Government argues that the <u>defendant's mother's affidavit</u> somehow proves that the federal agency did not seize all of Mr. Franzone's belongings from the Westin. In support, they use the portion where she had been told "that my son's electronic devices had been

picked up by a man named Ed Gannon, and that the rest of my son's belongings had been placed in two… bags, which were in the Hotel's business center," Ex. A Dr. McGuirk a/k/a Mrs. Franzone's Affidavit ¶ 6, to seemingly argue that only Mr. Franzone's electronics were seized from the hotel, while nothing from the two black garbage bags was seized. Gov's Opp. Footnote 2, p. 21.

This misguided argument requires changing the chronological order of events. The Government's interpretation would require that the federal agency seized Mr. Franzone's property from the hotel *before* the defendant's mother spoke with the hotel employee. We know from the Postal Inspector's affidavit in support of the Electronic Devices Warrant that the federal agency did not seize property from the Westin until May 3, 2021—approximately 11 days after Mr. Franzone's arrest on April 22, 2021. We also know from the Postal Inspector's affidavits in support of both warrants that the defendant's mother requested the Westin return her son's property *before* anything was seized from the Westin. And we know from the mother's affidavit that she spoke with one Westin hotel employee on April 24, 2021, and another hotel employee "within a few days" of April 24, 2021, <u>not</u> over a week later.

Paragraph 6 of the mother's affidavit is easy to explain: The Postal Inspector had picked up her son's electronic devices alright—<u>he had picked up Devices 1 and 2 on the day of the arrest, April 22, 2021</u>. Clearly, the federal agency must have communicated this fact to the hotel by the time that the defendant's mother requested the property be returned, because she requested the property back *before* the seizure from the Westin took place on May 3, 2021.

However, since there is a disputed issue of fact as to how much of the defendant's property was seized from the Westin on May 3, 2021, and since this issue goes to whether the

seizure was unconstitutionally overbroad, we respectfully request a hearing be held for findings of fact and conclusions of law.

C. The Seizure Was Not Supported By Valid Consent.

Despite bringing up the Hotel Warrant frequently in their memorandum, the Government states that the seizure from the Westin was supported by consent from the Westin, not by the Hotel Warrant. Gov's Opp. p. 17.

There are two problems with this. The first is that the Westin was <u>not</u> in a position to give consent. Again, as discussed above, the Government cited cases in which <u>at the time of the seizures</u> the hotels had had statutory liens against property, ***Rahme; Cowan***; and a case where the defendant had abandoned property by throwing it away in a wastepaper basket, ***Abel***. All are, as discussed above, distinguishable from the case at bar, where Mr. Franzone did not throw any property away, and where, <u>if</u> Florida provides for a statutory lien, any such lien would have been discharged 9 days before the seizure from the Westin. The Government also cites to ***United States v. Davis***, 967 F.2d 84 (2d Cir. 1992), in which the Second Circuit held that the owner of a footlocker, which was located inside the apartment of the footlocker's owner, had the authority to give consent to a search of his own footlocker (and any containers inside said footlocker). That is all well and good, except for the fact that the Government is again missing the point.

The issue is not whether the Westin could consent to a search of the Westin's premises, it is whether the Westin could give consent to a *seizure* of Mr. Franzone's property. Here, where Mr. Franzone's hotel bill was paid before the agent spoke with his source, let alone before the seizure occurred, and where Mr. Franzone's mother, on his behalf, requested the return of his belongings at the same time that his hotel bill was paid and again within days of paying the bill,

there is no reason to believe that the Westin had had any authority to consent to a seizure of Mr. Franzone's belongings.

The second problem with arguing consent is that if the Westin had had authority to consent to the seizure, the question would then become whether the Westin actually gave consent for the seizure. The Postal Inspector's sworn affidavit specifically states, "Hotel Employee-1 would provide the Franzone Evidence to USPIS *based upon the Hotel Room Warrant*." Motion Exhibit J – Agent Affidavit in Support of Application for Warrant to Search Electronic Devices ¶14 (emphasis added).

The Postal Inspector's own words indicate to us that the Westin's only intent was to comply with the Hotel Room Warrant. Not attempting to disobey a warrant does not prove consent. Whether there was actually consent is therefore a mixed issue of fact and law, which would require a hearing.

Since the Government relies only upon consent for the property seized from the Westin, not upon the Hotel Room Warrant or any other exceptions to the warrant requirement, we respectfully continue to move for an Order suppressing the property seized from the Westin  or, in the alternative, for a hearing for findings of fact and conclusions of law.


D. Hotel Room Warrant.

We stand by our arguments in the Motion regarding the flaws in the Hotel Room Warrant. However, if the Government concedes that the seizure from the Westin was a warrantless seizure, and will also stop raising the application for and existence of the Hotel Room Warrant in support of their arguments, then we would have to concede that the Hotel Room Warrant issues are moot.

E. The Good Faith Exception Does Not Apply.

The Government again argues that any violation of Mr. Franzone's constitutional rights was done in good faith, this time relying upon 1) "the Westin's control over the area in which the Westin Devices were located," 2) "the Westin's consent to provide the devices to USPIS", 3) the warrant to search the Electronic Devices, Gov's Opp. p. 21 – 22 and 4) "the Postal Inspectors… had probable cause to believe they contained evidence, as demonstrated by the First Warrant." Gov's Opp. p. 19.

The Westin's control over the Westin is also what the Government unpersuasively argues robs Mr. Franzone of standing. Just as the issue was whether Mr. Franzone has standing over the seizure of his own property, not whether he had a privacy interest in the Westin, so too, the Westin's control over the Westin's premises was insufficient to provide good faith for the warrantless seizure of Mr. Franzone's property from the Westin.

Turning to consent, not only did the Westin not provide consent as we explained above, but furthermore, the Postal Inspector's Affidavit in Support of the Electronic Devices Warrant indicates that the inspectors knew that the seizure was not based on consent. "Hotel Employee-1 would provide the Franzone Evidence to USPIS *based upon the Hotel Room Warrant,*" Motion Exhibit J Aff. in Support of Electronic Devices Warrant, ¶ 14 (emphasis added). Therefore, consent did not supply a good faith basis for the warrantless seizure from the Westin.

The warrant to search the Electronic Devices was not obtained until *after* the warrantless seizure of property from the Westin, and therefore could not have provided good faith for the unconstitutional seizure from the Westin. Again, the search of Devices 3, 4, 5, and 6 was the fruit of the unconstitutional seizure from the Westin, and the Government has not established that an exception to the fruit of the poisonous tree doctrine would apply.

However, to the extent, if any, that the Electronic Devices Warrant is relevant, we have already discussed in a previous section why agents could not rely upon the Electronic Devices Warrant in good faith.

As to the Hotel Room Warrant demonstrating that the agents believed the seizure was supported by probable cause, whether or not there was probable cause to believe the seized property contained evidence is irrelevant to the good faith issue. Tthe Government has not cited any authority that having probable cause provides a separate exception to the warrant requirement. Further, the Government cannot have it both ways. If they are intend to  rely upon the Hotel Room Warrant to justify the seizure of Mr. Franzone's property from the Westin, then the issues that we raised concerning the Hotel Room Warrant in the Motion are not, as the Government submits, moot. Those issues would go to whether the agent could have relied on the Hotel Room Warrant in good faith.

However, the Government has already conceded that the seizure of the property from the Westin was not done pursuant to the Hotel Room Warrant. This should inform the issue of whether the agent acted in good faith when violating Mr. Franzone's constitutional rights.

Wherefore, the good faith exception to the exclusionary rule does not apply, and evidence derived from the unconstitutional seizure from the Westin should be suppressed.


III. Request for *Franks* Hearing.

The Government argues that Mr. Franzone's statement that he was not due to leave the hotel on the day of the arrest is merely "self-serving" and "unsupported by any evidence." Gov's Opp. p. 26.

Mr. Franzone, however, did not merely aver that he had no intention of checking out the day of his arrest. He also explained in his affidavit that he had been staying at the Westin for a year, and that during that year, the hotel would contact him to remind him to make a payment when his hotel bill started to build. Defendant's Aff. ¶ 3. Whenever this happened, either he or his mother would make a payment to the hotel, without Mr. Franzone being involuntarily checked out for nonpayment. Id. This is in accord with his mother's affidavit that during the year that Mr. Franzone was staying at the hotel, she periodically called to pay his hotel bill. Mother's Affidavit ¶ 3. It is also corroborated by discovery provided by the Government. For example, we see from Westin Invoice Number 7796443, dated December 21, 2020, that the defendant (or someone on his behalf) made a payment of $ 2,553.63 on December 21, 2020 (not to mention payments of $ 1,500 on November 28, 2020 and $ 1,000 on December 8, 2020). Westin Invoice (attached). While the invoice lists a "departure date" of December 21, 2020, as explained in Mr. Franzone's affidavit, he was not checked out of the hotel at this time, let alone for nonpayment. Notably, although he had been accruing a hotel bill even larger than the bill had been on the day of the arrest, the December 21, 2020 invoice says nothing about "No Access."

The Government cites to the hotel bill to indicate that Mr. Franzone was locked out of his room the day of the arrest. Gov's Opp. p. 18. The Government is conveniently leaving out that this same invoice was generated at 23:10 and that it indicates that the hotel checked Mr. Franzone out at 22:20, Motion Ex. C – Hotel Invoice, p. 1 (listing Departure Date as at 22:20 on the day of the arrest and stating, directly above the table of charges and credits, "APR-22-2021 23:10 ROBEMUN4). The invoice thus indicates that the hotel checked Mr. Franzone out *hours* after both check-out time and Mr. Franzone's arrest. See Motion at p. 9 - 10. The Government also leaves out that federal agents appear to have been at the Westin at or about the time the

Westin decided to lock Mr. Franzone out of his hotel room. Compare time of lockout on Interrogation Lock Report (3:26 p.m., 3:30 p.m., 3:34 p.m.) to the time that the Interrogation Lock Report was run per the request of Federal agents (03:51 PM).

If we were not sufficiently clear in the Motion, then let us be unequivocal now: part of our *Franks* argument includes that the Postal Inspector made a deliberate misrepresentation when he alleged that the hotel employee told him that Mr. Franzone "was slated to leave the hotel [the day of the arrest] due to nonpayment." Exhibit J ¶ 10; Exhibit H ¶ 8.[7]

Our argument also includes that the Postal Inspector deliberately misstated the location of the arrest and of the seizure of Devices 1 and 2. The Government brushes off the difference by either suggesting that nearby hotels are interchangeable, or by continuing to insist that the location was the Westin. Gov's Opp. p. 4 (stating, without citing evidence, "arrested outside of, and nearby to, the Westin"). However, as shown in the Motion, the two hotels are on different blocks, separated by a cross street.

Therefore, the Postal Inspector, in applying for a warrant to search the Westin, having been one of the agents involved in the arrest of Mr. Franzone and seizure of Devices 1 and 2 from the W, had to have known that the arrest and seizure were at the W, not at the Westin.

The Government accuses us of using innuendo, so again, let us be unequivocal that one of the Postal Inspector's misrepresentations was that Mr. Franzone's belongings had been left undisturbed in the Hotel Room. Motion Exhibit H Affidavit in Support ¶ 10.

---

[7] If the Hotel Room Warrant is a moot question, then our argument that the Postal Inspector's (confidential or anonymous) source was unreliable and therefore did not support probable cause for the warrant is moot. But that argument was separate from our argument that the Postal Inspector made misrepresentations as to what he had been told.

The Government claims that this statement was accurate, notwithstanding how, as discussed above, the Government inverts the order of events. The Westin's records show that the Westin used keys on the hotel room's door at 3:26 p.m., 3:30 p.m., and 3:34 p.m. the day of the arrest—and that the hotel room door was not unlocked at any point between April 23, 2021 and May 3, 2021, the day that U.S.P.I.S. seized Mr. Franzone's property. See attached records subpoenaed from Westin.

Therefore, since the room was not unlocked again after April 22, 2021, the Westin must have removed Mr. Franzone's property from his hotel room on April 22, 2021. The defendant's mother first requested the return of Mr. Franzone's property on April 24, 2021.

The agent, by his own admission, spoke with his source on April 28, 2021, *after* the defendant's mother requested the return of the property, Motion Exhibit H Aff. In Support ¶ 10. The Postal Inspector therefore spoke with his source six days after the Westin must have removed the property from the room, since the room was not unlocked at any point on May 3, 2021 (the day of the seizure), nor at any point between April 23, 2021 and May 3, 2021. By the time that he submitted the affidavit for the Hotel Room, then, not only was the property not in the room, but there was no reason to believe that the property was in the room—which is *material* to whether there was probable cause to believe that items to be seized would be found in the place to be searched for the Hotel Room Warrant.

This remains relevant as the Postal Inspector in his application for the Electronic Devices Warrant, then discussed the Hotel Room Warrant as if he had made no deliberately false statements in the application for the Hotel Room Warrant. And he apparently conceded, in the application for the Electronic Devices Warrant, that the Westin had only surrendered Mr.

Franzone's property (including but not limited to Devices 3, 4, 5 and 6) as a result of the Hotel Room Warrant.

Additionally, as discussed *supra*, the Postal Inspector made a deliberate misrepresentation in the Complaint when, on April 20, 2022, he (repeatedly) said that the FF Fund was in liquidation. In reality, the first time that the FF Fund gave notice of an intent to pursue liquidation was 8 days later, on April 28, 2021: 6 days after Mr. Franzone's arrest, the seizure of Devices 1 and 2, etc. In fact, it was partly due to the fact that the Complaint had been filed and the fact of Mr. Franzone's arrest and then on-going detention that the FF Fund chose to pursue liquidation.  Notice of Debtors' Intention to Proceed to Confirmation Pursuant to the Liquidating Trust Alternative, *In re: FF Fund I, L.P. et al,* 19-22744 (LMI), ECF # 445 (filed 4/28/21, citing "Mr. Franzone's arrest and detention" and the pending case at bar among the reasons for the liquidation).

This deliberate misrepresentation was material. Notably, in the <u>April 20, 2021 </u>Complaint, the Postal Inspector cited the liquidation in the section  captioned "FRANZONE Misappropriated FF Fund Assets." Complaint ¶ 14(a) and (b), and stated that his sources of knowledge included "FF Fund investors and individuals *currently involved* in the liquidation", Complaint ¶ 4 (emphasis added).

The Postal Inspector was clearly using the allegations of liquidation to support his argument that there was probable cause. The fact that the FF Fund was in liquidation was repeatedly cited by the Postal Inspector in setting forth probable cause, Aff. in Support of Hotel Room Warrant ¶ 4 – 5; Aff. In Support of Electronic Devices Warrant ¶ 8, and the Postal Inspector claimed that Mr. Franzone's seized property included "documents related to the Fund Liquidation." <u>Id.</u>¶ 14.

Now, while we acknowledge that the notice of intent to pursue liquidation may have been filed before the search warrants at issue, that does not cure the Postal Inspector's deliberate misrepresentation that the liquidation had begun *prior to* Mr. Franzone's arrest. The Postal Inspector incorporated the Complaint containing those misrepresentations into the applications for the warrants, attached the Complaint to both applications.

Further, when repeating in the applications that the FF Fund was in liquidation, the Postal Inspector deliberately omitted the fact that liquidation proceedings did not start until *after* Mr. Franzone's arrest.

The Government might assert that it does not make a difference whether the liquidation began before the arrest or commenced thereafter, but it does. The probable cause set forth by the Postal Inspector in the Complaint and again in the affidavits for the warrants, clearly evince the theory that Mr. Franzone's alleged criminal behavior in running the fund caused the liquidation. The *arrest of* Mr. Franzone may have caused the liquidation, but an arrest is not evidence of guilt. Mr. Franzone clearly had had no opportunity to defense himself against the charges in the case at bar at the time that the FF Fund opted to pursue liquidation.

The Postal Inspector's misrepresentations in the Complaint became a self-fulfilling prophecy. The choice to proceed to liquidation was partly based on the fact that Mr. Franzone had been arrested, detained, and was facing charges in the case at bar. This was set forth in the Notice of Intention filed in the Southern District of Florida on April 28, 2020, but deliberately omitted from the warrant applications submitted by the Postal Inspector.

A final material misrepresentation that we would like to bring to the Court's attention is the Postal Inspector's statement in the Complaint that "In or about January 2014… less than 1% of FF Fund's portfolio was allocated to private investments." Complaint ¶ 13(a). According to an

Independent Auditors' Report, as of December 31, 2013, private investments made up more than $ 3,000,000 worth of $ 5,320,126 in assets, that is approaching 3/5 of total assets. We do not think the Government contends that private investments then fell that drastically to less than 1% in the course of, at most, a month. Again, as discussed above, the Complaint was incorporated by reference in and attached to, the applications for the warrants.

The Postal Inspector also represented in the Complaint that he had reviewed "materials provided by the Fund Administrator," Complaint ¶ 13, as part of his investigation. Therefore, he would have reviewed materials demonstrating that his statement in Complaint ¶ 13(a) was false.

Wherefore, given the various misrepresentations by the Postal Inspector, we continue to respectfully request a *Franks* hearing.

## CONCLUSION

WHEREFORE, for the reasons discussed above and as set forth in the Defendant's Motion, the defendant continues to seek all of the relief sought in his Motion, ECF # 32.

Dated: New York, New York
     August 5, 2022

Respectfully submitted,

*/s/ Angela D. Lipsman*

Angela D. Lipsman, Esq.
Joseph R. Corozzo, Esq.
Rubinstein & Corozzo, LLP
*Attorneys for Defendant*
*Andrew Franzone*
260 Madison Ave., 22nd Fl.
New York, New York 10016
(212) 545-8777 (ph)
(917) 722-8206 (fax)

cc: AUSAs Kiersten Fletcher and Alex Rossmiller (via ECF)