UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :

UNITED STATES OF AMERICA        :

        - v. -                        :          DECLARATION OF
                                                :          EDWARD F. GANNON

ANDREW FRANZONE,           :
                                                :          21 Cr. 446 (VSB)

        Defendant.            :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK                        )
COUNTY OF NEW YORK                  : ss.:
SOUTHERN DISTRICT OF NEW YORK      )

        EDWARD F. GANNON, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury:

        1.        I have been a Postal Inspector with the United States Postal Inspection Service ("USPIS") for approximately 16 years. In or about April 2021, I was one of the Postal Inspectors assigned to the investigation of ANDREW FRANZONE, the defendant.

        2.        On or about April 20, 2021, I swore to a criminal complaint before the Honorable James L. Cott, United States Magistrate Judge, Southern District of New York. Judge Cott signed a warrant authorizing USPIS to arrest ANDREW FRANZONE as well as a warrant authorizing USPIS to obtain prospective geolocation data for a cellphone used by FRANZONE (the "GPS Warrant"). Based upon my review of data obtained pursuant to the GPS Warrant, I concluded that FRANZONE was likely residing in an area of Fort Lauderdale Beach, Florida, that included several hotels.

        3.        On or about April 22, 2021, I, along with other Postal Inspectors, set out to identify the specific hotel in Fort Lauderdale Beach where ANDREW FRANZONE's phone

1

appeared to be located. Based on the data received from the GPS Warrant, it appeared that FRANZONE was located in the vicinity of the Westin Fort Lauderdale Beach Resort located at 321 N. Ft Lauderdale Beach Blvd., Fort Lauderdale, Florida 33304 (the "Westin"). At some point during the early afternoon of April 22, 2021, I, along with other Postal Inspectors, went to the Westin and spoke with a female employee of the Westin sitting near the front desk (the "Hotel Manager"). I told the Hotel Manager, whose name I do not now recall, that I had a Grand Jury subpoena to serve for records related to FRANZONE. In response, the Hotel Manager told me, in substance and in part, that she was a manager at the Westin and that FRANZONE had been living at the Westin for approximately the prior 12 months. The Hotel Manager then directed me to the office of the Westin's Director of Hotel Security (the "Director of Security").

4. I, along with other Inspectors, proceeded to the Director of Security's office, and explained that we had a Grand Jury subpoena for records related to ANDREW FRANZONE. The Director of Security told me, in substance and in part, that FRANZONE was a guest at the Westin continuously for at least the prior year, but was being forced to vacate the hotel that day due to nonpayment. According to the Director of Security, on numerous occasions over the course of his stay, FRANZONE fell behind on his payments to the Westin. In response, the Westin would implement the first step of its eviction process, which involved revoking FRANZONE's ability to access his room, thereby forcing FRANZONE to the front desk to pay his overdue bill. On the day I visited the Westin, the Director of Security informed me that that the Westin earlier that day had decided to escalate the process past the first step of its eviction process, and had begun implementing the second and final step, which involved permanently locking FRANZONE out of his room without further opportunity to stay at the Westin. At the time of our conversation, the Director of Security informed me that FRANZONE had already been locked out of his room.

5. At no point during my conversation with the Director of Security did I ask to access ANDREW FRANZONE's hotel room, inspect his belongings, or direct the Westin to send an employee into the room to collect FRANZONE's belongings. I am not aware of any other Postal Inspector making such requests of Westin personnel at the time. Instead, I told the Director of Security that we would return to the Hotel with a search warrant at a later date.

6. On or about April 22, 2021, I had also received information from another Postal Inspector that ANDREW FRANZONE had a flight scheduled for that night. As a result, it was determined that FRANZONE should be arrested as soon as possible before FRANZONE left Florida for New York. I, along with other Inspectors, could see FRANZONE's general location from the GPS Warrant data, but could not identify his specific location. In an effort to find him, we split up and began walking around the Westin on foot. Because my focus was on finding FRANZONE, I do not recall the exact distance I walked, but I recall that I left the main Westin building and stepped onto the street, where, after walking a short distance, I identified FRANZONE sitting alone in the outside area of a restaurant. At the time, FRANZONE was sitting on a bench in the back of the restaurant, with his laptop on his lap, and his leg up on the bench in a relaxed position. There were several empty tables in between FRANZONE on the bench and the next closest person.

7. Upon identifying ANDREW FRANZONE, I walked in his direction with the intention of arresting him. When I was approximately ten feet away from FRANZONE, I told him to stand up because he was under arrest. At first, FRANZONE did not move, but upon seeing another Postal Inspector near him, FRANZONE put his laptop down on the bench next to him. As I got closer to FRANZONE, I could see FRANZONE also had a cellular phone sitting on the bench next to him. Another Postal Inspector who participated in the arrest collected the laptop and the

cellphone from the bench following the arrest, and later identified the laptop as a silver Apple MacBook Pro with serial number C02VJ3RAG8WN ("Subject Device-1"), and the cellphone as an Apple iPhone 11 Pro Max space gray in color ("Subject Device-2"). I was confident that both devices belonged to FRANZONE because (i) I saw FRANZONE holding Subject Device-1 on his lap, (ii) Subject Device-1 and Subject Device-2 were collected from the bench FRANZONE was sitting on at the time of his arrest, and (iii) FRANZONE was the only person sitting in the area, and there were several tables between FRANZONE and the next closest person in the restaurant.

8. On or about April 28, 2021, I spoke to the Director of Security, who told me that he had entered ANDREW FRANZONE's hotel room (the "Hotel Room") the prior day at the request of a member of FRANZONE's family to collect FRANZONE's belongings. When the Director of Security was inside the Hotel Room, the Director of Security observed a laptop computer and what appeared to be piles of financial documents. The Director of Security did not tell me during this conversation that FRANZONE's belongings had been removed from the Hotel Room. Based upon my conversations with the Director of Security between in or about April 22, 2021 and April 28, 2021, I understood that FRANZONE's belongings remained in the Hotel Room.

9. On April 30, 2021, the Honorable Lurana S. Snow, United States Magistrate Judge, Southern District of Florida, signed a warrant authorizing the search of the Hotel Room, as well as the contents of any electronic devices found therein (the "Hotel Room Warrant").

10. On or about May 1, 2021, I served the Director of Security with the Hotel Room Warrant. Upon receipt of the Hotel Room Warrant, the Director of Security told me that ANDREW FRANZONE's belongings (the "Franzone Evidence") had been removed from the

4

Hotel Room and were secured in the Westin, but that the Director of Security would provide the Franzone Evidence to USPIS based upon the Hotel Room Warrant.

11. On or about May 3, 2021, another Postal Inspector based in Florida (the "Florida Inspector"), went to the Westin to pick up the Franzone Evidence. I informed the Florida Inspector that she should only collect items that would relate to the investigation, such as computers, financial records, travel records, credit cards, and similar items. I told the Florida Inspector not to collect personal items, such as clothing and toiletries. Subsequently, the Florida Inspector arranged for the Franzone Evidence to be shipped to me.

12. Between the date of ANDREW FRANZONE's arrest on April 22, 2021, and the request for the second search warrant on May 21, 2021, I participated in several conversations with AUSA Kiersten Fletcher regarding our ongoing investigation, including conversations she was having with attorneys from the Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority related to ANDREW FRANZONE, as well as our efforts to obtain the Franzone Evidence from the Westin. In addition to the foregoing, I, along with others, took the following investigative steps with respect to FRANZONE:

    a. On or about Monday, April 26, 2021, I interviewed a former business partner of FRANZONE. That same day, I received from the Westin the folio records for FRANZONE's room and forwarded them to AUSA Fletcher on or about Wednesday, April 28, 2021.

    b. On or about April 27, 2021, I interviewed a second former business partner of FRANZONE.

c. On or about April 28, 2021, I reviewed and sent to AUSA Fletcher records for bank accounts in the name of FRANZONE's former girlfriend (the "Former Girlfriend"), in whose company FRANZONE claimed to previously invest his fund's assets.

d. On or about April 29, 2021, I received more bank records related to the Former Girlfriend.

e. On or about April 30, 2021, I interviewed a second former investor in FRANZONE's fund.

f. On or about April 30, 2021, I obtained the Hotel Room Warrant.

g. On or about May 5, 2021, I interviewed a third former investor in FRANZONE's fund.

h. On or about May 5, 2021, and May 6, 2021, I had conversations with the SEC regarding additional former investors in FRANZONE's fund.

i. On or about May 5, 2021, I sent AUSA Fletcher a schedule of the Citibank accounts of FRANZONE's former girlfriend.

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated: New York, New York
September 30, 2022

_____
EDWARD F. GANNON
Postal Inspector
United States Postal Inspection Service