UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

UNITED STATES OF AMERICA                    :

   -v.-                                          :          21 Cr. 446 (VSB)

ANDREW FRANZONE,                            :

                     Defendant.        :

----------------------------------------------------------------x


**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO SUPPRESS**


DAMIAN WILLIAMS
United States Attorney
Southern District of New York
Attorney for the United States of America


Kiersten A. Fletcher
Assistant United States Attorney
- Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.    Factual Overview ................................................................................................ 2
II.   Investigation Overview, the Complaint, and the Prior Warrants ............................. 3
III.  The Instant Warrant and Motion to Suppress ....................................................... 4

ARGUMENT ...................................................................................................................... 5

I.    The Allegations of Misconduct Are Baseless and the Request for Suppression or a Franks
      Hearing Should Be Denied. ................................................................................. 5
      A.   Applicable Law .......................................................................................... 5
      B.   Discussion ................................................................................................. 7
II.   The Google Warrant Was Not Overbroad and Was Relied on in Good Faith ........... 12
      A.   Applicable Law .......................................................................................... 12
      B.   Discussion ................................................................................................. 14

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITES

## CASES

*Franks v. Delaware*,
  438 U.S. 154 (1978)................................................................................ 5, 6, 7, 10

*Herring v. United States*,
  555 U.S. 135 (2009)........................................................................................ 14

*Illinois v. Gates*,
  462 U.S. 213 (1983).......................................................................................... 6

*In re A Warrant for All Content & Other Info. Associated with the Email Account*
  *xxxxxxx@gmail.com Maintained at Premises Controlled By Google, Inc.*, 33 F. Supp. 3d 386
  (S.D.N.Y. Aug. 7, 2014).................................................................................. 15

*Jones v. United States*,
  362 U.S. 257 (1960).......................................................................................... 6

*Rivera v. United States*,
  928 F.2d 592 (2d Cir. 1991)............................................................................. 7

*United States v. Awadallah*,
  349 F.3d 42 (2d Cir. 2003)........................................................................... 6, 9

*United States v. Bowen*,
  689 F. Supp. 2d 675 (S.D.N.Y. 2010)............................................................ 15

*United States v. Cancelmo*,
  64 F.3d 804 (2d Cir. 1995)............................................................................. 16

*United States v. Canfield*,
  212 F.3d 713 (2d Cir. 2000)......................................................................... 5, 6

*United States v. Dupree*,
  781 F. Supp. 2d 115 (E.D.N.Y. 2011) ........................................................... 13

*United States v. Falso*,
  544 F.3d 110 (2d Cir. 2008)............................................................ 7, 12, 13, 16

*United States v. Hernandez*,
  No. 09 Cr. 625 (HB), 2010 WL 26544 (S.D.N.Y. Jan. 6, 2010) .................... 12

*United States v. Jacobson*,
  4 F. Supp. 3d 515 (E.D.N.Y. 2014) ............................................................... 13

*United States v. Keith*,
  No. 15 Cr. 827 (AJN), 2016 WL 1644370 (S.D.N.Y. Apr. 22, 2016).............. 7

*United States v. Klump*,
  536 F.3d 113 (2d Cir. 2008)............................................................................. 7

*United States v. Leon*,
  468 U.S. 897 (1984)........................................................................... 13, 16, 17

*United States v. Levy*,
  No. 11 Cr. 62 (PAC), 2013 WL 664712 (S.D.N.Y. Feb. 25, 2013), *aff'd*, 803 F.3d 120 (2d Cir.
  2015) .............................................................................................................. 13

*United States v. Lustyik*,
  57 F. Supp. 3d 213 (S.D.N.Y. 2014).............................................................. 12

*United States v. Martin*,
  426 F.3d 68 (2d Cir. 2005)............................................................................... 6

*United States v. Melendez*,
　No. 16 Cr. 33 (LTS), 2016 WL 4098556 (S.D.N.Y. July 28, 2016) ........................................ 7

*United States v. Moore*,
　968 F.2d 216 (2d Cir. 1992) .................................................................................................. 16

*United States v. Rajaratnam*,
　719 F.3d 139 (2d Cir. 2013) .................................................................................................. 11

*United States v. Singh*,
　390 F.3d 168 (2d Cir. 2004) .................................................................................................. 13

*United States v. Smith*,
　9 F.3d 1007 (2d Cir. 1993) ...................................................................................................... 6

*United States v. Stacy*,
　802 F. App'x 611 (2d Cir. 2020) ............................................................................................ 17

*United States v. Ulbricht*,
　No. 14 Cr. 68 (KBF), 2014 WL 5090039 (S.D.N.Y. Oct. 10, 2014) ...................................... 15

*United States v. Ventresca*,
　380 U.S. 102 (1965) ................................................................................................................. 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

UNITED STATES OF AMERICA         :

  -v.-                             :       21 Cr. 446 (VSB)

ANDREW FRANZONE,           :

                   Defendant.     :

-----------------------------------------------------------------x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN
OPPOSITION TO DEFENDANT'S SECOND MOTION TO SUPPRESS**

The Government respectfully submits this memorandum of law in opposition to the motion
of Andrew Franzone, the defendant, to suppress evidence obtained pursuant to a search warrant
served on Google for Franzone's Google account.

## PRELIMINARY STATEMENT

In a memorandum of law dated May 25, 2023 ("Motion" or "Def. Mem."), the defendant
seeks an order from this Court suppressing all evidence seized pursuant to the execution of a search
warrant (the "Warrant"), which authorized the seizure and search of the defendant's Google
account. The defendant challenges the Warrant on the basis of five alleged misstatements in the
affidavit of Postal Inspector Christopher O'Rourke (the "O'Rourke Affidavit") and, in the
alternative, argues that the Warrant was overbroad. The Motion fails to identify a single material
misstatement by Inspector O'Rourke, or to assert a plausible claim that any misstatements were
made with reckless disregard for the truth. In addition, the O'Rourke Affidavit sufficiently
articulated probable cause to search the defendant's Google account and was not overbroad.

Accordingly, the Motion should be denied in its entirety without a hearing.

# BACKGROUND

## I.     Factual Overview

As alleged in the Indictment (Dkt. 4) and as the Government expects to prove at trial, over the course of several years, the defendant perpetrated a scheme to defraud investors in his purported investment fund.  Between 2014 and 2019, the defendant served as the general partner for an investment fund, the FF Fund I (the "Fund"), which managed tens of millions of dollars for more than 100 investors.  The defendant fraudulently induced existing and prospective investors to entrust him with their hard-earned savings by repeatedly lying about the composition of the Fund, its total assets, its liquidity profile, and its performance history.  As part of his schemes, the defendant also misappropriated investor assets to fund his own personal business interests.

Specifically, when the Fund came under the defendant's sole control in 2014 following the departure of a prior partner, the defendant assured existing and prospective investors that the Fund would continue to employ the same investment strategy, including maintaining a highly liquid portfolio.  The defendant represented that the Fund's strategy focused on preferred securities and options—relatively liquid investments—and that private investments would account for no more than 20% of the Fund's allocation.  During the relevant period, the defendant also told existing and prospective investors that the Fund had more than $70 million in assets under management.

In reality, all of those representations were false or misleading.  Under the defendant's control, the Fund's assets were increasingly allocated to illiquid investments, securities and options became a much smaller proportion of the investments, and the defendant diverted massive amounts of Fund money to questionable and illiquid investments.  For example, in January 2014, Fund assets maintained at securities brokerage firms accounted for approximately 74% of its portfolio, and less than 1% of assets were allocated to private investments.  By the end of 2017, in contrast, Fund assets maintained at securities brokerage firms accounts for around just 5% of the portfolio,

and approximately 80% was diverted to private, relatively illiquid investments. Those illiquid assets underperformed, and the defendant overstated the Fund's returns to prospective and current investors.

Additionally, the defendant siphoned Fund assets to use for his own personal and unauthorized expenditures. Among other things, the defendant spent more than $500,000 of Fund assets on an airplane hangar to use for his car racing team. In an attempt to make the purchase appear legitimate, in 2019, the defendant asked certain investors to sign back-dated documents stating, falsely, that they were aware the Fund had purchased the airplane hangar and that it was a Fund asset. Understandably, the investors refused.

In 2019, following a series of redemption requests and questions from certain investors, the defendant's house of cards collapsed, and the Fund filed for bankruptcy and began liquidation proceedings.

## II.     Investigation Overview, the Complaint, and the Prior Warrants

In or about 2020, the United States Postal Inspection Service ("USPIS"), in conjunction with the United States Attorney's Office for the Southern District of New York (together, the "Government"), began an investigation of the defendant and others for possible fraud. As part of the investigation, Postal Inspectors with USPIS reviewed materials including financial documents, bank records, public filings relating to the relevant bankruptcy proceedings, and documents and information collected by the United States Securities and Exchange Commission in connection with a parallel investigation of the defendant. Law enforcement also conducted interviews of witnesses and victims of the fraudulent schemes.

On April 20, 2021, Magistrate Judge James L. Cott signed a complaint charging the defendant with violations of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 (securities fraud), and Title 18, United States

Code, Section 1343 (wire fraud) (the "Complaint"). Judge Cott also issued an arrest warrant in connection with the Complaint.

On April 22, 2021, law enforcement agents with USPIS arrested the defendant in Fort Lauderdale, Florida. In April and May 2021, USPIS obtained warrants to search six electronic devices seized from the defendant at the time of his arrest and from his Florida hotel room (the "Device Search Warrants").

On July 8, 2021, a grand jury sitting in this District returned an indictment charging the defendant with securities fraud and wire fraud in violation of 15 U.S.C. §§ 78j(b) & 78ff, and 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 1343.

On June 24, 2022, the defendant filed a motion to suppress the fruits of the Device Search Warrants (the "Initial Suppression Motion"). On September 12, 2022, the Court held oral argument on the Initial Suppression Motion, after which the parties submitted additional briefing. The Initial Suppression Motion is *sub judice*.

### III.     The Instant Warrant and Motion to Suppress

On December 9, 2022, while the Initial Suppression Motion was pending, the Government submitted the O'Rourke Affidavit in support of its application for the Warrant, and the Honorable Valerie Figueredo authorized the Warrant. The application for the Warrant sought a court order to search the defendant's Google email communications as well as other Google data falling into several enumerated categories listed in the Warrant.

On May 25, 2023, the defendant filed the Motion. The Motion argues that the fruits of the Warrant should be suppressed, or in the alternative a *Franks* hearing should be ordered, because the O'Rourke Affidavit contained five alleged material misstatements and because the Warrant was overbroad in allowing USPIS to search the contents of the defendant's Google account separate from his email.

# ARGUMENT

## I. The Allegations of Misconduct Are Baseless and the Request for Suppression or a *Franks* Hearing Should Be Denied.

The defendant asserts *Franks* claims related to purported errors he identifies in both the O'Rourke Affidavit and the Complaint it incorporates by reference; three that the defense argues negate a finding of probable cause that the defendant engaged in the Subject Offenses, and two that allegedly negate a finding of probable cause that the Google Account contained evidence of the Subject Offenses. As discussed below, the alleged errors are either not errors at all, or are so minor and inconsequential that none concerned facts material to the finding of probable cause. Moreover, even if this Court credits the defense argument that the O'Rourke Affidavit in fact contained errors, none were of the type designed to mislead the issuing magistrate and there is no basis for the argument that Inspector O'Rourke either intentionally or recklessly attempted to do so.

### A. Applicable Law

A defendant seeking to challenge the validity of a warrant on the basis of alleged errors or inaccuracies in the application faces a high bar. *See generally Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Pursuant to *Franks*, evidence will not be suppressed unless both "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.'" *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000) (citing *Franks*, 438 U.S. at 164-72).

With respect to the first prong, the defendant bears the burden of establishing that "the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth." *Canfield*, 212 F.3d at 717-18; *see also United States v. Martin*,

426 F.3d 68, 73 (2d Cir. 2005) (defendant must show that "the affidavit contained 'a false statement knowingly and intentionally, or with reckless disregard for the truth.'" (quoting *Franks*, 438 U.S. at 156)). Moreover, because "every decision not to include certain information in the affidavit is 'intentional' insofar as it is made knowingly," the "mere intent to exclude information is . . . insufficient." *United States v. Awadallah*, 349 F.3d 42, 67-68 (2d Cir. 2003). Instead, a defendant must demonstrate omissions that "are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *Id.* at 68.

With respect to the second prong—*i.e.*, the materiality of the allegedly false statement— under *Franks*, materiality is "gauge[d] . . . by a process of subtraction: To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant. If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." *Awadallah*, 349 F.3d at 64 (*quoting Canfield*, 212 F.3d at 718); *see also Franks*, 438 U.S. at 171-72 ("If, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing [to challenge the sufficiency of the affidavit] is required.").

The standard of probable cause applied to a warrant, once it has been stripped of the alleged inaccuracies, or once omitted information is included, is the same practical standard applied in other contexts. That is, the warrant affidavit must be sufficient to provide a "'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 233 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)); *see also United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993); *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir.

1991). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Rivera*, 928 F.2d at 602 (quoting *United States v. Ventresca,* 380 U.S. 102, 109 (1965)).

The defendant bears the burden of establishing both components—*i.e.*, materiality and intent—by a preponderance of the evidence. *See United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008). Making this showing is not an easy task because, as the Second Circuit has observed, "[t]he *Franks* standard is a high one." *Rivera*, 928 F.2d at 604.

Finally, to even be entitled to a hearing on a claim raised pursuant to *Franks*, a defendant must first make a "'substantial preliminary showing' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). "The burden to obtain such a hearing is a heavy one, and such hearings are exceedingly rare." *United States v. Melendez*, No. 16 Cr. 33 (LTS), 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016); *see also Franks*, 438 U.S. at 171-72 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof."); *United States v. Keith*, No. 15 Cr. 827 (AJN), 2016 WL 1644370, at *2 (S.D.N.Y. Apr. 22, 2016) ("Because materiality, which turns on the existence of probable cause, is a legal question, resolving whether information allegedly omitted from a search warrant application was material does not require an evidentiary hearing.").

### B. Discussion

#### 1. The Defendant Fails to Identify Any Material Misstatements.

The Motion fails in the first instance because it does not identify any material inaccuracies or omissions in the O'Rourke Affidavit. Indeed, the Motion cites five alleged misstatements, all

of which are either literally true, or are on their face so inconsequential that they could not possibly have been material to the issuing magistrate's probable cause determination.

The defendant's first allegation is that Inspector O'Rourke misled the magistrate in stating that the FF Fund filed for bankruptcy protection "on or about June 2019," when in fact the Trust made a redemption request in June 2019 and it was not until September 24, 2019, that the FF Fund filed for bankruptcy protection. (Def. Mem. 7-8). While Inspector O'Rourke's statement that the FF Fund's filing for bankruptcy protection "on or about June 2019" was admittedly imprecise, it was neither deliberately false nor materially misleading. First, it cited directly to paragraph 11(d) of the Complaint, which read, "Beginning in or about June 2019, several of Wealth Manager-1's clients, including the Trust, sent FF Fund redemption requests. FF Fund did not fulfill the redemption requests and instead filed for bankruptcy protection." Compl. ¶ 11(d). This sequence of events is literally true, and created no misimpression. Indeed, as the Complaint makes clear, and as the Motion appears to concede, the FF Fund could not fulfill the Trust's June 2019 redemption request but it had until September 30, 2019 – the effective date of any redemption request made before June 30, 2019 – to fulfill or default on the request. (*See* Def. Mem. 8). In other words, it is undisputed that the FF Fund filed for bankruptcy protection mere days before the Trust's redemption request would have been effective, providing ample basis for Inspector O'Rourke to link the Trust's June 2019 redemption request to FF Fund's bankruptcy, and rendering any imprecision in the date cited in the O'Rourke Affidavit immaterial.[1]

---

[1] The defendant's suggestion that in fact the FF Fund filed for bankruptcy protection because of a Court order in a related civil litigation brought by the Trust in Delaware has no basis in law or fact. First, the O'Rourke Affidavit made no claim to have reviewed the filings in the Delaware case and he was under no obligation to do so. Second, even if Inspector O'Rourke had done so, the issuance of the *status quo* order, solicited by the Trust in civil litigation while its redemption request to the FF Fund was pending, only supports Inspector O'Rourke's belief that the FF Fund's bankruptcy filing was the ultimate (if not proximate) result of the Trust's redemption request.

The defendant's second and third allegations of "misstatements" are similarly unavailing and amount to little more than hyper-technical hair splitting about legal terms used in the Complaint. The defense's second allegation is that the Complaint, as incorporated by the O'Rourke Affidavit, falsely referred to the FF Fund's Chief Restructuring Officer ("CRO") as "court-appointed" when in fact the CRO was "court-approved," a distinction that assertedly suggested that the defendant was removed as head of the FF Fund for cause. But, the Complaint neither implied nor stated that the appointment of a CRO had anything to do with the defendant's removal from any role at the FF Fund; the relevant fact was that a CRO was in place to assist in the bankruptcy after the defendant's fraud was uncovered; that was true whether the CRO was court-appointed, court-approved, or neither. Similarly, the defendant's third allegation is that the Complaint inaccurately stated that the FF Fund entered "liquidation" in the fall of 2019 rather than "bankruptcy." As the Government explained at oral argument on September 12, 2022, this is a distinction without a difference: the relevant fact for the determination of probable cause was that the FF Fund could not fulfill redemption requests, which was true whether the filing was technically a bankruptcy filing or in liquidation. (*See* Transcript of September 12, 2022 Oral Argument at 58-60).

Taking these three alleged misstatements together and applying the subtraction rule of *Awadallah*, the defendant's motion can only prevail if he can show the magistrate would not have found probable cause for the Subject Offenses if the Complaint had read that "the FF Fund, through a court-approved CRO, filed for bankruptcy protection in September 2019." The defendant cannot make this showing and indeed such a result would be absurd in light of the other allegations in the Complaint. Plainly, even with the supposed misrepresentations corrected, the O'Rourke Affidavit would contain the requisite "residue of independent and lawful information sufficient to support probable cause." *Awadallah*, 349 F.3d at 65.

The remaining allegations of misstatements related to the defendant's use of his Google account likewise fail to meet the high *Franks* burden. The defendant's fourth allegation is that the O'Rourke Affidavit falsely referred to the defendant's use of Google to send "monthly performance reports" when in fact a third party called IntraLinks emailed reports to FF Fund investors separate from the defendant's Google account. This argument proves too much. The fact that IntraLinks *also* sent monthly performance reports to FF Fund investors does not render untrue Inspector O'Rourke's statement that the defendant did so through his Google account. In fact, documents produced to the SEC prior to the issuance of the warrant show the defendant using his Google account to send monthly performance reports to an FF Fund investor while simultaneously directing the investor to IntraLinks. The relevant paragraph of the O'Rourke Affidavit was therefore literally true, and neither stated nor implied that the Google account would contain "thousands" more such emails.

The fifth claimed misstatement is that the O'Rourke Affidavit falsely referred to the May 30, 2017 Shikiar email (the "Shikiar Email") as coming from a "prospective investor" when there was assertedly "no good faith basis" to do so. (Def. Mem. 12-13). Here, too, the Shikiar Email itself makes clear that the statement in the O'Rourke Affidavit was factually true. The first communication in the Shikiar Email was written by Gregory Hersch, the founder of Florence Capital Advisors, a Registered Investment Adviser ("RIA") who had previously referred several potential investors to the defendant, including the Trust. Hersch's email stated, in part, "Stuart and I had the pleasure of meeting at his office last week to discuss our respective RIA's. Stuart has built an impressive business over the last 3 decades and is interested in learning more about your fund." (*See* Def. Mem. Exh. H). In response, the defendant suggested setting up a "call to introduce myself and compare notes on both of our businesses" and indicated that he was "around" and "just trading on the screens throughout all of the days." *Id.* In other words, the defendant used

his Google account to communicate with another RIA – that is, someone in the business of directing investor funds to investments like FF Fund – about his "fund" and in so doing previewed the same false "trading on the screens" narrative as he did with other clients. This provided Inspector O'Rourke with precisely the good faith basis to call Shikiar a "prospective investor" who received misleading information about FF Fund's trading strategy and his statement was neither false nor misleading.

Additionally, and finally, the defendant's arguments that these allegedly misleading statements were material to the probable cause determination should be rejected out of hand. Neither the classification of Shikiar as a "prospective investor" nor the alleged implication that the Google account contained many (as opposed to one or more) email communications about the FF Fund's performance would have had any impact on the question of whether the defendant used his Google account to communicate with FF Fund investors about the fund's performance and strategy. Because the use of the Google account for that alone was more than sufficient probable cause for the warrant to issue, the defendant has failed to make the requisite showing of any material misstatement.

## 2. The Defendant's Motion Fails to Make the Required Showing of Intentional or Reckless Misstatement and No Hearing Is Warranted.

Even assuming the defendant could make a showing that the O'Rourke Affidavit contained material misstatements (which he cannot), the motion nevertheless would fail because it makes no showing whatsoever that the purported incorrect statements were either purposefully or recklessly misleading. *See United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) ("the reviewing court must be presented with credible and probative evidence that the omission of information . . . was designed to mislead or was made in reckless disregard of whether [it] would mislead"). The defendant's argument on this issue is limited to a few meandering sentences about what Inspector

O'Rourke "knew or should have known" from documents he had "access" to but, in many cases, did not claim to have reviewed.  Moreover, the alleged inaccuracies described above are not the type of misstatements that could give rise to an inference of a reckless or intentional attempt to mislead.  For instance, the claimed inaccuracies about the appointment (vs. approval) of the CRO are very marginal to the essence of the affidavit's probable cause showing, and are not the types of misstatements that an affiant would make in order to mislead a reviewing judge into issuing a warrant.

The defense advances no facts or evidence showing intentional or reckless conduct in the O'Rourke Affidavit other than the mere fact of the claimed misstatements and the defense's incorrect contention that the information is material. This does not amount to a "substantial preliminary showing."  *See Falso*, 544 F.3d at 125.  The defendant's accusations are conclusory, unsupported, and wrong.  Accordingly, because the defendant fails to meet his burden of making a "substantial preliminary showing" with respect to either prong of the *Franks* standard, no hearing on the pending motion is required.

## II.     The Google Warrant Was Not Overbroad and Was Relied on in Good Faith.

### A.     Applicable Law

A warrant is not overbroad if it authorizes the Government to seize and search evidence, fruits, and instrumentalities only of specific crimes supported by probable cause.  *United States v. Lustyik*, 57 F. Supp. 3d 213, 229 (S.D.N.Y. 2014); *see also United States v. Hernandez*, No. 09 Cr. 625 (HB), 2010 WL 26544, at *8 (S.D.N.Y. Jan. 6, 2010) (framing overbreadth inquiry as "whether the magistrate judge authorized search warrants that were constitutionally overbroad because they provided for the seizure of specific items for which there is no probable cause").

The broader the crimes under investigation, the broader the categories of documents and records that may properly be seized.  *See, e.g.*, *United States v. Jacobson*, 4 F. Supp. 3d 515, 522

(E.D.N.Y. 2014) (breadth of warrant, which contained no timeframe limitation, was justified because "the crimes under investigation were complex and concerned a long period of time, not simply one or two dates of criminal activity"); *United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712, at \*9-10 (S.D.N.Y. Feb. 25, 2013), *aff'd,* 803 F.3d 120 (2d Cir. 2015) (broad warrant with no timeframe limitation was justified by breadth and complexity of fraud described in underlying affidavit); *United States v. Dupree*, 781 F. Supp. 2d 115, 149 (E.D.N.Y. 2011) ("[t]he nature of the crime . . . may require a broad search," such as where "complex financial crimes are alleged").

Moreover, the fruits of an overbroad warrant will not be suppressed where the executing officer relied in good faith on the warrant. *See United States v. Ray*, 541 F. Supp. 3d 355, 397, 401-02 (S.D.N.Y. 2021). Indeed, the exclusionary rule "does not apply to evidence seized 'in objectively reasonable reliance on' a warrant issued by a detached and neutral magistrate judge, even where the warrant is subsequently deemed invalid." *Falso*, 544 F.3d at 125 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Accordingly, evidence collected pursuant to a search warrant later found defective will be suppressed only if (1) the issuing judge was knowingly misled; (2) the issuing judge wholly abandoned his judicial role; (3) the application was so lacking in indicia of probable cause as to render reliance upon it unreasonable; or (4) the warrant is so facially deficient that reliance upon it is unreasonable. *Id.* The central question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. If the reviewing court finds that the officer's reliance on the warrant was objectively reasonable, suppression is not warranted. *See, e.g.*, *United States v. Singh*, 390 F.3d 168, 183 (2d Cir. 2004). Moreover, to trigger the exclusionary rule, law enforcement "conduct must be sufficiently deliberate that exclusion can

meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009).

**B.    Discussion**

The defendant seeks suppression of evidence obtained through the Warrant on overbreadth grounds, arguing that it improperly authorized the search of multiple categories of Google data separate from the defendant's email.  (Def. Mem. 13-14).  The defendant argues that the O'Rourke Affidavit provided no "no basis to believe that anything stored on the non-email applications would be inculpatory."  *Id.*  The defendant is wrong, and disregards key portions of the O'Rourke Affidavit, which detailed probable cause that the Google account contains evidence that would not be located in the defendant's emails.  Specifically, paragraph 4 of the O'Rourke Affidavit sets forth in detail the types of data maintained by Google, including email content, Google Contacts, Google Pay, Google Calendar, Google Messaging Content, Location History data, Google Photos, and others.  (O'Rourke Affidavit ¶ 4).  The O'Rourke Affidavit also set forth probable cause to believe that the defendant used the Google account to communicate with victims of his crime, and articulated that individuals like the defendant who engage in fraud schemes use electronic devices and accounts to "keep track of co-conspirators' and victims' contact information" (which would be located in Google Contacts) and to "keep a record of illegal transactions or criminal proceeds" (which would be located in Google Pay).  (*Id.* ¶ 14).  The O'Rourke Affidavit further set forth probable cause to believe that the defendant's Google account contained "communications regarding Andrew Franzone's scheme to defraud investors in FF Fund" including in "email and electronic messages" and "images" (which would be contained in Google Hangouts or Google Photos), the "geographic location of Franzone as well as his computers" (which would be located in Location History data).  (*See* Attachment A to Warrant).  In other words, the O'Rourke Affidavit articulated the types of data maintained by Google, probable cause to believe the defendant used

Google, and probable cause to believe non-email data would constitute evidence of the crimes charged. No more was required.

Moreover, "[i]t has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized." *United States v. Ulbricht*, No. 14 Cr. 68 (KBF), 2014 WL 5090039, at \*14 (S.D.N.Y. Oct. 10, 2014). This general rule applies with equal force to searches of electronic accounts such as the Google account at issue here. Indeed, in the suppression context, courts have consistently upheld the Government's ability to obtain the entire contents of the email account to determine which particular emails come within the search warrant. *See Ray*, 541 F. Supp. 3d at 399 ("Courts in this Circuit . . . have uniformly held that law enforcement need not rely upon an email host company or any other private party to sift through emails to determine what is relevant and that it may obtain a warrant to request all emails from an account."); *In re A Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx@gmail.com Maintained at Premises Controlled By Google, Inc.*, 33 F. Supp. 3d 386, 394 (S.D.N.Y. Aug. 7, 2014) (collecting cases); *see also id.* at 393 ("[W]e view it as well-established that a search warrant can properly permit the Government to obtain access to electronic information for purposes of a search even where the probable cause showing does not apply to the entirety of the electronic information that is disclosed to the Government."). That is precisely what the Government did here. The Warrant for the defendant's Google account made clear that investigators could seize evidence related only to the defined "Subject Offenses"—specifically, violations of Title 15, United States Code, Sections 78j(b) & 78ff, Title 17 C.F.R. Section 240.10b-5, and Title 18, United States Code, Section 1343 and 2. (O'Rourke Affidavit ¶ 2). Therefore, it was proper for USPIS to search the defendant's Google account for evidence of the Subject Offenses. *See United States v. Bowen*, 689 F. Supp. 2d 675, 682 (S.D.N.Y. 2010) (holding that

the Fourth Amendment does not require authorities to "ascertain which e-mails are relevant before copies are obtained from the internet service provider for subsequent searching").

Even if the Court determined that the Warrant was overbroad, the evidence seized pursuant to it should not be suppressed because the Warrant was relied upon in good faith. There is no serious suggestion that USPIS lacked a good faith belief that the Warrant was proper and could be relied upon. Nor could there be. As discussed above, there is no basis for the suggestion that the agents misled the issuing judge in any respect whatsoever, and the defendant does not even claim, much less offer any basis to conclude, that the Affidavit contained any inaccurate or misleading information relevant to Judge Figueredo's determination that the entirety of the Google account could be searched. Nor is there any suggestion that the issuing judge "wholly abandoned his or her judicial role." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992). There is also no basis to find that the Warrant "so lacked probable cause" that the agents' reliance was "unreasonable" for the reasons articulated above. *Id.* The affidavit was lengthy, thorough, and accurate, and approved by a magistrate judge, belying the notion that it was "unreasonable" for the agents to rely on it. *See, e.g.*, *Leon*, 468 F.3d at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . ."); . *Falso*, 544 F.3d at 129 (declining to hold that agents acted unreasonably in relying on judge's probable cause determination because "the error . . . was committed by the district court in issuing the warrant, not by the officers who executed it"); *United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (explaining that any error in issuance of warrant was "attributable to the magistrate who determined that the facts as alleged by the agents established probable cause"). Finally, the Warrant was not "so facially deficient" that reliance on it was unreasonable. *Moore*, 968 F.2d at 222. It outlined the specific crimes of which evidence, fruits, and instrumentalities were sought, and set forth categories of evidence, tailored to the facts of this case and to the time frame for

which there was probable cause.  It cannot seriously be asserted that the warrant here was so obviously, facially flawed that a law enforcement officer would have had to have known, at the time, that the search, despite being authorized, was simply illegal.  *See, e.g.*, *United States v. Stacy*, 802 F. App'x 611, 614 (2d Cir. 2020) ("The example of a facially deficient warrant provided by the *Leon* Court is one that does not 'particularize the place to be searched or the things to be seized.'" (quoting *Leon*, 468 U.S. at 923)).

## CONCLUSION

For the foregoing reasons, the defendant's motion to suppress should be denied without a hearing.

Dated: New York, New York
        August 16, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  _____
     Kiersten A. Fletcher
     Assistant United States Attorney
     (212) 637-2238