

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits*
*Federal Building*
*26 Federal Plaza*
*New York, NY 10278*

September 11, 2024

**VIA ECF**

The Honorable Vernon S. Broderick
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re: *United States v. Andrew Franzone*, 21 Cr. 446 (VSB)

Dear Judge Broderick:

    The Government writes in response to the Court's September 9, 2024 Order directing the Government to respond to the defense's letter seeking to supplement its motion to suppress Franzone's Google account (the "Motion") by responding to certain discrete questions raised at the September 26, 2023 oral argument (the "Proceeding"). (ECF No. 146). As this Court is aware, on June 24, 2022, current defense counsel initially filed motions to suppress and for the return of property, which motion was fully briefed and argued. (ECF Nos. 32, 37, 38, 39, 47, 48, 56, 59). Thereafter, Mr. Corozzo was relieved as counsel and Deborah Colson, Esq., was appointed counsel and separately filed the Motion, which was also fully briefed and argued. (ECF Nos. 81-84, 89, 90-91). The Motion sought a *Franks* hearing on the basis that the search warrant affidavit (the "Affidavit") contained several purported errors, including, as relevant here, that: (1) the Fund sought bankruptcy protection in June 2019 on the heels of sizable redemption requests, rather than in September 2019, because that sequencing implied that the Fund entered bankruptcy as a result of the redemption requests (which Franzone disputes); (2) the Fund entered liquidation before Franzone was arrested, rather than six days after his arrest, because it implied that the liquidation was caused by Franzone's charged conduct rather than his arrest.

    Current defense counsel now requests leave to file "information pertinent to the following queries" raised during oral argument on the Motion:

1. Could the Fund have satisfied the redemption requests made by stakeholders with redemptions "in kind"? Or was the Fund required to satisfy redemptions in cash?
2. Were there attempts to satisfy redemption requests "in kind" in lieu of cash or cash equivalent?
3. What was the Fund's "wind down" plan and how were the Fund's liabilities addressed in that plan? Was a provision for a wind down provided for in the Fund's offering documents?

    4. At the time of Mr. Franzone's arrest, had there been a proposed Chapter 11 plan of reorganization? How was the plan structured? Was a proposed plan accepted by the stakeholders?

(ECF No. 145). The Government is mindful of the Court's comments at the Proceeding inviting prior counsel "to submit something [in writing] after [the] hearing," (Tr. at 21:17-21, 52:15-16), while also remarking that many of the questions posed to counsel were aimed at "getting an overall picture of what was going on [with the bankruptcy] at the time," and did not necessarily bear on what the affiant actually reviewed. (Tr. 29:19-24). Notwithstanding the Court's prior remarks, the Government respectfully contends that the responses to these questions are unnecessary to resolve the Motion, and that no further submissions are required.

<u>Applicable Law</u>

A defendant seeking to challenge the validity of a warrant on the basis of alleged errors or inaccuracies in the application faces a high bar. *See generally Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Pursuant to *Franks*, evidence will not be suppressed unless both "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.'" *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000) (citing *Franks*, 438 U.S. at 164-72).

With respect to the first prong, the defendant bears the burden of establishing that "the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth." *Canfield*, 212 F.3d at 717-18; *see also United States v. Martin*, 426 F.3d 68, 73 (2d Cir. 2005) (defendant must show that "the affidavit contained 'a false statement knowingly and intentionally, or with reckless disregard for the truth.'" (quoting *Franks*, 438 U.S. at 156)). Moreover, because "every decision not to include certain information in the affidavit is 'intentional' insofar as it is made knowingly," the "mere intent to exclude information is . . . insufficient." *United States v. Awadallah*, 349 F.3d 42, 67-68 (2d Cir. 2003). Instead, a defendant must demonstrate omissions that "are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *Id.* at 68.

With respect to the second prong—*i.e.*, the materiality of the allegedly false statement— under *Franks*, materiality is "gauge[d] . . . by a process of subtraction: To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant. If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." *Awadallah*, 349 F.3d at 64 (*quoting Canfield*, 212 F.3d at 718); *see also Franks*, 438 U.S. at 171-72 ("If, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing [to challenge the sufficiency of the affidavit] is required.").

To even be entitled to a hearing on a claim raised pursuant to *Franks*, a defendant must first make a "'substantial preliminary showing' that a deliberate falsehood or statement made with

reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). "The burden to obtain such a hearing is a heavy one, and such hearings are exceedingly rare." *United States v. Melendez*, No. 16 Cr. 33 (LTS), 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016); *see also Franks*, 438 U.S. at 171-72 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof."); *United States v. Keith*, No. 15 Cr. 827 (AJN), 2016 WL 1644370, at *2 (S.D.N.Y. Apr. 22, 2016) ("Because materiality, which turns on the existence of probable cause, is a legal question, resolving whether information allegedly omitted from a search warrant application was material does not require an evidentiary hearing."). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Rivera*, 928 F.2d at 602 (quoting *United States v. Ventresca,* 380 U.S. 102, 109 (1965)).

Discussion

As to each of the four questions the defense intends to answer, the answers will not alter this Court's evaluation of the *Franks* standard because any further explication will not meaningfully advance the inquiry: whether the affiant acted in reckless disregard for the truth, and whether such misstatements were material to issuance of the disputed warrant.[1]

As to the first two inquiries, whether the Fund could have hypothetically satisfied redemption requests in kind, rather than in cash, and whether the Fund sought to do so, relates to whether investors' redemption requests triggered the Fund's bankruptcy. Specifically, the defense objected to the Affidavit's statement that the Fund filed for bankruptcy protection "on or about June 2019," when in fact the Trust made a redemption request in June 2019 and it was not until September 24, 2019, that the Fund filed for bankruptcy protection. (Def. Mem. 7-8). The defense argued that the misstated date suggested cause-and-effect where none existed.[2] Yet the defense at oral argument conceded that the health of the Fund and the cause of the bankruptcy would be disputed issues at trial to be resolved by the jury. (Tr. 12:13-15;15:3-5). In light of that recognition, the affiant cannot be said to have acted with reckless disregard for the truth by linking the unfulfilled redemption requests and the bankruptcy. More to the point, whether the Fund could have satisfied (or attempted to satisfy) the redemption requests in cash or "in kind" by providing investors with shares of private investments is an ancillary (and thus immaterial) facet of these events: the bottom line is that the Fund was unable to satisfy these redemption requests in any

---

[1] As to each of these questions, to the Government's knowledge, the record does not reflect answers to the questions counsel purports to answer, apart from certain factual proffers made by counsel during the Proceeding related to the Fund's ability to satisfy redemptions in kind.

[2] As stated in the Government's filings, the affidavit cross-referenced the Complaint, which stated, "Beginning in or about June 2019, several of Wealth Manager-1's clients, including the Trust, sent FF Fund redemption requests. FF Fund did not fulfill the redemption requests and instead filed for bankruptcy protection." Compl. ¶ 11(d). That literal sequencing of events was accurate as described.

measure, and the connection drawn between the redemption requests and the subsequent bankruptcy was reasonable.

As to the third and fourth inquiries, the details of any "wind down" or "reorganization" of the Fund likewise do not bear upon the affiant's understanding of the implications of the Fund's bankruptcy, nor are these details material to the probable cause determination. Defense counsel's motion to suppress cited the Affidavit's cross-reference to the Complaint, which stated that the Fund entered "liquidation" in the fall of 2019, rather than "bankruptcy," and—by extension—the Affidavit did not state that the Fund was liquidated after the defendant's arrest. As the Government explained at oral argument on September 12, 2022, this distinction does not materially bear upon the probable cause determination. Had the Affidavit instead stated that the fund filed for bankruptcy under Chapter 11, that corrected statement would nonetheless convey the dramatic reversal of fortune for the Fund shortly after the redemption requests were made. (*See* Tr. Sept. 12, 2022 Oral Argument at 58-60). The affiant did not allege familiarity with every filing in the bankruptcy proceedings, nor with every nuance in bankruptcy procedure. The high-level concept conveyed in the Affidavit was consistent: the Fund ceased normal operations and filed for bankruptcy after investors made redemptions requests that the Fund could not fulfill. A corrected version of the affidavit substituting "bankruptcy" for "liquidation" does not meaningfully impact the probable cause analysis. By the same measure, any information regarding the wind down or reorganization of the Fund is peripheral given the full context of the Affidavit.

For these reasons, the questions the defense offers to answer do not alter the *Franks* analysis, and this Court need not take up any further offer of proof to resolve the pending motion.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/ Sarah Mortazavi
Sarah Mortazavi
Assistant United States Attorney
Tel.: (212) 637-2520

Cc: Counsel (by ECF)