UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

     - v. -                                   :                 21 Cr. 446 (VSB)

                                 :

ANDREW FRANZONE,                             :

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**THE GOVERNMENT'S MOTIONS *IN LIMINE* AND
SUPPORTING MEMORANDUM OF LAW**


MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Marguerite B. Colson
Maggie Lynaugh
Sarah Mortazavi
Assistant United States Attorneys
- Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………1

BACKGROUND .............................................................................................................. 2

ARGUMENT ................................................................................................................... 3

I.     The Court Should Preclude the Defendant from Introducing Evidence and Arguments That Are Irrelevant and Unfairly Prejudicial……………………………………………………3

       A.  The Court Should Exclude Evicence and Argument that the Defendant Believed His Investors Would Ultimately Profit from the Fund's Illiquid Investments or Recoup Their Losses……………………………………………………………………...4

       B.  The Defendant Should Be Precluded from Argument That Victims Were Made Whole Through Bankruptcy…………………………………………………………………..8

       C.  The Court Should Exclude Evidence or Arguments that the Defendant Did Not Defraud Certain Investors……………………………………………………………………9

       D.  The Court Should Not Permit the Defendant to Blame His Victims…………………11

II.    The Court Should Exclude Certain Defense Arguments That the Defendant's Misrepresentations Were Immaterial Based on Disclaimers in the Fund's Private Placement Memorandum……………………………………………………………...12

III.   The Court Should Admit Evidence of the Defendant's Substantial Personal Expenses…14

IV.   The Court Should Preclude Cross Examination on Topics That Do Not Bear on Credibility and Are Highly Prejudicial……………………………………………………………16

       A.  Applicable Law……..………………………………………………………………16

       B.  The Court Should Preclude the Defendant from Questioning Greg Hersch About an SEC Enforcement Action and Certain Civil Litigation………………..……………..17

       C.  The Court Should Preclude the Defendant from Cross-Examining   Witnesses About Their Recreational Drug Use………..……………………………………………..21

V.  The Court Should Exclude Evidence of the Defendant's Personal Circumstances and Potential Punishment………………………………………………………………..22

CONCLUSION…………………………………………………………………..23

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Miller v. Thane Int'l, Inc.*,
   615 F.3d 1095 (9th Cir. 2010) ........................................................................ 9

*Neder v. United States*,
   527 U.S. 1 (1999) ......................................................................................... 13

*Rogers v. United States*,
   422 U.S. 35 (1975) ....................................................................................... 22

*S.E.C. v. Moran*,
   922 F. Supp. 867 (S.D.N.Y. 1996) ............................................................... 18

*Saldarriaga v. United States*,
   99 Civ. 4487 (WK), 2002 WL 449651 (S.D.N.Y. Mar. 21, 2002) ................ 18

*Shannon v. United States*,
   512 U.S. 573 (1994) ..................................................................................... 22

*United States v. Adelekan*,
   567 F. Supp. 3d 459 (S.D.N.Y. 2021) .......................................................... 11

*United States v. Adelglass*,
   No. 23-6248, 2024 WL 5087519 (2d Cir. Dec. 12, 2024) ............................ 15

*United States v. Agostini*,
   280 F. Supp. 2d 260 (S.D.N.Y. 2003) .......................................................... 18

*United States v. Amico*,
   486 F.3d 764 (2d Cir. 2007) ......................................................................... 11

*United States v. Bailey*,
   444 U.S. 394 (1980) ....................................................................................... 4

*United States v. Bakhtiari*,
   913 F.2d 1053 (2d Cir. 1990) ......................................................................... 4

*United States v. Bankman-Fried*,
   No. 22 Cr. 673 (LAK), 2023 WL 4194773 (S.D.N.Y. June 27, 2023) ........... 5, 7, 9

*United States v. Battaglia*,
   No. 05 Cr. 774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ........... 22

*United States v. Berger*,
   188 F. Supp. 2d 307 (S.D.N.Y. 2002) .......................................................... 5, 6

*United States v. Binday*,
   No. 12 Cr. 152 (CM), 2013 WL 12154927 (S.D.N.Y. Sept. 16, 2013) .......... 7

*United States v. Boykoff*,
   67 F. App'x 15 (2d Cir. 2003) ...................................................................... 10

*United States v. Buckley*,
   101 F.3d 685, 1996 WL 282140 (2d Cir. 1996) ........................................... 5, 7

*United States v. Bulgin*,
   563 F. App'x 843 (2d Cir. 2014) .................................................................. 15

*United States v. Chambers*,
   800 F. App'x 43 (2d Cir. 2020) .................................................................... 10, 11

*United States v. Crowley*,
  318 F.3d 401 (2d Cir. 2003) ......................................................................... 16

*United States v. Donovan*,
  20 Cr. 374 (PKC), 2021 WL 6065767 (E.D.N.Y. Dec. 22, 2021) ..................................... 18, 21

*United States v. Ferguson*,
  No. 06 Cr. 137 (CFD), 2007 WL 4240782 (D. Conn. Nov. 30, 2007) ................................ 15, 16

*United States v. Godwin*,
  272 F.3d 659 (4th Cir. 2001) ........................................................................ 6

*United States v. Gole*,
  21 F. Supp. 2d 161 (E.D.N.Y. 1997) ................................................................. 6

*United States v. Grimm*,
  568 F.2d 1136 (5th Cir. 1978) ...................................................................... 10

*United States v. Harris*,
  491 F.3d 440 (D.C. Cir. 2007).......................................................................... 22

*United States v. Jabar*,
  19 F.4th 66 (2d Cir. 2021) ............................................................................ 5

*United States v. Korogodsky*,
  4 F. Supp. 2d 262 (S.D.N.Y. 1998) .................................................................... 12

*United States v. Kwong*,
  69 F.3d 663 (2d Cir. 1995) ............................................................................ 4

*United States v. Lange*,
  834 F.3d 58 (2d Cir. 2016) ................................................................. 5, 6, 7, 8, 9

*United States v. Leonard*,
  529 F.3d 83 (2d Cir. 2008) ............................................................................ 6

*United States v. Males*,
  459 F.3d 154 (2d Cir. 2006) ........................................................................... 5

*United States v. Miller*,
  626 F.3d 682 (2d Cir. 2010) ........................................................................... 4

*United States v. Milton*,
  21 Cr. 478 (ER) (Sept. 8, 2022)....................................................................... 15

*United States v. Nelson*,
  365 F. Supp. 2d 381 (S.D.N.Y. 2005) .................................................................. 16

*United States v. O'Connor*,
  580 F.2d 38 (2d Cir. 1978) ........................................................................... 10

*United States v. Okun*,
  Cr. No. 08-132, 2009 WL 414009 (E.D. Va. Feb. 18, 2009) ........................................... 6

*United States v. Paccione*,
  949 F.2d 1183 (2d Cir. 1991) ........................................................................ 22

*United States v. Paul*,
  110 F.3d 869 (2d Cir. 1997) ........................................................................... 4

*United States v. Quattrone*,
  441 F.3d 153 (2d Cir. 2006) .......................................................................... 15

*United States v. Scarpa*,
  897 F.2d 63 (2d Cir. 1990) ....................................................................... 10, 17

iii

*United States v. Schlussel*,
 08 Cr. 694 (JFK), 2009 WL 536066 (S.D.N.Y. Feb. 27, 2009) ................................. 16

*United States v. Sindona*,
 636 F.2d 792 (2d Cir. 1980) ........................................................................................ 9

*United States v. Thomas*,
 377 F.3d 232 (2d Cir. 2004) ...................................................................................... 12

*United States v. Thomas*,
 581 F. App'x 100 (2d Cir. 2014) ......................................................................... 5, 7, 9

*United States v. Urena*,
 No. 11 Cr. 1032 (PAE), 2014 WL 1303114 (S.D.N.Y. Apr. 1, 2014) ..................... 21

*United States v. Vilar*,
 729 F.3d 62 (2d Cir. 2013) ........................................................................................ 14

*United States v. Vincent*,
 416 F.3d 593 (7th Cir. 2005) ....................................................................................... 5

*United States v. Wagner*,
 No. 20 Cr. 410 (NSR), 2022 WL 19179 (S.D.N.Y. Jan. 3, 2022) ............................ 21

*United States v. Walker*,
 191 F.3d 326 (2d Cir. 1999) ................................................................................ 10, 11

*United States v. Watts*,
 934 F. Supp. 2d 451 (E.D.N.Y. 2013) ......................................................................... 7

*United States v. Weaver*,
 860 F.3d 90 (2d Cir. 2017) ............................................................................ 11, 13, 14

## Rules

Fed. R. Evid. 402 ............................................................................................... 3, 18
Fed. R. Evid. 403 .................................................................................................*Passim*
Fed. R. Evid. 608(b) .................................................................................................. 16

iv

## PRELIMINARY STATEMENT

For nearly half a decade, defendant Andrew Franzone defrauded investors and prospective investors in the fund he managed, FF Fund I, L.P. ("FF Fund" or the "Fund"). Franzone's misconduct was both intentional and crude: Franzone lied to prospective investors about the Fund's risks and investment strategy to obtain their money, misappropriated client funds he received, and deceived and misdirected his clients when they inquired about their money and the state of their investments. When investors eventually began to seek the return of their money, the Fund could not pay for the redemptions and declared bankruptcy.

The defendant is scheduled to proceed to trial on April 14, 2025.  The Government submits this memorandum of law in support of its motions *in limine*. For the reasons set forth below, the Government seeks rulings in advance of trial to:

- Preclude evidence or argument that the defendant intended the Fund's investors eventually to profit or be made whole;

- Preclude the defendant from introducing evidence or argument regarding certain aspects of the bankruptcy, including any information regarding the value of the defendant's investments post-bankruptcy;

- Preclude evidence or argument that the defendant failed to engage in fraud with respect to certain investors;

- Preclude evidence or argument that the victims of the defendant's fraud were negligent;

- Preclude evidence or argument that the defendant's misrepresentations were immaterial due to disclaimers in documents provided to investors;

- Admit evidence of the defendant's substantial personal expenses and management fees received by the defendant;

- Preclude the defendant from questioning witness Greg Hersch regarding certain civil litigation;

- Preclude the defendant from questioning any witness on his or her recreational drug use; and

- Prelude the defendant from introducing evidence or argument regarding his personal circumstances and potential punishment.[1]

## BACKGROUND

In or about 2010, Franzone and his business partner Christopher Farrell founded the investment firm Farrell Franzone, LP and the fund it managed. They raised money primarily from friends and family with a pitch that Farrell and Franzone—both experienced traders—would use the funds to trade in highly liquid investments, such as preferred stocks and options. In mid-2014, however, after disagreements arose between Farrell and Franzone regarding the Fund's trading strategy, Farrell withdrew from the venture and Franzone assumed sole control of the Fund, renaming it to "FF Fund." From at least 2014 until 2019, the defendant served as the general partner for FF Fund, which grew to manage tens of millions of dollars for more than 100 investors.

The defendant built and maintained FF Fund's size through lies and deception. The defendant fraudulently induced the Fund's investors to entrust him with their hard-earned savings by repeatedly inflating the Fund's assets under management, mischaracterizing its liquidity profile, falsely representing that funds were used to purchase stocks and options, and overstating its performance. Following Farrell's departure in 2014, the defendant assured existing and prospective investors that the Fund continued to maintain a highly liquid portfolio. Specifically, the defendant represented that the Fund's strategy continued to focus on preferred securities and options, and that private investments would account for no more than 20% of the Fund's allocation. In truth, the Fund's assets were increasingly allocated to illiquid investments, and securities and

---

[1] The defendant, through counsel, has represented that he plans to stipulate to the authenticity of routine business records, including bank and brokerage account records, obviating the need to call custodial witnesses. Should the defendant's position on stipulations change before trial, the Government anticipates moving *in limine* to admit business records on the basis of written certifications by custodians of record.

options became a much smaller proportion of the investment portfolio. For example, in approximately January 2014, Fund assets maintained at securities brokerage firms accounted for approximately 74% of the Fund's portfolio; less than 1% of assets were allocated to private investments.  By the end of 2017, in contrast, Fund assets maintained at securities brokerage firms accounted for only approximately 5% of the portfolio; roughly 80% was diverted to private, relatively illiquid investments. Those illiquid assets underperformed, and the defendant overstated the Fund's returns to prospective and current investors.

As part of his scheme, the defendant also siphoned Fund assets for personal and unauthorized expenditures. Among other things, the defendant spent more than $500,000 of Fund assets on an airplane hangar in connection with a car racing team he financially supported. In an attempt to conceal his wrongdoing, in 2019 the defendant asked certain investors to sign back-dated documents falsely stating that they were aware the Fund had purchased the airplane hangar and that it was a Fund asset. The investors refused.

In 2019, multiple investors concerned about Franzone's management of their money requested that he return their money. The Fund was unable to fulfill those requests due to the large volume of illiquid investments in its portfolio. Faced with redemption requests it could not honor, the Fund filed for Chapter 11 bankruptcy.

## ARGUMENT

### I.    The Court Should Preclude the Defendant from Introducing Evidence and Arguments That Are Irrelevant and Unfairly Prejudicial

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible" at trial, Fed. R. Evid. 402, and under Rule 403, a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

3

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403; *see also United States v. Miller*, 626 F.3d 682, 689-90 (2d Cir. 2010).

A defendant is entitled to present a defense only if it has a foundation in the evidence, *see United States v. Kwong*, 69 F.3d 663, 667-68 (2d Cir. 1995), and as long as it does not fail as a matter of law, *see United States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d Cir. 1990). If the Court finds a defense insufficient as a matter of law, the Court is under no duty to allow the defendant to present the evidence, or advance the defense, to the jury. *See United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) (citing *United States v. Bailey*, 444 U.S. 394, 416-17 (1980)).

Under the above standard, and for the reasons set forth in detail below, the defendant should be precluded from arguing or presenting evidence at trial: (A) that the defendant believed his investors would ultimately profit from the Fund's illiquid investments or recoup their losses; (B) that certain investors in fact recouped (or will stand to recoup) their losses through the bankruptcy; (C) that the defendant is innocent because he did not defraud certain of his investors; and (D) that the victims of the fraudulent scheme were negligent or failed to conduct due diligence.

## A. The Court Should Exclude Evidence and Argument that the Defendant Believed His Investors Would Ultimately Profit from the Fund's Illiquid Investments or Recoup their Losses.

The Government understands from its interviews of witnesses and review of the bankruptcy filings associated with FF Fund that the defendant may argue at trial that his fraudulent misrepresentations are excusable because he intended for everyone to profit from his illiquid investments in the long run. Any such arguments are irrelevant and unduly prejudicial for the reasons that follow.

4

### 1. Applicable Law

It is no defense to wire fraud or securities fraud as charged in the Indictment that a defendant intended to repay victims. To be sure, wire fraud requires a "contemplated harm to the victim," *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021). But it does not require that the defendant "intended to permanently deprive the victim's money or property," *United States v. Males*, 459 F.3d 154, 159 (2d Cir. 2006) (holding that jury instruction for wire fraud charge that "the requirement of contemplated harm or injury does not require that [defendant] intended to permanently de[p]rive the victim's money or property" was "an accurate statement of the applicable law"). Thus, "an intent to return money or property is not a defense to the charge of embezzlement." *United States v. Thomas*, 581 F. App'x 100, 102 n.3 (2d Cir. 2014) (citing *United States v. Buckley*, 101 F.3d 685, 1996 WL 282140, at *2 (2d Cir. 1996)). "Nor is it a defense to [wire fraud] that the accused voluntarily returned the funds." *United States v. Vincent*, 416 F.3d 593, 601 (7th Cir. 2005). "[I]t is immaterial as a matter of law whether the defendant intended to repay . . . misappropriated funds because the offense is 'complete' where, as alleged here, there is an 'immediate intent to misapply and defraud.'" *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), 2023 WL 4194773, at *9 (S.D.N.Y. June 27, 2023).

Similarly, it is no defense to securities fraud or wire fraud that a defendant believed his business venture would ultimately prove profitable. *See, e.g.*, *United States v. Lange*, 834 F.3d 58, 79 (2d Cir. 2016) (where defendant and co-conspirators "intended to immediately deprive investors of their capital through fraud," their belief, even if truly held, "that in the long-term [their companies] would ultimately succeed," is not a defense to securities fraud or wire fraud); *see also United States v. Berger*, 188 F. Supp. 2d 307, 329 (S.D.N.Y. 2002) ("Were a jury to find that [the defendant] intentionally caused others to issue materially false or misleading statements of the

5

[company's] value to its investors . . . he properly would be found guilty, even if he 'firmly believed' that, in the end, his strategy would 'work out.'"). That is because such a belief—sincere or not—has no bearing on the veracity of a defendant's misrepresentations at the time they were made to investors. *United States v. Okun*, Cr. No. 08-132, 2009 WL 414009 (E.D. Va. Feb. 18, 2009) (The "well-intentioned belief that a business venture in which a defendant was involved would be successful and would allow for repayment of money taken from victims does not supply a basis for a defense that there was a good faith belief that a representation was true.") (citing *United States v. Godwin*, 272 F.3d 659, 666-67 (4th Cir. 2001)); *United States v. Gole*, 21 F. Supp. 2d 161, 166 (E.D.N.Y. 1997) ("The definition of good faith addresses the defendant's belief in the truth of the representations, and not the defendant's belief as to the ultimate success of the plan.") (citing 1A Sand, *Modern Federal Jury Instructions*, ¶ 44.01; *United States v. Berger*, 188 F. Supp. 2d 307, 329 (S.D.N.Y. 2002) (finding that a guilty verdict on securities fraud charges based on the fact that the defendant intentionally caused others to issue false or misleading statements to investors would be proper regardless of evidence of the defendant's belief that his investment strategy would be successful financially).

Thus, where there is evidence that a defendant made false representations to victims to obtain property, but the defendant argues that he believed there would be no harm in the long run, the Court should instruct the jury that the defendant's belief that victims eventually would profit or recoup losses is irrelevant to the defendant's good faith. *See, e.g.*, *Lange*, 834 F.3d at 79 ("[T]here was a factual predicate for the instruction, because there was evidence that [the conspirators] intended to immediately deprive investors of their capital through fraud, even if they truly believed that in the long-term [the companies] would ultimately succeed, deriving profits for the defrauded investors."); *United States v. Leonard*, 529 F.3d 83, 91-92 (2d Cir. 2008) (predicate

established by evidence that defendants "intended to deprive [victims] of the full information they needed to make refined, discretionary judgments," yet defendants argued that they believed that the victims ultimately "would be no worse off" because of completion of project). And where it is clear prior to trial that the defense may seek to advance such an improper legal theory, the argument should be precluded. *See United States v. Watts*, 934 F. Supp. 2d 451, 473 (E.D.N.Y. 2013) (precluding argument that defendant believed his lies to a victim lender would cause no ultimate harm because the lender would be repaid); *accord United States v. Binday*, No. 12 Cr. 152 (CM), 2013 WL 12154927 (S.D.N.Y. Sept. 16, 2013).

### 2. *Discussion*

The defendant should be precluded from offering evidence or argument that he lacked intent to defraud because he intended to return, repay, or otherwise recoup investors' funds notwithstanding his false representations. Such arguments and evidence are irrelevant to whether the defendant held a good-faith belief that his misrepresentations were true when made. *See, e.g.*, *Thomas*, 581 F. App'x at 102 n.3 (citing *Buckley*, 1996 WL 282140, at *2) ("[A]n intent to return money or property is not a defense to the charge of embezzlement."); *Bankman-Fried*, 2023 WL 4194773, at *9. That is because a good-faith intent to repay does not negate an intent to defraud when misrepresentations were made. For the same reason, the defendant should be precluded from offering any evidence or argument that he believed the Fund would prove profitable in the long run. *See Lange*, 834 F.3d at 79. The defendant's belief that his scheme might work out in the end does not negate that he had an intent to defraud when inducing his victims to invest. It follows that the Court should also exclude any evidence that certain illiquid Fund investments ultimately did, in fact, prove profitable, *see infra* Part I.B., following the Fund's declaration of bankruptcy. What matters is whether the defendant made false representations to victims in order to obtain their

7

money, not whether the defendant's long-shot investments made with fraudulently obtained funds fortuitously resulted in profits.

Moreover, the Court should exclude such evidence and arguments under Rule 403 because the defendant's conflation of his long-term intent with his intent at the time he made fraudulent statements is likely to confuse the jury and mislead them as to the applicable law.  In the event the defendant makes or alludes to these arguments, the Court should instruct the jury that the defendant's belief that victims eventually would profit or recoup losses is irrelevant to their assessment of the defendant's good faith. *Lange*, 834 F.3d at 79.

## B. The Defendant Should Be Precluded From Argument That Victims Were Made Whole Through Bankruptcy

The defendant should be precluded from arguing that all (or most) investor-victims will in fact be made whole as a result of the Fund's bankruptcy proceedings or the subsequent appreciation of certain of the Fund's investments. Specifically, following the Indictment, and through the bankruptcy proceeding, the Fund's Chief Restructuring Officer was able to monetize one of the Fund's illiquid investments in a company called CoreWeave and recover substantial assets, resulting in a significant return on investment that may make most victims whole. While the fact of the bankruptcy will invariably be before the jury, it would be improper for the defendant to elicit facts about the bankruptcy's recoveries in an attempt to establish that he did not intend to defraud the victims, that with more time the Fund could have realized a profit for the benefit of investors, that there were no victims because they were made whole, or that the fraud was not material because the victims are likely to be made whole.

As an initial matter, whether the bankruptcy ultimately could or will recover the victims' stolen investments is legally irrelevant to the fraud charges for the same reason that the defendant's

hope that the Fund would be successful is legally irrelevant, *see supra* Part I.A.—namely, "[t]he offense occurred and was complete when the misapplication took place," and "[w]hat might have later happened as to repayment is not material." *United States v. Sindona*, 636 F.2d 792, 800 (2d Cir. 1980); *see also Bankman-Fried*, 2023 WL 4194773, at *9 (whether investors could be made whole "is immaterial as a matter of law" because the crime of wire and securities fraud is complete where "there is an immediate intent to misapply and defraud").  Moreover, and as also discussed above, the later recovery of funds is irrelevant to the defendant's mental state: "[A]n intent to return money or property is not a defense," *Thomas*, 581 F. App'x at 102 n.3, nor is a belief that the investment would "ultimately succeed," *Lange*, 834 F.3d at 79.  Such evidence would also be irrelevant to the materiality inquiry, which "concerns whether a 'reasonable investor' *would* consider a particular misstatement important," not "whether a particular misstatement *actually* resulted in loss." *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1101-02 (9th Cir. 2010) (emphasis in original).

The evidence of post-bankruptcy recoveries should also be excluded under Rule 403. That evidence and argument would necessitate a mini trial to value assets available through the bankruptcy and whether they cover creditor losses, as well as whether they were available to victims prior to the bankruptcy. Such argument will inevitably lengthen the trial, confuse and distract the jury, and require the jury to engage in complicated *ex post* valuation exercises, none of which is relevant to the defendant's guilt.

## C. The Court Should Exclude Evidence or Arguments that the Defendant Did Not Defraud Certain Investors

To the extent Franzone intends to introduce truthful communications with certain investors as a defense, such evidence is wholly irrelevant and inadmissible at trial.

*1. Applicable Law*

It is black letter law that "[a] defendant may not seek to establish his innocence through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990). Whether analyzed under the rubric of relevance, pursuant to Rule 401, or character propensity evidence, under Rule 404(b), courts uniformly hold that evidence that a defendant engaged in legal, honest business conduct on some occasions may not be introduced to rebut an allegation that the defendant engaged in criminal conduct on other occasions. *See, e.g., United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020) ("Chambers's argument that his running of a legitimate law practice makes it less likely that he had corrupt intent to bribe Villanueva is precisely the type of propensity inference that Rule 404(b)(1) is intended to prohibit."); *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) (affirming district court's exclusion of testimony that witnesses did not pay defendant any bribes "because such testimony would in effect be an attempt to demonstrate appellant's good character by proof of specific good acts"); *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming the district court's refusal to allow defendant accused of preparing false asylum applications to admit evidence of truthful applications he had allegedly submitted, because whether the defendant "had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent"); *see also United States v. Boykoff*, 67 F. App'x 15, 20-21 (2d Cir. 2003) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." (quoting *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978))).

Finally, even where a defendant seeks to admit purportedly innocent conduct for some purpose other than propensity, that evidence is inadmissible if its probative value "is substantially

outweighed by," among other things, "confusion of the issues, or misleading the jury . . . [and the] waste of time." Fed. R. Evid. 403.

      *2. Discussion*

It appears that the defendant may seek to introduce evidence that a small number of investors were satisfied with the Fund's investment strategy given that one of those investments was ultimately profitable, *see infra* Part II, in order to demonstrate that the defendant lacked fraudulent intent. But it is irrelevant that the defendant did not engage in fraud with respect to each and every investor. In the alternative, the defendant's efforts to offer this evidence would be an impermissible effort to prove his good character through specific instances of conduct in violation of Rule 404(b)(1). *See, e.g., Walker*, 191 F.3d at 336; *Chambers*, 800 F. App'x at 46. It is thus improper for the defendant to introduce evidence related to other investors whom he may not have misled, or who do not view themselves as victims of fraud, in an effort to negate any inference about his state of mind as to the conduct at issue in the Indictment.

**D. The Court Should Not Permit the Defendant to Blame his Victims.**

The defendant should be precluded from arguing or adducing evidence that the Fund's investors were negligent, gullible, or insufficiently vigilant. "The Court of Appeals routinely has rejected a gullible victim defense for wire-fraud charges." *United States v. Adelekan*, 567 F. Supp. 3d 459, 470 (S.D.N.Y. 2021) (citing *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007), and *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017)). That is because "reliance is not an element of criminal fraud," and "the unreasonableness of a fraud victim in relying (or not) on a misrepresentation does not bear on a defendant's criminal intent." *Weaver*, 860 F.3d at 95-96. Accordingly, the defendant may not argue that the Fund's investors engaged in inherently risky conduct by investing, that they were careless or not sufficiently focused on their investment, or

that they were otherwise to blame for a lack of diligence. Because a defendant may not assert a victim's negligent failure to discover the fraud, *see United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004), the defendant here should not be permitted to cross-examine victim witnesses in a manner that implies that their due diligence was inadequate or that they were otherwise negligent. *See United States v. Korogodsky*, 4 F. Supp. 2d 262, 265-66 (S.D.N.Y. 1998) ("It is no defense that the victims of the fraud may have been engaged in some misconduct" and therefore "possible misconduct of the victim [is] not relevant . . . .").

## II.   The Court Should Exclude Certain Defense Arguments That the Defendant's Misrepresentations Were Immaterial Based on Disclaimers in the Fund's Private Placement Memorandum

The defendant should be precluded from making arguments or cross-examining witnesses about contractual disclaimers or similar provisions in the Fund's private placement memorandum ("PPM") provided to investors. Significantly, the Government anticipates that multiple witnesses at trial will testify to direct oral representations that Franzone made regarding the Fund's investment strategy and his investment in liquid assets, and that these representations form the foundation of those victims' understanding of the Fund's management. Accordingly, any argument in reliance on the Fund's disclaimers do not bear on the materiality of the misrepresentations the Government will seek to prove at trial.

The PPM contains several boilerplate disclaimers, including those relating to Franzone's discretion to alter his investment strategy without prior approval, the fluidity of trading approaches, and the inherent riskiness of investments. For example, the PPM states the following regarding "Investment and Trading Risks":

> All investments involve the risk of a loss of capital. The General Partner believes that the Partnership's investment program and its research and risk- management techniques moderate this risk through the careful selection of securities and other

financial instruments. No guarantee or representation is made that the Partnership's investment program will be successful, and investment results may vary substantially over time. The Partnership's investment program will utilize such investment techniques as option transactions, limited diversification, margin transactions, short sales and futures and forward contracts, which practices can, in certain circumstances, maximize the adverse impact to which the Partnership may be subject.

The PPM separately states the following with respect to Franzone's investment strategy:

The General Partner is not limited by the above discussion of the investment program. Further, the investment program is a strategy as of the date of this Memorandum only. The General Partner has wide latitude to invest or trade the Partnership's assets, to pursue any particular strategy or tactic, or to change the emphasis without obtaining the approval of the Limited Partners. The investment program imposes no significant limits on the types of instruments in which the General Partner may take positions, the type of positions it may take, its ability to borrow money, or the concentration of investments. The foregoing description is general and is not intended to be exhaustive. Prospective investors must recognize that there are inherent limitations on all descriptions of investment processes due to the complexity, confidentiality, and subjectivity of such processes. In addition, the description of virtually every trading strategy must be qualified by the fact that trading approaches are continually changing, as are the markets invested in by the General Partner.

**There can be no assurance that the Partnership will achieve its investment objective or avoid substantial losses. An investor should not make an investment in the Partnership with the expectation of sheltering income or receiving cash distributions. Investors are urged to consult with their personal advisers before investing in the Partnership. Because risks are inherent in all the investments in which the Partnership engages, no assurances can be given that the Partnership's investment objectives will be realized.**

\*\*\*

The General Partner has broad discretion to expand, revise or contract the Partnership's business without the consent of the Limited Partners. The Partnership's investment strategies may be altered, without prior approval by the Limited Partners, if the General Partner determines that such change is in the best interest of the Partnership.

The "common-law requirements of justifiable reliance and damages plainly have no place in the federal fraud statutes." *Weaver*, 860 F.3d at 95 (citing *Neder v. United States*, 527 U.S. 1, 24-25

13

(1999)); *see also United States v. Vilar*, 729 F.3d 62, 88 (2d Cir. 2013) (reliance not an element of criminal securities fraud). And because "a disclaimer of reliance on certain representations" does not "mean that the oral representations were immaterial or without tendency to influence," *Weaver*, 860 F.3d at 95, they have no relevant purpose in the trial. Indeed, it would undermine the purposes of the fraud laws to permit "[f]raudsters [to] … escape criminal liability for lies told to induce gullible victims … to sign a contract containing disclaimers of reliance." *Id.* at 96. The PPM disclaimers therefore do not bear on the question whether Franzone otherwise made material misstatements to investors regarding the liquidity of the Fund or his trading strategy. Any argument or cross-examination regarding the PPM would be designed to improperly imply the opposite. In addition to being irrelevant, such evidence would be confusing to jurors and should be excluded under Rule 403.

### III. The Court Should Admit Evidence of the Defendant's Substantial Personal Expenses

At trial, the Government intends to offer evidence (1) relating to the defendant's personal spending, including that at least some of that spending was paid for using investor funds that he misappropriated from the Fund; and (2) establishing that he was motivated to falsely inflate the claimed value of the Fund in order to award himself more management fees. Such evidence is admissible for several reasons.

To the extent the defendant's personal spending was paid for using investor funds, it is direct evidence of the defendant's misappropriation, which is proof of the fact that his representations about the nature of the investment and the use of the funds (*e.g.*, that he would be buying stocks and options) were false. To the extent the defendant engaged in spending that was not paid directly out of investors' funds, but was made possible through the defendant's operation

of the scheme, that too is admissible. *See United States v. Adelglass*, No. 23-6248, 2024 WL 5087519, at *2 (2d Cir. Dec. 12, 2024) (Rule 404(b) permitted Government to introduce evidence of the defendant's "lavish spending," which was "probative of his motive."); *United States v. Milton*, 21 Cr. 478 (ER) (Sept. 8, 2022), Tr. at 47 (admitting evidence of "money coming in" and how the defendant "spen[t] the money" as "garden-variety proof in fraud cases" that is "very relevant to the motive of pecuniary gain").

For similar reasons, evidence of the defendant's compensation—in the form of Fund management fees—is direct evidence of the crimes charged and the defendant's motive. The Government intends to introduce evidence that the defendant baselessly inflated the value of the Fund's investments, which was transmitted to investors through monthly reports that purported to show positive returns. Because the underlying asset values of the Fund determined Franzone's management fees, evidence of the amount of those fees is direct proof of Franzone's inflated valuation of the Fund's investments. Evidence of his compensation is separately relevant to the defendant's motive. *See United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006) (evidence of the defendant's substantial wealth and compensation—over $200 million in two years— properly admitted, including because it was "relevant to [the defendant's] motive to protect his reputation and that of [his company]") (collecting cases); *United States v. Bulgin*, 563 F. App'x 843, 846 (2d Cir. 2014) ("we have upheld a district court's decision to allow evidence of monetary gain when a defendant is on trial for a crime in which pecuniary gain is the usual motive") (internal quotation marks omitted). *United States v. Ferguson* is instructive on this point. No. 06 Cr. 137 (CFD), 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007). *In Ferguson*, the defendant argued that his compensation while at AIG was inadmissible. The court disagreed, holding that "[t]he evidence concerning [the defendant]'s deferred compensation plan is relevant to proving motive,

15

because AIG's performance affected [the defendant]'s benefits under the plan" and therefore the defendant's "financial interest in AIG's performance . . . is relevant to [his] motive to manipulate AIG's financial statements to maintain AIG's stock price." As in *Ferguson*, the Fund's performance directly affected the defendant's compensation, thus supplying him reason to inflate asset values.

### IV. The Court Should Preclude Cross Examination on Topics That Do Not Bear on Credibility and Are Highly Prejudicial

It is black letter law that the defendant may not cross-examine a witness on conduct irrelevant to truthfulness, or otherwise use cross-examination to harass or intimidate a witness. For the reasons that follow, the defendant should be precluded from questioning witnesses on impermissible topics.

#### A.  Applicable Law

Rule 608(b) of the Federal Rules of Evidence limits cross-examination regarding "specific instances of a witness's conduct" to situations where the conduct of the witness was "probative of the [witness's] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Conversely, Rule 608(b) "'does not authorize inquiry on cross-examination into instances of conduct that do *not* actually indicate a lack of truthfulness.'" *United States v. Schlussel*, 08 Cr. 694 (JFK), 2009 WL 536066, at *3 (S.D.N.Y. Feb. 27, 2009) (emphasis added) (quoting *United States v. Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005)). Moreover, "Fed. R. Evid. 608(b) prohibits a party from presenting 'extrinsic evidence' of '[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility' unless that conduct was the subject of a criminal conviction." *United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) (quoting Fed. R. Evid. 608(b)). And "under [Federal Rule of Evidence] 403, the district court may exclude even

16

relevant evidence if it finds that the 'probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* (internal quotation marks and citations omitted).

Rule 611 provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility," and that the Court should "avoid wasting time" and "protect witnesses from harassment or undue embarrassment." It is well settled that "[t]he scope and extent of cross-examination lies within the discretion of the trial judge." *Scarpa*, 913 F.2d at 1018 (internal quotation marks omitted).

### B.   The Court Should Preclude the Defendant from Questioning Greg Hersch About an SEC Enforcement Action and Certain Civil Litigation

The Government anticipates calling at trial Gregory Hersch, an investment advisor and former friend of Franzone, who is also a victim of Franzone's scheme. Hersch advised his father, who managed a trust for the benefit of third parties, to invest in FF Fund, and advised others to do the same through his investment advisory firm Florence Capital Advisors LLC ("FCA"). At the same time FCA was advising its clients about investing in FF Fund, FCA also served as an investment advisor to FF Fund. After FF Fund filed for bankruptcy, Hersch and FCA were investigated by the SEC and were subject to civil disputes stemming from Hersch's involvement in, and recommendation of, FF Fund. For the reasons that follow, Franzone should be precluded from cross-examining Hersch about those matters.

#### 1.   *The SEC Enforcement Action*

Following FF Fund's bankruptcy, Hersch and FCA were charged by the Securities and Exchange Commission ("SEC") with violating Section 206(2) of the Investment Advisers Act of

1940 for failure to adequately disclose that FCA was receiving advisory fees from FF Fund at the same time it was offering the Fund as an investment to its clients. Hersch and FCA settled the charges through a "No Admit, No Deny" settlement agreement with the SEC on or about September 29, 2023. *See* SEC Charges Investment Adviser and its CEO for Undisclosed Conflicts, https://www.sec.gov/enforce/ia-6450-s (last visited Mar. 6, 2025). Section 206(2) does not require a showing of scienter: simple negligence suffices for liability. *See S.E.C. v. Moran*, 922 F. Supp. 867, 897 (S.D.N.Y. 1996).

Franzone should not be permitted to cross-examine Hersch about the charges brought by the SEC and the settlement reached because both the charges and settlement are irrelevant and highly prejudicial. *See* Fed. R. Evid. 402 and 403. Charges without a disposition are merely allegations that that are not relevant to truthfulness and, therefore, are inadmissible. *Cf. United States v. Donovan*, 20 Cr. 374 (PKC), 2021 WL 6065767, at *9 (E.D.N.Y. Dec. 22, 2021) (precluding cross-examination of witness concerning lawsuit because "there has been no finding of any wrongdoing, and mere allegations are irrelevant to truthfulness and unduly prejudicial"); *United States v. Agostini*, 280 F. Supp. 2d 260, 262 (S.D.N.Y. 2003) (noting that criminal charges without a disposition are "merely allegations," and holding that it would be "improper to introduce evidence of such Arrests . . . when [the witness] might eventually be acquitted of such charges"); *Saldarriaga v. United States*, 99 Civ. 4487 (WK), 2002 WL 449651, at *4 (S.D.N.Y. Mar. 21, 2002) ("Unsubstantiated civil rights allegations made against [the witness] would have no bearing on his 'character for truthfulness.'"). Because Hersch's and FCA's settlement with the SEC was "No Admit, No Deny," it is in no way probative of whether Hersch or FCA engaged in any wrongdoing. Moreover, the charge itself is one premised on negligence, thus, even if the settlement did concede misconduct—which it did not—that conduct would not be intentional or willful, and

18

consequently is not probative of Hersch's veracity. Indeed, the only purpose of informing the jury

of the SEC's charges and Hersch's settlement would be to imply that Hersch is not credible because

he violated federal securities laws. But such an implication is inaccurate, highly prejudicial, and

should be excluded.

That is not to say, however, that the defense cannot cross-examine Hersch about the facts

*underlying* the SEC's charge. That Hersch and FCA were involved with FF Fund both as investor

and as investment adviser are basic facts regarding Hersch's and FCA's connection to FF Fund.

But the fact of Hersch's ultimate settlement of the SEC's charges through a negligence-based "No

Admit, No Deny" settlement agreement is prejudicial and properly excluded.

### 2.  *The Civil Litigations*

Additionally, since the FF Fund declared bankruptcy, Hersch and FCA have been involved

in two civil litigation proceedings that are not properly the subject of cross-examination. *First*, in

the second half of 2020, one of FCA's clients who invested in the Fund ("Client-1") commenced

arbitration[2] against Hersch and FCA for breach of fiduciary duty, constructive fraud, fraud-

intentional misrepresentation, fraud concealment, negligent misrepresentation, and negligence,

seeking recompense for Client-1's investment in FF Fund. On February 22, 2022, the parties

entered into a confidential settlement agreement ("Settlement-1") ending the arbitration. As such,

the arbitrator made no determination as to liability. Shortly after Settlement-1 was finalized, on

March 24, 2022, Hersch filed a request for expungement of the matter from the Central

---

[2] The arbitration was originally filed as a civil action in Los Angeles Superior Court on or about August 28, 2020. On October 9, 2020, the case was removed to United States District Court for the Central District of California. On November 25, 2020, the parties agreed to transfer their dispute to arbitration.

Registration Depository ("CRD") records of the Financial Industry Regulatory Authority ("FINRA").[3] In connection with that request, the arbitrator concluded that the claims and allegations against Hersch were false and recommended the expungement of all references to the arbitration maintained by the CRD.[4] Thus, there have been no adverse findings of fact as to Hersch in connection with Settlement-1.[5]

*Second*, in February of 2024, FCA filed a complaint in this Court against another FCA client ("Client-2") for breach of contract, alleging that Client-2 had failed to pay FCA certain fees due to it for advising the client to invest in CoreWeave. In response, Client-2 filed counterclaims against FCA and Hersh, among others, sounding in breach of fiduciary duty and fraud on the basis that FCA and Hersh improperly failed to disclose that FCA was simultaneously advising Client-2 to invest in FF Fund and serving as an advisor to FF Fund. The case remains ongoing with a motion to dismiss pending. *See* 24 Civ. 1094 (JHR) (S.D.N.Y.).

Just as with respect to the SEC enforcement action, the defense should not be permitted to cross-examine Hersch on the existence or resolution of these civil matters. With respect to the

---

[3] FINRA's CRD program maintains a database of information about investment professionals that is viewable by the public. *See* FINRA.org, Central Registration Depository (CRD), https://www.finra.org/registration-exams-ce/classic-crd (last viewed Mar. 6 2025).

[4] That arbitral decision was confirmed in New York Supreme Court on July 26, 2022. *See* Decision & Order on Motion, Index No. 656955/2022 (N.Y. Sup. Ct. Jul. 26, 2022).

[5] The Government understands that, in the context of the bankruptcy litigation, Franzone has speculated that Hersch's execution of Settlement-1 was itself a conflict of interest because Hersch did not disclose to Client-1 the future upside of FF Fund's investment in CoreWeave. Any such argument is baseless, and would necessitate: (i) introducing the fact of CoreWeave's exponential increase in value following the Fund's bankruptcy, which is properly precluded as unduly prejudicial under Rule 403; and (ii) a mini-trial into what Hersch knew, anticipated, or was legally required to disclose at the time of the settlement agreement, which is likewise properly precluded as irrelevant, confusing, and a waste of the jury's time.

arbitration and subsequent settlement, the claims in the arbitration were merely unsubstantiated civil allegations with no bearing on Hersch's credibility. *See Donovan*, 20 Cr. 374 (PKC), 2021 WL 6065767, at *9 (precluding cross-examination of witness concerning lawsuit because "there has been no finding of any wrongdoing, and mere allegations are irrelevant to truthfulness and unduly prejudicial"). Indeed, to the extent there was any finding with respect to Client-1's arbitration claims, the finding was that the claims were false. With respect to the litigation pending in this Court, that case is in a nascent stage. Although complaints have been filed, motions to dismiss are pending and no determination has been made as to Hersch's or FCA's liability. As such, the allegations against Hersch and FCA in that lawsuit are mere allegations that are irrelevant to truthfulness.

### C. The Court Should Preclude the Defendant from Cross-Examining Witnesses About Their Recreational Drug Use

As will be disclosed in notes of witness interviews, at least one of the witnesses the Government expects to call engaged in recreational drug use. The defense should be precluded from cross examining any witnesses on this issue because it is not probative of a witness's truthfulness and would serve only to harass the witness and prejudice the jury against them. *See, e.g.*, *United States v. Urena*, No. 11 Cr. 1032 (PAE), 2014 WL 1303114, at *3 (S.D.N.Y. Apr. 1, 2014) (precluding cross-examination of witness who was twice convicted of misdemeanor marijuana possession because "[t]he mere fact of engaging in such conduct, which by its nature is not inherently indicative of dishonesty, would not bear on [the witness'] credibility in this trial."); *United States v. Wagner*, No. 20 Cr. 410 (NSR), 2022 WL 19179, at *5 (S.D.N.Y. Jan. 3, 2022) ("It is well established that a witness's use of drugs or alcohol, in and of itself, is not probative of their character for truthfulness." (citations omitted)).

21

### V.  The Court Should Exclude Evidence of the Defendant's Personal Circumstances and Potential Punishment

The Government is unaware of any lawful basis for the defendant to offer evidence or argument concerning his family background, health, age, or any other similar factors. He should be precluded from doing so, and from mentioning such subjects in his opening statement, absent a showing that such a factor bears on his guilt. *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *see also United States v. Harris*, 491 F.3d 440, 447-48 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

The defendant should similarly be precluded from offering evidence or argument concerning the punishment or consequences he faces if convicted. Such arguments are sometimes presented to jurors by telling that the defendant's "life is in their hands," that a defendant's "liberty is at stake," that the defendant "does not deserve to go to prison," and in other similar formulations. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id*

**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court grant its motions *in limine*.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York

By:    /s/_____

Dated: New York, New York        Marguerite B. Colson
      March 10, 2025        Maggie Lynaugh
                            Sarah Mortazavi
                            Assistant United States Attorneys