

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

March 14, 2025

**VIA ECF**

Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *United States v. Andrew Franzone*, 21 Cr. 446 (VSB)

Dear Judge Broderick:

  The Government respectfully submits this supplemental motion *in limine* for a ruling to permit at trial evidence that in October 2020, approximately one year after the defendant's FF Fund I, L.P. ("FF Fund" or the "Fund") filed for bankruptcy, the defendant solicited, and received, $200,000 from an investor ("Investor-1") on Franzone's representation that the money would be invested in the Fund, then diverted the investment he received for personal expenses. As set forth below, the Court should admit this evidence as direct evidence of the charged offenses or, in the alternative, pursuant to Rule 404(b) of the Federal Rules of Evidence.

  **I. Background**

  On or about October 28, 2020, Investor-1 wired $200,000 to a bank account in the name of "Andrew T. Franzone LLC." Yesterday, the Government interviewed Investor-1 and Investor-1's son regarding that wire transfer and Franzone's representations regarding the use of those funds.[1] During these two interviews, the Government confirmed that Franzone had represented to both Investor-1 and his son that Investor-1's money would be invested in the Fund (as opposed to a distinct, successor fund in the name of "Andrew T. Franzone LLC"). Upon interviewing Investor-1's son, who helped facilitate Investor-1's interactions with Franzone, the Government learned that Franzone had represented to Investor-1's son, in sum and substance, that Investor-1's money would "go right into the Fund," which was "still making money," and that Investor-1 could expect an approximately 3% return on his investment per month. Similarly, on the basis of Franzone's representations, both directly and through Investor-1's son, Investor-1 believed that Franzone still

---

[1] While the Government had previously interviewed Investor-1, the notes of that interview reflect, in substance, the fact of Investor-1's investment, but not the details and extent of Franzone's misrepresentations to induce the investment. On March 13, 2025, the Government spoke with Investor-1's son for the first time and that interview yielded additional details of Franzone's efforts to obtain Investor-1's funds.

managed $40 million in assets through the Fund despite the bankruptcy, and that Investor-1's $200,000 would be added to the Fund.

Franzone's representations were utterly false. At the time Investor-1 transferred the $200,000 to Franzone, the Fund had been in bankruptcy for approximately thirteen months and was under the control of a chief restructuring officer ("CRO"). More to the point, bank records reveal that almost as soon as Investor-1's money was wired into Franzone's bank account, Franzone wired a substantial portion of the funds to pay for personal expenses: $50,000 related to luxury vehicles, and $15,000 to romantic partners (the "2020 Fund Misappropriation"). Investor-1 has never received a return from his supposed investment or recouped the money he entrusted to Franzone.

## II. The 2020 Fund Misappropriation Evidence is Admissible as Direct Proof of the Charged Conduct or, in the Alternative, Pursuant to Rule 404(b)

The 2020 Fund Misappropriation evidence is direct proof of the conduct charged in the Indictment because it establishes Franzone's intent to defraud. In the alternative, the evidence is admissible under Rule 404(b) to prove motive, opportunity, and lack of accident, in addition to Franzone's intent and knowledge.

### A. Applicable Law

#### 1. Direct Evidence

Evidence of an uncharged act is admissible as direct evidence, without regard to Rule 404(b), if the uncharged act "arose out of the same transaction or series of transactions as the charged offense"; (2) "is inextricably intertwined with the evidence regarding the charged offense"; or (3) "is necessary to complete the story of the crime on trial." *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997); *see also United States v. Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010) (explaining that some kinds of evidence offered "to show the background of a conspiracy" is not "other crimes" evidence subject to Rule 404(b), but rather "'direct proof of the charged conspiracy'"); *accord United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) ("[T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."). The Second Circuit has repeatedly affirmed the admissibility of evidence fitting one or more of these descriptions, whether it relates to conduct that occurred before, during, or after the period of the charged crime. *See, e.g., United States v. Kaiser*, 609 F.3d at 571 (in securities fraud case, holding that bad acts predating the conspiracy were admissible as direct evidence, without regard to Rule 404(b), because they had carry-over effects during the conspiracy); *United States v. Goffer*, 721 F.3d 113, 124 (2d Cir. 2013) (explaining that "[s]ubsequent acts are frequently probative as to intent" and finding that participation in the scheme led to later transactions that "so closely paralleled the charged conduct" as to be "probative [of the charged conduct] regardless of the temporal difference"); *United States v. Rigas*, 490 F.3d 208, 238-39 (2d Cir. 2007) (affirming district court's decision to permit Government to adduce evidence of uncharged fraudulent acts

predating the charged conspiracy as direct proof of charged accounting fraud conspiracy because the evidence was "'inextricably intertwined with'" the proof of the charged conspiracy and "'necessary to complete the story of the crime on trial'"); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (in case charging false statements to maintain a line of credit, affirming admissibility of uncharged acts of falsification of business inventory, which occurred at or around the same time as the charged crimes, as direct proof inextricably intertwined with charged conduct).

### 2. Rule 404(b)

Although Rule 404(b) prohibits the introduction of other act evidence to prove that the defendant has a propensity to commit the offenses charged, it allows admission of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Second Circuit has adopted an "'inclusionary' approach" to Rule 404(b), under which "all 'other act' evidence is generally admissible unless it serves the sole purpose of showing a defendant's bad character." *United States v. Siddiqui*, 699 F.3d 690, 702 (2d Cir. 2012); *see also United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) ("'Other act' evidence serves a proper purpose so long as it is not offered to show the defendant's propensity to commit the offense."). To determine admissibility under Rule 404(b), a court should consider whether: (1) the evidence is offered for a proper purpose; (2) the evidence is relevant to a disputed issue; and (3) the probative value of the evidence is substantially outweighed by its prejudicial effect. *See Curley*, 639 F.3d at 56-57. In addition, the Court should give an appropriate limiting instruction to accompany any such evidence, if the defense so requests. *Id.*

As with direct evidence, other act evidence relating to conduct that follows, rather than precedes, the period of the charged offense may be admitted pursuant to Rule 404(b). *See, e.g.*, *Lutwak v. United States*, 344 U.S. 604, 617 (1953) ("Acts which took place after the conspiracy ended which were relevant to show [the nature of the fraud] and the intent of the parties . . . were competent [evidence]"). The fact that similar act evidence "involve[s] a subsequent rather than prior act is of no moment." *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998). "Relevancy cannot be reduced to mere chronology; whether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative to its admissibility." *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990). Indeed, the Second Circuit has held that subsequent acts are admissible under Rule 404(b) to prove the defendant's intent at the time of the charged offense. *See, e.g.*, *United States v. Rutkoske*, 506 F.3d 170, 178 (2d Cir. 2007) (upholding admission of conversations regarding one securities fraud scheme to show knowledge of another securities fraud scheme four years earlier "[i]n light of the similarity between the [two] schemes"); *Germosen*, 139 F.3d at 128 (upholding admission of subsequent fraud scheme, originally charged as part of same conspiracy, to show intent to defraud); *Ramirez*, 894 F.2d at 567, 569 (upholding admission of subsequent attempted cocaine sale to show knowing participation in cocaine trade during earlier transaction).

### B. Discussion

For the reasons that follow, the 2020 Fund Misappropriation evidence should be admitted either as direct evidence or as permissible other act evidence.

#### 1. The 2020 Fund Misappropriation Evidence is Admissible as Direct Proof of Intent to Defraud

The 2020 Fund Misappropriation evidence is direct proof of Franzone's intent to defraud. The evidence arises out of the same series of transactions as the charged offenses and is inextricably linked to other evidence of those crimes. Investor-1 is (to the Government's knowledge) just the latest in a long series of investors who were induced to invest their money into the Fund based on Franzone's false statements. Indeed, to defraud Investor-1, Franzone peddled the *very same* misrepresentations he had made to earlier victim-investors regarding steady and significant returns.

Moreover, the Government anticipates that Franzone will put forward as a defense at trial his good faith, namely, that he is not guilty because did not intend to deceive investors or deprive them of money or property when he induced them invest in the Fund. Indeed, in Franzone's motions *in limine*, he asserts that there "was no Securities Fraud or Wire Fraud" in this case. (Dkt. 158, at 13). Evidence of the 2020 Fund Misappropriation directly refutes that defense by proving Franzone's fraudulent intent. When Franzone induced Investor-1 to wire $200,000, the Fund was the subject of a prolonged bankruptcy proceeding and was under the control of the CRO, not Franzone. Indeed, as of September 9, 2020, only a few weeks before the 2020 Fund Misappropriation and approximately one year after the Fund entered bankruptcy, the CRO filed a status report stating, among other things, that the CRO "has not been able to value any of the investments or assets of the Debtors" "[f]or several reasons . . . including the illiquid nature of many of such investments," and that the CRO was further unable "to confirm that the value of such investments or assets . . . were accurately reflected on the books and records of FF Fund[.]" *See In Re FF Fund I, L.P.*, No. 19-22744 (LMI) (Bankr. Ct. S.D.Fl. Sept. 9, 2020) (ECF No. 170). With respect to the prospect of any positive returns—let alone the 3% monthly returns Investor-1 was promised—the CRO elaborated in this filing that, "With a few exceptions, the investments/assets [of FF Fund] are generally held in early-stage businesses which are inherently speculative and illiquid in nature." *Id.* Thus, there was no way Franzone could fulfill his promises to Investor-1. Franzone had no ability to deposit Investor-1's money into the Fund and no authority to direct investment decisions. Yet Franzone still solicited and took Investor-1's money, promising that it would be added to a $40 million pool of assets in the Fund and earning steady returns—the same set of lies Franzone had told other investors. As soon as Franzone received the money, however, he diverted the investment to his personal use.

Franzone's fraudulent intent with respect to Investor-1 sheds light on his intent with respect to earlier victim-investors that he likewise induced to invest in the Fund in virtually identical transactions. *See Goffer,* 721 F.3d at 124 (participation in the scheme led to later transactions that "so closely paralleled the charged conduct" as to be "probative [of intent] regardless of the temporal difference"). Franzone's interactions with Investor-1 are, consequently, admissible as direct proof of the charged scheme.

## 2. The 2020 Fund Misappropriation Evidence is Admissible as Evidence of Intent, Lack of Mistake, Motive and Opportunity Pursuant to Rule 404(b)

Even if the 2020 Fund Misappropriation Evidence is not admissible as direct evidence of the charged conduct, it is admissible as other act evidence relevant to intent, knowledge and absence of mistake, motive, and opportunity.

As set forth above, the 2020 Fund Misappropriation evidence is highly probative of Franzone's state of mind at the time of the offense, specifically, his intent, knowledge, and the absence of mistake. That Franzone repeated the same representations to Investor-1 that he had made to earlier investors, at a time when there was *no way* Franzone could make good on his representations, shows that Franzone's intent with respect to the earlier investors was to deceive. As described above, the Government expects that Franzone will argue good faith as a defense to the charged crimes. Closely related to that argument is the anticipated claim that Franzone was merely disorganized or overwhelmed, and that he inadvertently diverted investors' money to personal use and illiquid investments due to mistake, and not pernicious intent. Evidence of the 2020 Fund Misappropriation directly refutes that defense. In October 2020, the Fund had long-since declared bankruptcy due to its inability to honor investors' redemptions, and Franzone was forced to relinquish control of the Fund to the CRO. In other words, by the time Investor-1 transferred his money to Franzone, Franzone well knew the consequences of mismanaging and diverting investor money, and further knew that his illiquid investments could not be monetized, and were not generating returns. That he once again engaged in the very same conduct with that conduct belies the notion that Franzone's misappropriation of investor money in 2014 through 2019 was a mistake.

Like the evidence of Franzone's lavish spending discussed in the Government's first motions *in limine*, (Dkt. 161 at 14-16), evidence that Franzone misappropriated Investor-1's $200,000 to pay luxury car companies is probative of Franzone's motive to commit the charged crimes in order to enrich himself. The Government expects the evidence at trial will show that during the time period of the charged scheme, Franzone boasted of his luxury vehicle collection. Evidence that Franzone misappropriated Investor-1's money to make payments related to luxury vehicles helps establish that his motive in committing the charged crime was, at least in part, to maintain his lavish lifestyle.

Finally, the 2020 Fund Misappropriation is powerful proof of Franzone's opportunity to commit the charged crimes. Both Investor-1 and Investor-1's son are expected to testify that they met Franzone through notable members of the NASCAR community and bonded with Franzone over his passion for racecars. The Government expects the evidence at trial to show that several victims of Franzone's fraud were likewise NASCAR enthusiasts, and that this shared connection afforded Franzone the opportunity to market the Fund to additional contacts in that community. In short, the evidence will show how Franzone committed his crime, by exploiting the networks and connections in the NASCAR community, including through Investor-1 and other similarly-situated individuals.

\* \* \*

      Wherefore, for all these reasons, the defendant's motions *in limine* should be denied in their entirety as moot or meritless.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By:   /s_____
Marguerite B. Colson
Maggie Lynaugh
Sarah Mortazavi
Assistant United States Attorneys
Southern District of New York
Tel: (212) 637-2587 | -2448 | -2520

cc: Joseph R. Corozzo (by ECF)
    Angela D. Lipsman (by ECF)