P4B5fraP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4             v.                            21 Cr. 446 (VSB)

5    ANDREW FRANZONE,

6               Defendant.

7    ------------------------------x

8                                          April 11, 2025
                                           4:20 p.m.
9

10   Before:

11                    HON. VERNON S. BRODERICK,

12                                     U.S. District Judge

13

14                       APPEARANCES

15   MATTHEW R. PODOLSKY
          Acting United States Attorney for the
16        Southern District of New York
     BY:  SARAH MORTAZAVI
17        MARGUERITE COLSON
          MARGARET E. LYNAUGH
18        Assistant United States Attorneys

19   RUBINSTEIN & COROZZO, LLP
          Attorneys for Defendant
20   BY:  JOSEPH R. COROZZO
          ANGELA D. LIPSMAN

21

22

23

24

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

P4B5fraP

1          (Case called)

2          THE COURT:  If I can ask counsel to please identify

3    themselves for the record.

4          MS. MORTAZAVI:  Good afternoon, your Honor.  For the

5    government you have got Sarah Mortazavi, Margueritz Colson, and

6    Maggie Lynaugh.

7          THE COURT:  For the defense?

8          MR. COROZZO:  Good afternoon, your Honor.  On behalf

9    of Mr. Franzone Joseph Corozzo, and to my left is my associate

10   Angela Lipsman.

11         THE COURT:  Thank you.  Good afternoon.

12         Mr. Franzone, I have been informed that you wish to

13   plead guilty to Counts and Two of indictment 21 CR 446, which

14   charges you with securities fraud and wire fraud respectively.

15   Is that correct?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Now, before I accept your plea I'm going

18   to ask you certain questions so that I can establish, to my

19   satisfaction, that you are pleading guilty because you are in

20   fact guilty and not for some other reason, and also to

21   establish to know what you will be giving up by pleading

22   guilty.  If you don't understand one of my questions, or if you

23   wish additional time to speak with your attorneys, just let me

24   know and either I will try and answer your question or I will

25   allow you the time you need to speak with your attorneys.

P4B5fraP

1              If I could ask, Mr. Quintero, if you could please

2    swear in Mr. Franzone?

3              THE DEPUTY CLERK:  Mr. Franzone, can you stand and

4    raise your right hand?

5              (Defendant sworn)

6              THE COURT:  What is your full name?

7              THE DEFENDANT:  Andrew Terrence Franzone.

8              THE COURT:  How old are you?

9              THE DEFENDANT:  48 years old.

10             THE COURT:  How far did you go in school?

11             THE DEFENDANT:  MBA at Columbia Business School.

12             THE COURT:  Have you ever been treated or hospitalized

13   for any mental illness?

14             THE DEFENDANT:  No.

15             THE COURT:  Are you now or have you recently been

16   under the care of a doctor or a psychiatrist?

17             THE DEFENDANT:  No.

18             THE COURT:  Have you ever been treated or hospitalized

19   for any type of addiction including drug or alcohol addiction?

20             THE DEFENDANT:  No.

21             THE COURT:  Have you taken any drugs, medicine or

22   pills, or drunk any alcoholic beverages in the past 24 hours?

23             THE DEFENDANT:  No.

24             THE COURT:  Is your mind clear today?

25             THE DEFENDANT:  Yes.

P4B5fraP

1          THE COURT:  Do you understand what is happening today?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Let me ask defense counsel, Mr. Corozzo,

4    have you discussed this matter with Mr. Franzone?

5          MR. COROZZO:  I have, your Honor.

6          THE COURT:  From your perspective, does he understand

7    the rights that he will be waiving by pleading guilty?

8          MR. COROZZO:  Yes, your Honor.

9          THE COURT:  Similarly, from your perspective, is he

10   capable of understanding the nature of these proceedings?

11         MR. COROZZO:  He is, your Honor.

12         THE COURT:  Do either counsel, any counsel, have any

13   doubt as to Mr. Franzone's competence to plead guilty at this

14   time?

15         MS. MORTAZAVI:  No, your Honor.

16         MR. COROZZO:  No, your Honor.

17         THE COURT:  So, Mr. Franzone, on the basis of your

18   responses to my questions, my observations of you here in

19   court, in other words your demeanor, I find that you are fully

20   competent to enter an informed plea of guilty at this time.

21         Have you received a copy of the indictment,

22   Mr. Franzone?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Did you read it?

25         THE DEFENDANT:  Yes.

P4B5fraP

 1              THE COURT:  Now, do you waive its public reading or do

 2    you wish me to read it to you?

 3              THE DEFENDANT:  I will waive it.

 4              THE COURT:  OK.

 5         Have you had enough of a chance to discuss with your

 6    attorneys the charges to which you intend to plead guilty and

 7    any possible defenses to those charges?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  Have your attorneys explained to you the

10    consequences of entering a plea of guilty?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Are you satisfied with your attorney's

13    representation?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Now I'm going to explain to you certain

16    constitutional rights that you have.  Now, these are rights

17    that are you going to be giving up by pleading guilty.  So, as

18    I mentioned earlier, listen carefully, and if you don't

19    understand something that I have said, just stop me, and either

20    I or your attorneys will explain it to you more fully.  OK?

21    You just have to answer verbally.

22              THE DEFENDANT:  Yes.

23              THE COURT:  So, under the Constitution and laws of the

24    United States you have the right to plead not guilty and to go

25    to trial on the charges in the indictment.

P4B5fraP

| | |
|---|---|
| 1 | Do you understand that? |
| 2 | THE DEFENDANT:  Yes. |
| 3 | THE COURT:  Now, if you did plead not guilty, you |
| 4 | would be entitled to a speedy and public trial by a jury on the |
| 5 | charges contained in the indictment. |
| 6 | Do you understand that? |
| 7 | THE DEFENDANT:  Yes. |
| 8 | THE COURT:  Now, at a trial you would be presumed |
| 9 | innocent, and the government would be required to prove your |
| 10 | guilt beyond a reasonable doubt using competent evidence before |
| 11 | you could be found guilty. |
| 12 | Do you understand that? |
| 13 | THE DEFENDANT:  Yes. |
| 14 | THE COURT:  Now, a jury of 12 people would have to |
| 15 | agree unanimously that you were in fact guilty and you would |
| 16 | not have to prove that you were innocent if you were to go to |
| 17 | trial. |
| 18 | Do you understand that? |
| 19 | THE DEFENDANT:  Yes. |
| 20 | THE COURT:  Now, at every stage of the case you would |
| 21 | be entitled to be represented by an attorney, and if you |
| 22 | couldn't afford an attorney, one would be appointed at public |
| 23 | expense, in other words free of cost to you, to represent you. |
| 24 | Do you understand that? |
| 25 | THE DEFENDANT:  Yes. |

P4B5fraP

1          THE COURT:  Now, during the trial the witnesses would

2    have to come here to court and testify in your presence.  Your

3    attorneys could cross examine the witnesses for the government,

4    object to evidence offered by the government, and offer

5    evidence on your own behalf, if you so desired.  You would also

6    have the right to have subpoenas issued or other process to

7    compel witnesses to come and testify in your defense.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Now, at a trial, although you would have

11    the right to testify if you wanted to, you would also have the

12    right not to testify, and if you decided not to testify, no

13    one, including the jury, could draw a negative inference from

14    the fact -- excuse me, could draw an inference or a suggestion

15    of guilt from the fact that you did not testify.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Have you had a full opportunity to discuss

19    with your attorneys whether there is a basis to seek

20    suppression of some or all of the evidence against you on the

21    grounds your Constitutional rights were violated?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that by pleading guilty

24    you are giving up your right to seek suppression of any of the

25    evidence against you?

P4B5fraP

| 1 | THE DEFENDANT:  Yes. |

1      THE DEFENDANT:  Yes.

2      THE COURT:  Do you understand that --

3      MR. COROZZO:  Your Honor, however there were motions

4  decided in this case.

5      THE COURT:  Correct.  I'm not sure -- there is a

6  Pimentel letter so I think you preserve the appellate right to

7  appeal those issues even if you are pleading guilty.

8      MR. COROZZO:  I believe we have, your Honor.

9      THE COURT:  OK.

10      Mr. Franzone, what that means is so there are two ways

11  this could have gone.  Right?  You could have decided to plead

12  guilty and there would have been a plea agreement, in which

13  case you would have waived certain of your rights including a

14  right to appeal under certain limited circumstances, in other

15  words if your guideline range -- if I sentenced you to more

16  than what was in the plea agreement, you could have appealed

17  that but you couldn't have appealed the prior determination

18  that I made with regard to your pretrial motions.  You are

19  pleading guilty here pursuant to a Pimentel letter so there is

20  no understanding concerning the limitations with regard to your

21  appellate rights concerning the prior decision that I made so

22  you will have the ability to appeal that.  OK?

23      THE DEFENDANT:  Yes.

24      THE COURT:  Now, if you are convicted at trial, you

25  would have the right to appeal that verdict.

P4B5fraP

1              Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  So even now, as you are entering your

4    plea, you have the right to change your mind and to go to trial

5    on the charges in the indictment.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  So, if you plead guilty and I accept your

9    plea, you are going to be giving up your right to trial and the

10   other rights I have just discussed with you other than your

11   right to an attorney which you have regardless of whether or

12   not you plead guilty.  But you should understand there will be

13   no trial and I will enter a judgment of guilty and sentence you

14   on the basis of your plea after I have considered a presentence

15   report, which will be prepared by the Probation Department, and

16   whatever submissions I get from your attorneys and from the

17   government's attorneys.  There will be no appeal with respect

18   to whether the government could use the evidence -- well, I was

19   just going to say there would be no appeal with respect to

20   whether the government could use the evidence against you or

21   with respect to whether you did or did not commit this crime,

22   and the exception is with regard to the pretrial motions that

23   you have made.

24             OK?

25             THE DEFENDANT:  Yes.

P4B5fraP

1          THE COURT:  If you plead guilty, you will also have to

2     give up your right not to incriminate yourself because in a

3     moment I'm going to ask you to tell me what it is you did that

4     makes you believe that you are guilty of the charges in Counts

5     One and Two of the indictment.

6          Do you understand each and every one of the charges

7     that I have just discussed with you?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And are you willing to give up your right

10     to trial and the other rights?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that you are charged

13     with securities fraud in violation of Title 15, United States

14     Code, Sections 78j(b) and 78ff, Title 17, Code of Federal

15     Regulations, Section 240.10b-5, and Title 18, United States

16     Code, 2, as well as Title 18, United States Code, Section 1343

17     and also Section 2.

18          Do you understand that you are charged with securities

19     fraud and wire fraud under those statutes?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Let me ask the government to please state

22     the elements of the crimes in question.

23          MS. MORTAZAVI:  Certainly, your Honor.

24          With respect to Count One, had this matter proceeded

25     to trial, the government would have to prove the following

P4B5fraP

1  elements beyond a reasonable doubt:

2          First, that in connection with the purchase or sale of

3  a security, the defendant employed a device, scheme, or

4  artifice to defraud, made an untrue statement of a material

5  fact or omitted to state a material fact which omission made

6  what was said misleading; or engaged in an act, practice, or

7  course of business that operated or would operate as a fraud or

8  a deceit upon a purchaser or seller of the security;

9          Second, that when the defendant engaged in this scheme

10  he acted knowingly, willfully, and with an intent to defraud;

11  and

12          Third, that in furtherance of the scheme, there

13  occurred at least one use of any means or instrument of

14  transportation or communication in interstate commerce, or the

15  use of the mails, or the use of any facility of any national

16  securities exchange.

17          The government would also have to prove venue by a

18  preponderance of the evidence.

19          With respect to Count Two, the government would have

20  to prove the following elements beyond a reasonable doubt:

21          First, that the defendant employed a scheme or

22  artifice to defraud or to obtain money or property by false

23  pretenses, representations, or promises;

24          Second, that the false or fraudulent representation or

25  concealment related to a material fact or matter;

P4B5fraP

1          Third, that the defendant devised or participated in

2    the scheme with knowledge of its fraudulent nature and with

3    specific intent to defraud;

4          Fourth, that interstate wires were used in furtherance

5    of the scheme to defraud or to obtain money or property by

6    means of materially false or fraudulent pretenses,

7    representations, or promises.

8          And, the government would also have to prove venue by

9    a preponderance of the evidence.

10          THE COURT:   Thank you.

11          Now, Mr. Franzone, do you understand that if you were

12    to go to trial, the government would have to prove each of the

13    elements the prosecutor just mentioned beyond a reasonable

14    doubt, with the exception of venue?

15          Do you understand that?

16          THE DEFENDANT:   Yes.

17          THE COURT:   Now I'm going to tell you what the maximum

18    penalty is for these crimes.   Now, the maximum means that is

19    the most you could possibly face.   It doesn't necessarily mean

20    that that is what you will get, but you need to understand that

21    by pleading guilty, you are subjecting yourself to the

22    possibility of any combinations up to the maximum I'm about to

23    describe to you.

24          OK?

25          THE DEFENDANT:   Yes.

P4B5fraP

1          THE COURT:  First, with regard to restrictions on your

2    liberty, in other words possible terms of incarceration.  The

3    maximum term of imprisonment on Count One is 20 years'

4    imprisonment, which could be followed by a maximum of three

5    years of supervised release.  The maximum term of imprisonment

6    on Count Two is also 20 years, which could be followed by a

7    maximum of three years of supervised release.

8          Supervised release means that you will be subject to

9    the supervision of the probation department.  There will be

10   rules of supervised release that you will have to follow and if

11   you violate those rules, you can be returned to prison without

12   a jury trial to serve additional time with no credit for the

13   time you served in prison as a result of your sentence and no

14   credit for the time you spent on post-release supervision.

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  You should also understand there is no

18   parole in the federal system, so that if you are sentenced to a

19   term of imprisonment, you will not be released early on parole.

20   However, there is a limited opportunity to earn credit for good

21   behavior, but you will have to serve at least 85 percent of the

22   time to which you are sentenced.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Now, second, in addition to restrictions

1    on your liberty, there is certain maximum financial penalties

2    that you face.  So, the maximum allowable fine on Count One is

3    $5 million or twice the gross gain derived from the offense or

4    twice the gross loss to persons other than yourself, whichever

5    is greater.  The maximum allowable fine on Count Two is

6    $250,000 or twice the gross gain derived from the offense or

7    twice the gross loss to persons other than yourself, again,

8    whichever is greater.

9            In addition, I must order restitution to any person or

10   entity injured as a result of your crimes.

11           I can also order that you forfeit all property derived

12   from the offense or used to facilitate the offenses.

13           Finally, I must order a mandatory special assessment

14   of $100 on each count, for a total of $200.

15           Do you understand that these are the maximum possible

16   maximum penalties?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Mr. Franzone, are you a United States

19   citizen?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Were you born in this country?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Do you understand that as a result of your

24   guilty plea you may lose certain valuable civil rights to the

25   extent you have them or could otherwise obtain them such as the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P4B5fraP

1  right to vote, the right to hold public office, the right to

2  serve on a jury, and the right to possess any kind of firearm?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Are you currently serving any other

5  sentence, whether state or federal, or are you being prosecuted

6  by the state for any crime?

7          THE DEFENDANT:  No.

8          THE COURT:  Are you currently on parole?

9          THE DEFENDANT:  No.

10         THE COURT:  Now, do you understand that if anyone,

11 your attorneys or the government's attorneys, have attempted to

12 predict for you what your sentence will be, that their

13 prediction could be wrong?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Now, no one, not your attorneys, not the

16 government's attorneys -- no one -- can give you any assurance

17 of what your sentence will be since, as I mentioned, I'm going

18 to sentence you and we are not going to do that today.  As I

19 mentioned, I'm going to wait until I get the presentence

20 report, do my own independent calculation of the guidelines

21 that applies to your case as I am required to do under the law,

22 consider that guideline range and any possible departures from

23 it, and determine, ultimately, what a reasonable sentence is

24 for you based on the sentencing factors contained in Title 18,

25 United States Code, Section 3553(a).

P4B5fraP

1           Do you understand that?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Have you discussed these sentencing issues

4    with your attorneys?

5           THE DEFENDANT:  Yes.

6           THE COURT:  So, even if your sentence is different

7    from what your attorneys or what the government's attorneys

8    have told you, even if it is different from what you expect or

9    what is contained in the Pimentel letter -- which I will

10   discuss with you in a moment -- you will still be bound by your

11   guilty plea and I won't allow you to withdraw your plea of

12   guilty.

13          Do you understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Now, as I mentioned, there is a Pimentel

16   letter here.  Mr. Franzone, did you receive a Pimentel letter

17   dated April 11 of 2025 earlier today?

18          MR. COROZZO:  No, your Honor.  There was no Pimentel

19   letter.  We --

20          THE COURT:  Oh.  OK.  So why don't you take a moment.

21   Do you have an extra copy so that Mr. Franzone can read it

22   independently of his attorneys?

23          So, Mr. Franzone, why don't you take a moment to read

24   through that letter and then speak with your attorneys about

25   it.  OK?

P4B5fraP

| 1 | If you want, Mr. Corozzo, if you want you can go to |

1        If you want, Mr. Corozzo, if you want you can go to

2   the witness room which is in the back, we can unlock it --

3        MR. COROZZO:  It shouldn't be necessary, your Honor,

4   because in the past we have had multiple plea agreements and

5   drafts of plea agreements.  These guidelines would be

6   reflective of the last plea agreement so we will just go

7   through the guidelines range.

8        THE COURT:  I don't know -- I'm not privy to that

9   but --

10        MS. MORTAZAVI:  It is not identical to prior

11   discussions and plea offers that have been made so there are

12   some new elements.

13        THE COURT:  So let's take the time.  At a minimum, it

14   won't include three points for acceptance of responsibility but

15   there may be other things, for example it may have just been a

16   plea to one count rather than the other.

17        So, why don't you take the time.

18        MR. COROZZO:  Absolutely, your Honor.

19        THE COURT:  Just let me know, let my staff know when

20   you are ready to go.

21        MR. COROZZO:  OK.

22        MS. MORTAZAVI:  And your Honor?

23        THE COURT:  Yes.

24        MS. MORTAZAVI:  Since counsel is going to take a

25   minute with his client, we just wanted to raise one issue that

P4B5fraP

1    we wanted to make sure we clarify on the record.

2            THE COURT:  Yes.

3            MS. MORTAZAVI:  There was a colloquy on whether the

4    defendant preserves his rights to appeal your Honor's

5    suppression ruling.

6            THE COURT:  Am I wrong about that?

7            MS. MORTAZAVI:  Under *Tollett v. Henderson*, which is a

8    1973 Supreme Court case, the defendant waives his rights --

9            THE COURT:  Once he pleads guilty.

10           MS. MORTAZAVI:  -- so his suppression motion --

11   correct.

12           THE COURT:  Even though, unless -- well, I suppose

13   there could be a carve-out but there is no carve-out here, the

14   Pimentel doesn't make it.

15           So what that means, Mr. Franzone, is that as I

16   initially thought but I corrected myself in an incorrect way,

17   so by pleading guilty, you are giving up your right to appeal

18   my decision on your pretrial motions so you won't be able to

19   appeal that.  What you will be able to appeal ultimately is the

20   sentence that you receive no matter where it is within the

21   guidelines.  OK?

22           Yes?

23           MS. MORTAZAVI:  Your Honor, to preview so that defense

24   counsel is aware of this, we are going to ask your Honor to

25   direct the defendant to answer questions related to this just

P4B5fraP

```
 1    so that there is no potential ambiguity as to what he is

 2    waiving.

 3              THE COURT:  I'm sorry?  Are these questions in

 4    connection with the factual allocution or are these

 5    questions --

 6              MS. MORTAZAVI:  In connection with the rights he

 7    believes he is preserving --

 8              THE COURT:  I see.

 9              MS. MORTAZAVI:  -- versus those that he is waiving by

10    entering a guilty plea.

11              THE COURT:  OK.

12              MS. MORTAZAVI:  So that there is no confusion as to

13    his understanding going into this hearing.

14              THE COURT:  In addition, let me ask, I don't need to

15    know the specifics, but were the prior plea agreements that

16    were offered, were they more -- the guideline calculation, were

17    they more beneficial other than the three points for acceptance

18    of responsibility?

19              MS. MORTAZAVI:  Yes.

20              THE COURT:  OK.  All right.

21              MS. MORTAZAVI:  And just to clarify, your Honor, there

22    was one plea agreement that was extended which was more

23    beneficial.  There was a second plea offer that was discussed,

24    never formally extended on paper, but the guidelines that were

25    discussed there were more beneficial as well.
```

P4B5fraP

```
 1                THE COURT:  OK.  All right.

 2                So why don't you take the time to discuss the Pimentel

 3     with Mr. Franzone.

 4                MR. COROZZO:  Your Honor, you said we can use a room?

 5                THE COURT:  Yes.

 6                THE DEPUTY CLERK:  I will open it, Judge.

 7                THE COURT:  Great.  Thank you.

 8                (Recess)

 9                THE COURT:  So, as I mentioned, there is a Pimentel

10     letter dated April 11.  Mr. Franzone, have you had an

11     opportunity to read that letter?

12                THE DEFENDANT:  Yes.

13                THE COURT:  Have you had an opportunity to go over

14     that letter with your attorneys?

15                THE DEFENDANT:  Yes.

16                THE COURT:  Do you understand that the Pimentel letter

17     is not binding on me?

18                THE DEFENDANT:  Yes.

19                THE COURT:  Do you understand the Pimentel letter is

20     not a plea agreement?

21                THE DEFENDANT:  Yes.

22                THE COURT:  So, as I mentioned, I have my own

23     obligation to determine the correct guideline range here and

24     what the appropriate sentence is in your case.

25                THE DEFENDANT:  Yes.
```

P4B5fraP

1          THE COURT:  So I'm not saying that I'm going to come

2     up with a guideline that is different than the Pimentel, but if

3     I do, and even if that guideline range is higher, I still will

4     not allow you to withdraw your guilty plea.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Now, the Pimentel calculates a guideline

8     range of 168 to 210 months' imprisonment.  Is that your

9     understanding?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that the letter, that

12     nothing in the letter limits the right of the government to

13     change its position any time concerning the appropriate

14     guideline range that applies in this case?  Even if that change

15     is based, in whole or in part, on the indictment or what was in

16     the government's possession at the time they wrote the letter?

17     In addition, it doesn't limit the government in its ability to

18     argue to me or to the probation office, either orally or in

19     writing, any and all facts and arguments relevant to sentencing

20     that are available to the government at the time of sentencing,

21     nor does anything in the letter limit the right of the

22     government to seek a departure or variance from the guidelines,

23     in other words, or to take a position on any departure or

24     variance that may be suggested by me, by the probation office,

25     or by yourself through your counsel.

P4B5fraP

1                    Do you understand that?

2             THE DEFENDANT:  Yes.

3             THE COURT:  Now, has anyone made any promise or

4     offered you any inducement to get you to plead guilty?

5             THE DEFENDANT:  No.

6             THE COURT:  Has anyone threatened you or forced you to

7     plead guilty?

8             THE DEFENDANT:  No.

9             THE COURT:  Has anyone made any promise to you as to

10    what your sentence will be?

11            THE DEFENDANT:  No.

12            THE COURT:  So, Mr. Franzone, we have reached the

13    point in the proceedings when I am going to ask you to please

14    tell me what it is that you did that makes you believe you are

15    guilty of the charges in the indictment.

16            THE DEFENDANT:  From in or about 2014 to

17    September 2019, while I managed FF Fund 1, I misrepresented to

18    investors of the fund that the fund was highly liquid and I did

19    not disclose the true nature of every investment.  I caused

20    monthly performance reports to be sent to investors by e-mail.

21    The performance reports did not completely disclose the full

22    nature of the portfolio or identify the investments.  Investors

23    sent wires to the fund to purchase limited partnership interest

24    in the fund, including wires that went through the Southern

25    District of New York.

P4B5fraP

1           THE COURT:  And at the time did you know that it was

2    wrong for you to make those, to not advise the investors of

3    that information?

4           THE DEFENDANT:  Yes.

5           THE COURT:  And in connection with that, when I say

6    investors, these were folks that were sending -- I will say

7    you -- but sending the fund money; right?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And the statements that you made to them,

10   in other words the information you provided to them that was

11   not accurate or omitted certain things, that got them to send

12   the money to you; is that right?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Let me ask, Mr. Corozzo, do you know of

15   any valid defenses that would prevail at trial, do you know of

16   any reason why your client should not be permitted to plead

17   guilty?

18          MR. COROZZO:  I do not, your Honor.

19          THE COURT:  Are there any other questions that the

20   government believes are appropriate?

21          MS. MORTAZAVI:  There are, your Honor.  We have two

22   questions and are happy to take them one at a time or both

23   together.

24          THE COURT:  Yes.  Why don't we take it one at a time.

25          MS. MORTAZAVI:  We would ask the Court to inquire as

P4B5fraP

1    to whether Mr. Franzone was aware at the time he made the

2    misstatements about the fund's liquidity that the fund's

3    liquidity was important or material to investors.

4              THE COURT:  So, Mr. Franzone, at the time that you

5    made the representations concerning the fund's liquidity to the

6    potential investors, and then to investors later on, that you

7    were aware of the importance of that, the liquidity, to the

8    investors?

9              THE DEFENDANT:  Yes.

10             THE COURT:  In other words, these are folks who wanted

11   to be able to get their money out relatively quickly if they

12   could?

13             THE DEFENDANT:  Yes.

14             THE COURT:  All right.

15             MS. MORTAZAVI:  And the second question, your Honor,

16   is to just put a finer point on the colloquy that the Court had

17   with the defendant, which is that the defendant aimed the

18   misrepresentations at investors with the intent to obtain their

19   money, which was their investment in the hedge fund.

20             THE COURT:  So, Mr. Franzone, in basically letting

21   these folks believe, through your statements, that these funds

22   were liquid, was it your intent that they would in fact invest

23   in the funds?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Is there any other questions I should ask

SOUTHERN DISTRICT REPORTERS, P.C.

P4B5fraP

1    Mr. Franzone?

2             MS. MORTAZAVI:  May we have a moment, your Honor?

3             THE COURT:  Yes.

4             (Counsel conferring)

5             THE COURT:  These are securities.  What they were

6    buying, were those interests, they were securities?

7             THE DEFENDANT:  Part of the fund was securities.

8             MS. MORTAZAVI:  And, your Honor, just to clarify the

9    government's understanding, the investors were purchasing

10   shares of the fund which were themselves securities.

11            THE COURT:  Is that accurate, Mr. Franzone, that the

12   investors were purchasing shares of the fund which were

13   securities?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Anything else?

16            MS. MORTAZAVI:  No further questions, your Honor.

17            THE COURT:  Let me ask if the government could please

18   summarize what the government's evidence would have been had

19   Mr. Franzone gone to trial.

20            MS. MORTAZAVI:  Certainly, your Honor.

21            Had Mr. Franzone proceeded to trial, the government

22   was prepared to offer the following evidence, among others:

23            Testimony from investors or limited partners in the

24   hedge fund that the defendant ran, who were misled by the

25   defendant's statements, who believed that he would maintain a

P4B5fraP

highly liquid portfolio of trading in publicly traded

securities, that that mattered to them, and that they gave him

money or property in reliance on his misstatements and that

they did not redeem or take out their investment in the fund

based on the defendant's failure to correct his earlier lies.

        Second, we would also admit at trial e-mails from the

defendant's personal e-mail account in which he falsely

described that he was trading, including an e-mail sent from

the defendant while he was in Miami, to an investor located in

Manhattan, soliciting and confirming that investor's investment

in the hedge fund.

        We would produce summary records of bank account

statements and monthly investor reports showing that the

defendant was trading negligible amounts of publicly-traded

securities on public markets and was instead putting the vast

majority of the fund's assets, sometimes as much as 99 percent

of the fund's assets, into private investments; evidence and

testimony that the fund was so illiquid that, by 2019, it could

not fulfill investor redemptions within the required 90-day

notice period and that, as a result, the fund declared

bankruptcy and at the time the fund had only $300,000 in

brokerage accounts and most of its funds in illiquid assets.

        We would also establish, through bank records and

monthly investor statements and testimony of witnesses

including through the fund's administrator and through the

P4B5fraP

1    bankruptcy trustee, that the defendant had overvalued his

2    investments substantially including for real estate that he had

3    purchased which was worth almost $2 million less than the

4    valuations he had provided and including for private companies,

5    at least one of which was a shell company or had ceased

6    operations that were nonetheless valued on the corporate books

7    in the multiple millions of dollars despite being worth very

8    little.

9            As well, we would offer testimony that the defendant

10   did not have any audited financials despite reassuring

11   investors that he would maintain audited financials and have

12   third-parties validate the fees that he was receiving and the

13   investments of the fund.

14           THE COURT:  Thank you.

15           So, Mr. Franzone, did you hear what the prosecutor

16   just said?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Now, do you understand that you are giving

19   up your right to challenge all of the evidence that the

20   prosecutor just mentioned?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Now, do both counsel agree that there is a

23   sufficient factual predicate to -- do all counsel agree that

24   there is a sufficient factual predicate for the guilty plea?

25           MS. MORTAZAVI:  Yes, your Honor.

P4B5fraP

1        MR. COROZZO:  Yes, your Honor.

2        THE COURT:  Does either counsel know of any reason I

3   should not accept Mr. Franzone's plea of guilty?

4        MS. MORTAZAVI:  No, your Honor.

5        MR. COROZZO:  No, your Honor.

6        THE COURT:  So, Mr. Franzone, because you acknowledge

7   that you are in fact guilty of the charges in the indictment,

8   because I am satisfied that you know of your right including

9   your right to go to trial and that you are aware of the

10  consequences of your plea including the sentence which may be

11  imposed, and because I find that you are voluntarily and

12  knowingly pleading guilty, I'm going to accept your plea and

13  enter judgment of guilty on the counts in the indictment.

14        Now, the probation department, as I mentioned, is

15  going to want to interview you in connection with the

16  preparation of a presentence report.

17        Let me just ask, Mr. Corozzo, Ms. Lipsman, I assume

18  one or both of you will be present?

19        MR. COROZZO:  That's correct, your Honor.

20        THE COURT:  So that interview won't take place unless

21  your attorneys, one or more of your attorneys are with you,

22  either in person or virtually.  Now, the only thing I ask is

23  that when you do speak to the probation department, that you

24  make sure that everything you tell them is as accurate as

25  possible and that you are truthful with them.

P4B5fraP

1          Now, you will have an opportunity to go over the

2    presentence report with your attorneys before your sentencing

3    so I ask you to read it carefully, point out any mistakes or

4    errors in there, point out any information that you think

5    should be in there that isn't, so that they can take that issue

6    up with the probation officer, and then if it is not resolved

7    to your and their satisfaction, so that it can be brought up to

8    me at the time of your sentencing.

9          OK?

10          THE DEFENDANT:  Yes.  We will have the sentencing date

11    of July 15 at 10:00 a.m.

12          Does that work for counsel?

13          MS. MORTAZAVI:  Yes, your Honor.

14          MR. COROZZO:  Yes, Judge.

15          THE COURT:  Now, I would ask that the government to

16    provide a factual statement to the probation office within the

17    next two weeks, and if defense counsel could contact probation

18    just to get a date within the next two weeks, not that you have

19    to have the interview in the next two weeks but that you have a

20    date when the interview will take place.

21          Now, with regard to submissions, my individual rules

22    call for the defense submission two weeks prior to sentencing

23    and the government's submission one week prior to sentencing.

24          So, Mr. Franzone, your bail conditions will remain the

25    same and so you need to abide by those going forward until

P4B5fraP

1   sentencing.  OK?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Let me ask, is there anything else that I

4   should ask Mr. Franzone or that I should deal with today?

5              (Counsel conferring)

6              MS. MORTAZAVI:  Your Honor, only for belt and

7   suspenders purpose we would ask that the Court ask the

8   defendant, specifically, that he intends to change his plea

9   with full knowledge that he is waiving his appellate rights as

10  to his suppression motion.

11             THE COURT:  OK.

12             So, Mr. Franzone, with regard to my earlier mistake,

13  you are actually waiving your right to appeal anything having

14  to do with the suppression motion.

15             Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.

18             Anything else?

19             MS. MORTAZAVI:  Nothing further, thank you.

20             THE COURT:  Anything further from the defense?

21             MR. COROZZO:  No, your Honor.  Thank you.

22             THE COURT:  Thank you very much.  We stand adjourned.

23             Mr. Franzone, I will see you on July 15.

24             THE DEFENDANT:  Thank you, your Honor.

25             THE COURT:  OK.

                              o0o